# EXHIBIT A

US010956988B2

(12) **United States Patent**
**Beale**

(10) **Patent No.: US 10,956,988 B2**
(45) **Date of Patent: Mar. 23, 2021**

(54) **SYSTEM AND METHOD FOR DETERMINING A TAXABILITY STATUS FOR A VEHICULAR ASSET**

(71) Applicant: **Scott Beale**, Mayfield Heights, OH (US)

(72) Inventor: **Scott Beale**, Mayfield Heights, OH (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 353 days.

(21) Appl. No.: **15/632,661**

(22) Filed: **Jun. 26, 2017**

(65) **Prior Publication Data**

US 2018/0374161 A1 Dec. 27, 2018

(51) **Int. Cl.**

***G06Q 40/00*** (2012.01)
***G08G 5/00*** (2006.01)
***G01S 13/72*** (2006.01)

(52) **U.S. Cl.**

CPC .......... ***G06Q 40/123*** (2013.12); ***G01S 13/723*** (2013.01); ***G06Q 40/10*** (2013.01); ***G06Q 40/12*** (2013.12); ***G08G 5/00*** (2013.01)

(58) **Field of Classification Search**

CPC ...... G06Q 40/00; G06Q 40/123; G06Q 40/12; G06Q 40/10; G08G 5/00; G01S 13/72; G01S 13/723

See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

4,827,419 A * 5/1989 Selby, III .............. G01C 21/20 701/528
9,530,323 B1 * 12/2016 Maji .................... G08G 5/0021
2002/0091756 A1 * 7/2002 Goodwin ............ G06F 11/1446 709/203
2008/0158041 A1 * 7/2008 Crudeli .................. G01S 7/003 342/36
2011/0144897 A1 * 6/2011 Dunsky .................... G08G 5/00 701/122
2015/0058184 A1 * 2/2015 Clark ..................... G06Q 40/12 705/30
2016/0101855 A1 * 4/2016 Stefani ................ G08G 5/0008 701/2
2017/0358212 A1 * 12/2017 Godwin ................ G08G 5/006

OTHER PUBLICATIONS

"How it Works, Mar. 1, 2017 https://www.flightradar24.com/how-it-works (p. 8 of 13)" (Year: 2017).*
"N12028, Jun. 6, 2017, https://www.flightradar24.com/data/aircraft/n12028/(p. 14/14)" (Year: 2017).*

* cited by examiner

*Primary Examiner* — Kenneth Bartley
*Assistant Examiner* — Gregory M James
(74) *Attorney, Agent, or Firm* — Medley, Behrens & Lewis, LLC

(57) **ABSTRACT**

Disclosed embodiments provide techniques for determining a taxability status for a vehicular asset, such as an aircraft. The techniques include obtaining traffic control system information for the vehicular asset, detecting gaps in traffic control system information for the vehicular asset, and recording the gaps, computing a primary location for the vehicular asset based on the traffic control system information, and creating a vehicular asset taxability status report for the vehicular asset, where the report includes the primary location and gap information.

**16 Claims, 7 Drawing Sheets**




TAXABILITY STATUS SYSTEM
104
PROCESSOR
106
MEMORY
108
STORAGE
110
114
TRAFFIC CONTROL DATA
116
VEHICLE METADATA
118
VEHICLE VALUATION DATA
120
LEGAL CORPUS
130
126
N714XR
124
REMOTE TRANSPONDER SENSING UNIT
122
100

FIG. 1

200




FIG. 2

300

| | REG. NUM (302) | CALL SIGN (304) | DEPART. LOCATION (306) | ARRIVAL LOCATION (308) | ARRIVAL DATE (310) | DEPART. DATE (312) | STAY (314) |
|---|---|---|---|---|---|---|---|
| 322 | N714XR | N/A | PIT | ROA | Apr 3 | Apr 5 | 3 |
| 324 | N714XR | N/A | ROA | ZZV | Apr 5 | Apr 6 | 2 |
| 326 | N714XR | N/A | PKB | ROA | Apr 11 | Apr 12 | 2 |
| 328 | N662CT | ABC123 | PIT | ROA | Apr 8 | Apr 8 | 1 |

FIG. 3


400
412
ANTENNA
410
TRANSPONDER
TRANSCEIVER
408
NETWORK
COMMUNICATION
INTERFACE
402
PROCESSOR
404
MEMORY
406
STORAGE

FIG. 4


500
OBTAIN TRAFFIC CONTROL SYSTEM INFORMATION
550
DETECT GAPS IN TRAFFIC CONTROL SYSTEM INFORMATION
552
COMPUTE PRIMARY LOCATION
554
CREATE REPORT
556
EXCEED THRESHOLD?
558
YES
NO
INCLUDE ALERT
560

FIG. 5


600
COMPILED AIRCRAFT STORAGE LOCATION LIST
OBTAIN OWNER METADATA
OBTAIN PILOT METADATA
DETERMINE PRIMARY LOCATION
650
652
654
656

FIG. 6


700
702
704
Vehicular Asset Taxability Status Report - ZZV for the year 20XX
710
Appraised Value: $1,860,000
Tax Value: $27,900 (1.5%)
708
Owner: King Shuttle, LLC
Owner phone: 432-555-1234
Owner State: TX
Operator Contact: Richard King
Operator phone: 432-555-2334
Chief Pilot: Jim Lovell
Chief Pilot phone: 654-555-8765
706
N-number: N714XR
Serial Number: BB-1230
Year MFR: 2004
Name: King Shuttle, LLC
123 Any Street
Austin TX, 78719
MFR Name: Beech
Model: B200
716
Data Gaps: 6
714
AIRPORT ACTIVITY:
AP DEP % Arr %
ZZV 55 27.1 55 27.1
ROA 11 5.4 11 5.4
PIT 9 4.4 10 4.9
712
TOP THREE AIRPORTS (Days)
ZZV 213
ROA 88
PIT 34

FIG. 7

# SYSTEM AND METHOD FOR DETERMINING A TAXABILITY STATUS FOR A VEHICULAR ASSET

## FIELD OF THE INVENTION

The present invention relates generally to asset monitoring.

## BACKGROUND

Transportation continues to be vital in our daily lives. People and goods often travel using commercial vehicles such as aircraft, boats, trains, and motor vehicles. While airlines carry a majority of air passengers, a considerable number of passengers travel via general aviation aircraft such as business jets. Recent reports have indicated that general aviation adds up to 1.1 million jobs and contributes over $200 billion to the U.S. economy. General aviation enables businesses to enable face-to-face contacts which can be vital for certain businesses. In addition to business travel, general aviation can provide other vital services, such as emergency medical flights, aerial firefighting flights, law enforcement flights, flight training, time-sensitive cargo flights, aerial photography/surveillance, personal travel, as well as agricultural functions.

Recent reports indicate that there are about 15,000 business aircraft registered in the United States. A "Business aircraft" is defined as fixed-wing turbine aircraft plus piston (single and twin engine) general aviation aircraft and flown as business or corporate operations as determined by the Federal Aviation Administration (FAA). About 3 percent of these aircraft are flown by Fortune 500 companies, while the remaining 97 percent encompass a broad cross-section of operators that are primarily businesses of all sizes. Business aircraft operators are registered in every state in the country.

People and companies that rely on business aviation represent many different professions and locations, but they all share the need for fast, flexible, safe, secure and cost-effective access to destinations across the country and around the world. In many instances, business aviation is the appropriate transportation solution, opening the door to global commerce for small-community and rural populations by linking them directly to population centers and manufacturing facilities.

## SUMMARY

Disclosed embodiments provide a transient asset tax recovery system that is developed for aircraft including private, business and commercial assets with particular attention towards private/business turbine assets with higher dollar amounts. The unique and primary function of disclosed embodiments is to utilize the Federal Aviation Administration (FAA) historical Air Traffic Control (ATC) database and the patent algorithms to determine the aircraft tax jurisdiction first and then determine which taxpayers have not paid historical tax or have under-reported/underpaid taxes. The data mining software system integrates over eight databases (listed below) to determine aircraft identification with owner, asset tax jurisdiction, historical tax paid/unpaid, asset valuation, estimated tax owed and reporting information. The system end result and benefit is to recovery unpaid and underpaid taxes on behalf of government entities which include property taxes, sales and use tax, commercial operations tax, lease taxes, apportionment taxes and a host of registration type tax. Approximately 50% of



the Continental United States have no significant property tax (i.e. Ohio), while the other 50% have significant property taxes which can reach up to $20,000 per $1 million in value per year. The state property tax inconsistency often influences the taxpayer to mis-report their aircraft in a state which has no property tax ultimately avoiding the tax. Due to the transient nature of aircraft, single government entities with limited resources and not working together with other entities struggle to identify the aviation taxes, evaluate the aircraft and recover taxes.

The system is a unique one of a kind system unknown currently in the marketplace. There is a half dozen or so tax recovery companies nationwide specializing in helping the government with tax recovery, property valuations and tax collection. None of them have a registered system for completing their services on vehicular assets.

In one aspect, there is provided a computer-implemented method for determining a taxability status for a vehicular asset, comprising: obtaining traffic control system information for the vehicular asset; detecting gaps in traffic control system information for the vehicular asset, and recording the gaps; computing a primary location for the vehicular asset based on the traffic control system information; and creating a vehicular asset taxability status report for the vehicular asset, wherein the report includes the primary location and gap information.

In another aspect, there is provided a system for determining a taxability status for a vehicular asset, comprising: a processor; a memory coupled to the processor, wherein the memory contains instructions, that when executed by the processor, cause the system to perform steps of: obtaining traffic control system information for the vehicular asset; computing a primary location for the vehicular asset based on the traffic control system information; detecting gaps in traffic control system information for the vehicular asset, and recording the gaps; and creating a vehicular asset taxability status report for the vehicular asset, wherein the report includes the primary location and gap information.

In yet another aspect, there is provided a computer program product embodied in a non-transitory computer readable medium for determining a taxability status for a vehicular asset, the computer program product comprising instructions which cause one or more processors to perform operations of: obtaining traffic control system information for the vehicular asset; computing a primary location for the vehicular asset based on the traffic control system information; detecting gaps in traffic control system information for the vehicular asset, and recording the gaps; and creating a vehicular asset taxability status report for the vehicular asset, wherein the report includes the primary location and gap information.

## BRIEF DESCRIPTION OF THE DRAWINGS

The structure, operation, and advantages of the present invention will become further apparent upon consideration of the following description taken in conjunction with the accompanying figures (FIGs.). The figures are intended to be illustrative, not limiting.

Certain elements in some of the figures may be omitted, or illustrated not-to-scale, for illustrative clarity. The cross-sectional views may be in the form of "slices", or "near-sighted" cross-sectional views, omitting certain background lines which would otherwise be visible in a "true" cross-sectional view, for illustrative clarity. Furthermore, for clarity, some reference numbers may be omitted in certain drawings.

FIG. **1** shows a system in accordance with embodiments of the present invention.

FIG. **2** shows examples of multiple jurisdictions.

FIG. **3** shows example traffic control system data.

FIG. **4** is a block diagram of a remote transponder sensing unit in accordance with embodiments of the present invention.

FIG. **5** shows a flowchart indicating process steps for embodiments of the present invention.

FIG. **6** shows a flowchart indicating additional process steps for embodiments of the present invention.

FIG. **7** shows an exemplary vehicular asset taxability status report in accordance with embodiments of the present invention.

## DETAILED DESCRIPTION

General aviation aircraft such as business jets typically cost at least one to two orders of magnitude more than a typical automobile. Some modern business jets can have a value in excess of $50 million. These aircraft rely on the infrastructure provided by airports and air traffic control (ATC) facilities throughout the country. Tax jurisdictions such as states, counties and municipalities collect a variety of taxes from the aviation community to support this infrastructure. There are a variety of taxes and fees that can be assessed. There are use taxes which are a function of how often an aircraft uses a particular airport. Additionally, there are property taxes and/or registration fees that are a function of where the aircraft has spent a significant amount of time, as well as the value and/or type of aircraft.

Some of the taxes assessed may include, but are not limited to,

1) Property or Advalorem Tax.
2) Sales and Use Tax.
3) Apportioned taxes for commercial and multi-state based operators
4) Lease and Commercial Operations tax
5) Aircraft parts and maintenance tax
6) Aviation fuel tax; and
7) Airport landing, registration and other fees

Because aircraft are relatively expensive, the tax liability owed to a jurisdiction can be significant. However, because aircraft are movable assets, accurate assessment of tax liability can be challenging. In some states property taxes can mount up annually to a significant amount. States that impose property taxes on aircraft include California, Georgia and Wyoming. Recent information indicates that there are over twenty states that impose some sort of property tax. As with real estate, property taxes on aircraft are usually levied at the local level. Even states that don't have a "property" tax on aircraft per se may have a similar tax under another name, such as a tax on "assets owned by businesses" or "income-producing assets."

Aircraft registration fees are typically charged in place of a property tax, although Utah and a few other states charge both. One way for a state to stay on top of collecting sales and use tax on aircraft hangared within its borders is to require the aircraft to be registered. Thus, tax liability for aircraft is an extremely complex matter, as different jurisdictions have different rules, and different criteria for when those rules apply.

The Air Traffic Control (ATC) system records data of filed flight plans and actual air traffic radar hits. The FAA SWIM Flight Data Publication Service (SFDPS) makes such data available to a limited audience. However, merely tracking this data is insufficient to gain a full picture of aircraft activity as it pertains to taxes. There can be gaps in the ATC data. The most common instance of this occurs when an airplane flies to another airport under visual flight rules (VFR). In such an instance, it is possible for an aircraft to move to another tax jurisdiction without creating an indication of the activity within the ATC data. Further complicating the tracking is that ATC data can sometimes use call signs in place of an aircraft registration number (i.e. "N-number"). Thus, it can be very challenging to obtain an accurate record of aircraft activity simply by examining ATC data.



Disclosed embodiments provide a solution that allows tax jurisdictions such as states, counties, cities, and other regional jurisdictions to obtain detailed information about aircraft activity and identify potentially owed taxes. This can enable the jurisdictions to collect the revenues they are owed, which enables continued maintenance of the airport infrastructure.

Disclosed embodiments provide techniques for determining a taxability status for a vehicular asset, such as an aircraft. The techniques include obtaining traffic control system information for the vehicular asset, detecting gaps in traffic control system information for the vehicular asset, and recording the gaps, computing a primary location for the vehicular asset based on the traffic control system and remote transponder sensing unit's information, and creating a vehicular asset taxability status report for the vehicular asset, where the report includes the primary location and gap information.

FIG. **1** shows a system **100** for determining a taxability status for a vehicular asset in accordance with embodiments of the present invention. System **100** includes a taxability status system **104**. In embodiments, the taxability status system **104** is implemented as a computer comprising a processor **106**, and memory **108** coupled to the processor. The memory **108** may be a non-transitory computer readable medium. Memory **108** may include RAM, ROM, flash, EEPROM, or other suitable storage technology. The memory **108** contains instructions, that when executed by processor **106**, enable communication with a variety of other devices and data stores. In embodiments, network **114** may include the Internet.

The taxability status system **104** may communicate with an air traffic control data source **116**. The air traffic control data source **116** may include data from the FAA SWIM Flight Data Publication Service (SFDPS). The air traffic control data may include, but is not limited to, a departure airport, an arrival airport, a departure date, a departure time, an arrival date, an arrival time, an aircraft type, and/or a registration number. In embodiments, the registration number can serve as a vehicle identification number for the aircraft.

The taxability status system **104** may communicate with a vehicle metadata source **118**. The vehicle metadata source **118** may include FAA vehicle registration data. The vehicle metadata may include, but is not limited to, a vehicle serial number, an aircraft manufacturer name, an aircraft model (vehicle model type), an aircraft type, a year of manufacture for the aircraft (vehicle manufacture date), registered owner information, an engine manufacturer, and/or a vehicle engine type in addition to a significant amount of the vehicle specifications, equipment and statistics on said aircraft for purposes of evaluating the vehicle once jurisdiction is determined.

The taxability status system **104** may communicate with a vehicle valuation source **120**. The vehicle valuation source **120** may include data from one or more subscription-based

services to provide an estimate of current value based on individual aircraft details. Such services may include, but are not limited to, the Aircraft Blue Book and VREF valuation guides. The current value can be used as part of tax liability assessment in certain cases, depending on the rules and regulations of a particular tax jurisdiction. In addition, the JETNET and AMSTAT® services may be utilized, which are the aircraft databases which keep records on each and every aircraft to include owner information, operator information, pilot/Chief Pilot information, manufactured year, aircraft equipment and specifications, airframe/engine times, pictures of the aircraft and interior, etc. The information in this system provides all of the particular details which feed the VREF, AMSTAT and an Appraisal database.

The data from the sources **116**, **118**, and **120** may be stored within storage **110**. In embodiments, a database format such as a structured query language (SQL) format is used to store the data. In embodiments, data may be filtered, and/or output in a different format, such as CSV, to enable processing by spreadsheets and/or other programs.

The system **100** may optionally include one or more remote transponder sensing units **122**. The remote transponder sensing unit **122** is an electronic device that is installed in proximity to an airport such that it can detect transponder information from an aircraft **126** where the information includes a registration number **124** that is associated with the aircraft **126**. The data from the remote transponder sensing unit **122** can be used to reconcile gaps in the air traffic control information. In embodiments, the remote transponder sensing unit **122** may receive information from an automatic dependent surveillance-broadcast (ADS-B) transponder, and receive data from and/or interrogate a mode S transponder, and/or a mode C transponder. The transponder is installed on an aircraft as part of its electronic safety equipment. It may broadcast an identifying code such as a registration number or other code that is linked to a registration number. In some embodiments, the remote transponder sensing unit may interrogate the transponder in order to receive a reply from the transponder containing the information. The information may further include information such as altitude and speed information. The altitude and speed information can be used to confirm that the aircraft in question was taking off or landing at the airport. The information may further include other aviation parameters, including, but not limited to, aircraft type, latitude, longitude, and/or heading.

The system **100** may optionally communicate with legal corpus **130** to access laws, rules, regulations, tax rates, and other information that can be used to provide computer-implemented automated estimated tax liabilities. This allows convenient notification of jurisdiction authorities regarding potentially owed tax revenue from aircraft operators and/or owners.

Embodiments combine data from the traffic control data **116**, vehicle metadata **118**, vehicle valuation data **120**, and/or remote transponder sensing unit data **122** to reconcile gaps in the traffic control data. The system **100** can then compute a primary location for the purposes of property taxes, and estimate, based on information from legal corpus data **130**, a tax liability that is owed to that jurisdiction for the aircraft **126**. In the event, that the aircraft has primary locations which share tax reciprocity and apportionment, the system can determine the prorate share to the multiple jurisdictions.

FIG. **2** shows examples of multiple jurisdictions. The map **200** indicates four airports. Airport ZZV corresponds to in Zanesville Municipal Airport in Muskingum County, Ohio. PKB corresponds to Mid-Ohio Valley Regional Airport in Wood County, W. Va. ROA corresponds to Roanoke Regional Airport, in Roanoke County, Va. PIT corresponds to Pittsburgh International Airport Allegheny County, Pa. For the purposes of illustrating disclosed embodiments, each of the states shown with an airport in map **200** is assumed to be a tax jurisdiction with a different tax rate. This information is merely illustrative and is not intended to reflect actual tax information. Furthermore, while in the example, the tax jurisdictions are assumed to be statewide, in practice tax jurisdictions may be counties, cities, or other regions.

For the purposes of example only, it is to be considered that Ohio has a property tax of 1.5 percent of an aircraft value if the aircraft spends 185 days or more hangared in Ohio. It is furthermore to be considered that West Virginia does not levy a property tax on aircraft. It is furthermore to be considered that Virginia levies a use tax of $100 per landing per aircraft. It is furthermore to be considered that Pennsylvania has a property tax of 1 percent of an aircraft value if the owner resides in Pennsylvania. As stated previously, this information is merely illustrative for the purposes of explaining the function of disclosed embodiments, and is not intended to reflect actual tax information.

Using the aforementioned example, it can be seen how tax liability can be difficult to assess. Due to actions of the aircraft operator, the aircraft location as indicated by the air traffic control system may not be indicative of the actual whereabouts of the aircraft. Again, based on the previous example rules for the tax jurisdictions of map **200**, it can be possible for an aircraft operator (either intentionally, or unintentionally) to create a situation where tax revenue owed a jurisdiction can go undetected. Since West Virginia has no aircraft property tax, an aircraft operator can fly an aircraft to PKB with a flight plan, and thus indicated in air traffic control data. The operator can then fly from PKB to ZZV under visual flight rules, and thus reside in Ohio, while appearing to be hangared in West Virginia. Disclosed embodiments can identify such conditions by using data from a remote transponder sensing unit. In this example, when the aircraft lands at ZZV, even under VFR conditions, the registration number is detected based on transponder data from the aircraft, retrieved by the taxability status system **104**, and considered to be located in Ohio, even though the air traffic control information does not indicate the VFR trip from PKB to ZZV. In this case, the Ohio tax authorities can receive a report indicating the occurrence so the proper taxes can be collected.

In a similar manner, since Virginia includes a use tax for each landing, if an operator uses VFR to ferry an aircraft from PKB to ROA, and then VFR to again take the aircraft from ROA back to PKB, then the takeoff and landing from ROA has the potential to be unreported. Again, using a remote transponder sensing unit installed in proximity to ROA, the transponder information from the aircraft is recorded, and retrieved by the taxability status system **104**, and considered to have landed at ROA in Virginia, even though the air traffic control information does not indicate that the aircraft had traveled to ROA. In this case, the Virginia tax authorities can receive a report indicating the occurrence so the proper taxes can be collected.

In a similar manner, if an aircraft spends 53% of the year hangared at PKB in West Virginia, and 40% of its time hangared at PIT in Pennsylvania, and the owner has a Pennsylvania address, then the primary location of the aircraft may be deemed to be Pennsylvania, even though that is not the location where the aircraft was hangared for the

most time. Thus, in embodiments, computing a primary location comprises: computing a list of airplane storage locations indexed by duration; selecting a primary location based on the owner address and a duration of an airport storage location from the list of airport storage locations, wherein the duration exceeds a predetermined threshold, and wherein the airplane storage location and the owner address are in a common tax jurisdiction.

FIG. **3** shows an example **300** of traffic control system data. This data may be stored within taxability status system **104** in a database format, CSV format, binary format, or other suitable data format. Column **302** shows a registration number (also referred to as a "tail number" or "N-number). Column **304** shows a call sign. Not all aircrafts use a call sign, but some may use a call sign when interacting with the air traffic control system. Column **306** shows a departure location. Column **308** shows an arrival location. Column **310** shows an arrival date, indicating when the aircraft arrived at an airport. Column **312** shows a departure date, indicating when an aircraft departed an airport. Column **314** indicates a duration/stay at an airport by the aircraft.

Of particular note is the occurrence of gaps in the traffic control system data. For example, rows **322**, **324**, and **326** all pertain to the same aircraft, having a registration number of N714XR. Row **322** shows record of a flight from PIT to ROA. Row **324** shows the next flight of the aircraft from ROA to ZZV. Row **326** shows the next flight of the aircraft from PKB to ROA. Embodiments detect that the departing location of a flight is different than the arrival location of the previous flight of that aircraft, and indicate it as a gap. Thus, a gap occurs when there is a mismatch between the departing location of a flight and the previous arrival of that flight. While it is possible that an aircraft can be moved on land (e.g. by truck) from one location to another, a more typical scenario to explain the gap is that the aircraft made a VFR flight from ZZV to PKB. Again, using a remote transponder sensing unit installed in proximity to airports, the transponder information from the aircraft is recorded, and retrieved by the taxability status system **104**, and the VFR flights can be considered so that the proper taxes can be collected. Row **328** shows data for an aircraft that is correlated with a call sign. In this case, the registration number N662CT is correlated with call sign ABC123.

FIG. **4** is a block diagram of a remote transponder sensing unit **400** in accordance with embodiments of the present invention. Remote transponder sensing unit **400** includes a processor **402**, a memory **404** coupled to the processer **402**, and storage **406**. The memory **404** may be a non-transitory computer readable medium. Memory **404** may include RAM, ROM, flash, EEPROM, or other suitable storage technology. The memory **404** contains instructions, that when executed by processor **402**, enable communication aircraft transponders via transponder transceiver **410**. The transceiver is coupled to antenna **412** to enable transmitting and/or receiving signals from aircraft. Remote transponder sensing unit **400** further includes a network communication interface **408**. In embodiments, network communication interface **408** includes a wireless communications interface such as a cellular data interface and/or a Wi-Fi interface. In embodiments, the storage **406** stores aircraft activities (such as takeoffs and landings) detected from nearby transponders. The data may then be periodically downloaded by the taxability status system **104** via network communication interface **408**. In embodiments, the remote transponder sensing unit **400** may be installed near an airport runway, such that it can receive the identifying data from an aircraft transponder as it takes off or lands. In embodiments, the remote transponder sensing unit **400** may be used for associating a call sign with an aircraft registration number. For example, if air traffic control data has a record of an aircraft with a call sign of ABC123 landing at the same time that the remote transponder sensing unit **400** detects an aircraft with a registration number of N662CT, then the call sign of ABC123 is associated with the registration number of N662CT. Thus, embodiments include associating a call sign with a registration number of the aircraft.



FIG. **5** shows a flowchart **500** indicating process steps for embodiments of the present invention. In process step **550**, traffic control system information is obtained. This can include data from the FAA SWIM Flight Data Publication Service (SFDPS) and well as the Remote Transponder Transceiver. In process step **552**, gaps are detected in the traffic control system information. In embodiments, this can include performing a check, for a given aircraft, that a departure airport matches the arrival airport of the previous landing. If it does not (as shown in row **326** of FIG. **3**), then it is considered as a gap. In process step **554**, a primary location is computed. In embodiments, the primary location is the location the aircraft is deemed to be hangared at for tax purposes. In process step **558**, a check is made to see if the number of gaps detected exceeds a predetermined threshold. If so, then an alert is included at **560**, which is included in the vehicular asset taxability status report created at process step **556**. The alert provides an indication of possible unrecovered tax revenue, due to gaps that may result in missing tax collection opportunities at various jurisdictions.

FIG. **6** shows a flowchart **600** indicating additional process steps for embodiments of the present invention. In some cases, the primary location is the location where the aircraft has been hangared for the most time within a given tax period. However, in certain cases, another location may be considered as the primary location. Other metadata, such as owner and/or pilot residence may be a factor in determining the primary location. In process step **650**, an aircraft storage location list is compiled. In embodiments, this may include the top three airports where the aircraft spent the most time. In process step **652**, owner metadata is obtained. In embodiments, the owner metadata may be obtained from FAA registration information, and/or other sources. In process step **654**, pilot metadata is obtained, if available. In embodiments, the pilot metadata may include an address and/or telephone number for the chief pilot of the aircraft. In process step **656** a primary location is determined. As stated previously, in some cases, the primary location may be augmented with the owner and/or pilot metadata. As in the previously stated example, if an aircraft spends 53% of the year hangared at PKB in West Virginia, and 40% of its time hangared at PIT in Pennsylvania, and the owner has a Pennsylvania address, then the primary location of the aircraft may be deemed to be Pennsylvania, even though that is not the location where the aircraft was hangared for the most time.

FIG. **7** shows an exemplary vehicular asset taxability status report **700** in accordance with embodiments of the present invention. In embodiments, the report **700** may be prepared for a given aircraft, and the tax liability may be assessed for a given airport **702**, for a given tax period **704**.

The report **700** may include a registration section **706**. In embodiments, the registration section **706** may include, but is not limited to a registration number for the aircraft, a serial number for the aircraft, a manufacture year for the aircraft, a name of the operator, an address of the operator, the manufacturer of the aircraft, and/or the model of the aircraft.

The report **700** may include a personnel section **708**. In embodiments, the personnel section **708** may include, but is not limited to an owner name, an owner phone number, an owner state, an operator contact, an operator phone number, a chief pilot name, and/or a chief pilot phone number.

The report **700** may include an estimated tax liability section **710**. In embodiments, the estimated tax liability section **710** may include, but is not limited to an appraised value, and a tax value. The appraised value may be determined based on vehicle metadata **118** and vehicle valuation data **120**. The tax value may be based on information obtained from legal corpus **130** which may include rules, regulations, tax tables, and other tax information for one or more jurisdictions.

The report **700** may include a most frequently visited airport section **712**. In embodiments, the most frequently visited airport section **712** may include, but is not limited to the top three airports visited, and the amount of time spent at each of the airports within the tax period.

The report **700** may include an airport activity section **714**. In embodiments, the airport activity section **714** may include, but is not limited to the number of arrivals and departures at each of the airports listed in most frequently visited airport section **712**. The airport activity section **714** may further include

The report **700** may include a data gaps section **716**. The data gaps section provides an indication of how many data gaps exist within the tax period of the report. While a few gaps may be expected over the course of a year, if there are too many gaps, then an alert message may be included in the report to call attention to the excessive number of gaps. Thus, embodiments include indicating an alert on the report in response to detecting gaps above a predetermined threshold.

In addition to the information shown in FIG. **7**, a variety of additional information can be shown. Furthermore, report generation options can include information organized in numerous ways. Embodiments may include data organized by airport and/or by aircraft. Embodiments may include filters that show data only for aircraft that have landed at an airport in excess of a predetermined number of landings. Embodiments may include filters that show data only for aircraft that have been hangared at an airport in excess of a predetermined number of days. Embodiments may include filters that show data only for aircraft that have traffic control data gaps in excess of a predetermined number of gaps. Other filters and sorting methods are possible to facilitate convenient and effective collection of tax revenue based on aircraft value and itinerary.

As can now be appreciated, disclosed embodiments provide improvements in determining a taxability status for a vehicular asset. Vehicles such as aircraft can cost well over a million dollars. As such, the tax liabilities for a jurisdiction can be in the tens of thousands of dollars or more in certain cases. Allowing jurisdictions such as states and counties to recoup some of the tax revenue they are owed can serve to provide funds for airport infrastructure maintenance and improvements. While the aforementioned examples are primarily directed to aircraft, disclosed embodiments can be used for other vehicular assets, such as boats, yachts, large shipping vessels, trains, recreational vehicles (RVs), motor homes, and the like.

Although the invention has been shown and described with respect to a certain preferred embodiment or embodiments, certain equivalent alterations and modifications will occur to others skilled in the art upon the reading and understanding of this specification and the annexed drawings. In particular regard to the various functions performed by the above described components (assemblies, devices, circuits, etc.) the terms (including a reference to a "means") used to describe such components are intended to correspond, unless otherwise indicated, to any component which performs the specified function of the described component (i.e., that is functionally equivalent), even though not structurally equivalent to the disclosed structure which performs the function in the herein illustrated exemplary embodiments of the invention. In addition, while a particular feature of the invention may have been disclosed with respect to only one of several embodiments, such feature may be combined with one or more features of the other embodiments as may be desired and advantageous for any given or particular application.



What is claimed is:

**1**. A computer-implemented method, comprising:

obtaining traffic control system information for an aircraft from a first database, the traffic control system information indicative of departures and arrivals of the aircraft at a plurality of airports;

detecting a gap in the traffic control system information for the aircraft, the gap being indicative of a time for which a location of the aircraft is indeterminate based upon the traffic control system information, wherein the gap is detected based on a mismatch in the traffic control system information between a departure location of the aircraft and a previous arrival location of the aircraft;

receiving transponder data from a transponder that is mounted on board the aircraft by way of a transceiver positioned in proximity to an airport, the transponder data indicative of at least one of an altitude or a speed of the aircraft;

determining, based upon the at least one of the altitude or the speed of the aircraft indicated in the transponder data, that the aircraft landed at the airport during the time for which the location of the aircraft was indeterminate; and

computing, by a computer, a taxability status of the aircraft based upon the aircraft being present at the airport during the time for which the location of the aircraft was indeterminate.

**2**. The method of claim **1**, further comprising obtaining vehicle metadata for the aircraft.

**3**. The method of claim **2**, wherein obtaining vehicle metadata for the aircraft comprises obtaining a vehicle serial number.

**4**. The method of claim **2**, wherein obtaining vehicle metadata for the aircraft comprises obtaining a vehicle engine type.

**5**. The method of claim **2**, wherein obtaining vehicle metadata for the aircraft comprises obtaining a vehicle model type.

**6**. The method of claim **2**, wherein obtaining vehicle metadata for the aircraft comprises obtaining a vehicle manufacture date.

**7**. The method of claim **1**, further comprising obtaining owner metadata for the aircraft.

**8**. The method of claim **7**, wherein obtaining owner metadata for the aircraft comprises obtaining an owner address.

**9**. The method of claim **1**, further comprising obtaining pilot metadata for the aircraft.

**10**. The method of claim **9**, wherein obtaining pilot metadata for the aircraft comprises obtaining a pilot address.

**11**. The method of claim **1**, further comprising associating a call sign with a registration number of the aircraft.

**12**. The computer-implemented method of claim **1**, wherein the traffic control system information is first traffic control system information, where receiving the first traffic control system information for the aircraft comprises receiving second traffic control system information for a plurality of aircraft that includes the aircraft, the second traffic control system information for the plurality of aircraft indicates the departures and arrivals of the aircraft based upon a callsign of the aircraft, the method further comprising:

receiving second transponder data from the transponder that is mounted on board the aircraft, the second transponder data including a registration number of the aircraft

determining that the callsign and the registration number are representative of the same aircraft based upon the second transponder data and the second traffic control system information, wherein determining that the aircraft was present at the airport at the time for which the location of the aircraft is indeterminate is based further upon the callsign and the registration number being determined to be representative of the same aircraft.

**13**. A system, comprising:

a transponder transceiver positioned in proximity to an airport, and that is configured and disposed to receive transponder data from an automatic dependent surveillance-broadcast (ADS-B) transponder mounted on an aircraft, the transponder data indicative of at least one of an altitude or a speed of the aircraft;

a processor; and

a memory coupled to the processor, wherein the memory contains instructions, that when executed by the processor, cause the system to perform steps of:

obtaining traffic control system information for the aircraft from a first database, the traffic control system information indicative of departures and arrivals of the aircraft at a plurality of airports, the traffic control system information including a mismatch between a departure location of the aircraft and a previous arrival location of the aircraft, the mismatch indicative of a time during which a location of the aircraft is indeterminate;

determining, based upon the at least one of the altitude or the speed of the aircraft indicated in the transponder data, that the aircraft landed at the airport during the time for which the location of the aircraft was indeterminate; and

computing a taxability status of the aircraft based upon the aircraft being present at the airport during the time for which the location of the aircraft was indeterminate.

**14**. The system of claim **13**, wherein the memory further comprises instructions, that when executed by the processor, cause the system to determine that the mismatch between the departure location and the previous arrival location pertains



to a same aircraft that includes the ADS-B transponder, wherein computing the taxability status of the aircraft is based upon the mismatch pertaining to the same aircraft that includes the ADS-B transponder.

**15**. A computer program product embodied in a non-transitory computer readable medium, the computer program product comprising instructions which cause one or more processors to perform operations of:

obtaining traffic control system information for an aircraft from a first database, the traffic control system information indicative of departures and arrivals of the aircraft at a plurality of airports;

detecting a gap in the traffic control system information for the aircraft during which a location of the aircraft is indeterminate from the traffic control system information alone, wherein detecting the gap is based upon a mismatch in the traffic control system information between a departure location of the aircraft and a preceding arrival location of the aircraft;

receiving transponder data from a transponder that is mounted on board the aircraft by way of a transceiver positioned in proximity to an airport, the transponder data indicative of at least one of an altitude or a speed of the aircraft;

determining, based upon the at least one of the altitude or the speed of the aircraft indicated in the transponder data, that the aircraft landed at the airport during a time for which the location of the aircraft was indeterminate; and

outputting an indication that a tax may be due on the aircraft in a jurisdiction that includes the airport based upon determining that the aircraft landed at the airport during the time for which the location of the aircraft was indeterminate.

**16**. The computer program product of claim **15**, wherein the traffic control system information is indicative of departures and arrivals for a plurality of aircraft that includes the aircraft, the traffic control system information for the plurality of aircraft indicates the departures and arrivals of the aircraft based upon a callsign of the aircraft, the operations further comprising:

receiving second transponder data from the transponder that is mounted on board the aircraft, the second transponder data including a registration number of the aircraft

determining that the callsign and the registration number are representative of the same aircraft based upon the second transponder data and the second traffic control system information, wherein determining that the aircraft was present at the airport at the time for which the location of the aircraft is indeterminate is based further upon the callsign and the registration number being determined to be representative of the same aircraft.

* * * * *

# EXHIBIT B

# BID PROPOSAL FOR AIRCRAFT VALUATION (SRC0000009508)

**THIS PROPOSAL IS PREPARED FOR:**

Alabama Department of Revenue (ALDOR)
Property Tax Division

**THIS PROPOSAL IS PREPARED BY:**

Specialized Tax Recovery
1284 Som Center Road
PO Box 299
Cleveland, OH 44124

**SUBMITTED DATE:** August 25, 2022

**FOR OFFICIAL USE ONLY. This document includes data that shall not be disclosed outside the ALDOR and shall not be duplicated, used, or disclosed-in whole or in part-for any purpose other than to evaluate this proposal. If, however, a contract is awarded to this offer or as a result of-or in connection with-the submission of this data, the ALDOR shall have the right to duplicate, use, or disclose the data to the extent provided in the resulting contract. This restriction does not limit the ALDOR's right to use information contained in this data if it is obtained from another source without restriction.**

**INTRODUCTION**

The process of aircraft discovery, valuation, and managing appeals is a challenging task that has become overwhelming and frustrating for taxing authorities nationwide.

Local tax authorities are dealing with increased workloads, reduced resources, and a lack of specific industry knowledge in the field of aviation, which makes managing aircraft difficult and often leaves room for misreporting, under-reporting, and non-filing aircraft. Not only is the process difficult, but the discovery, valuation, and appeals related to aircraft is only a fraction of the overall responsibilities within the taxing district. Most jurisdictions focus heavily on real property and managing the ever-increasing number of appeals related to home values. In the case of Alabama for the 2023 tax year, this monumental task has now been shifted to the Department of Revenue under House Bill 118 passed in May 2021, who has never had to manage this process or had the resources to do so. With an estimated 5,000 aircraft based in the state of Alabama, the workload to accomplish the before mentioned task will be substantial.

Today, more than ever, aircraft owners are becoming more strategic about how they manage their assets in an effort to minimize tax liability. Each aircraft owner is acutely aware of the various taxes imposed on aircraft. Personal property taxes and sales & use taxes require careful planning to ensure compliance. Aircraft owners are aware of the limitations and restrictions of the taxing departments and will leverage their knowledge to avoid detection and the associated tax liability. One proof of this is the decreasing number of aircraft being registered in the state of Alabama (-2.5% from 2021 to 2022), while registrations in non-property tax states like Delaware continue to increase to over 10,000 aircraft and growing. Other practices like blocking tail numbers from being tracked publicly is another way aircraft owners attempt to "hide" their aircraft from being discovered. All of these strategies can add up to a large number of omitted aircraft that ultimately mean less collected tax dollars. It is in the state and local governments' best interest to ensure uniform compliance across the state for all taxable aviation assets.

Specialized Tax Recovery (STR) recognizes the need for this opportunity in Alabama and every other jurisdiction throughout the United States. STR was already at work within Alabama looking for ways to support the local tax authorities statewide when this transition of responsibility to the ALDOR developed. We continue in that desire to support the DOR's new responsibility of ensuring equitable taxation of aircraft throughout the state of Alabama by submitting this proposal. We appreciate your consideration and the opportunity to share with you our experience supporting this unique, yet daunting, responsibility.

***Importantly, STR has been able to take advantage of the last six months analyzing the ALDOR accounts at our own risk to ensure this proposal includes the STR expected results. Our conclusion is that STR has potential of $5,753,407 in newly discovered tax revenues under this project. This new revenue easily pays for our proposed project costs outlined herein by many times over. Our proposal is not hypothetical and includes our many years' experience of proven results for other customers. This ALDOR RFB is a top priority for the STR team, and we are confident that the ALDOR team will recognize our efforts put forth in the following pages. We look forward to executing the RFB requirements and delivering superior results to ALDOR if we are chosen for this requirement. We have the resources and are prepared to start immediately upon award, delivering the results outlined herein on the published schedule. Thank you for this opportunity!***



Back to Table of Contents

**TABLE OF CONTENTS**


**I. COMPANY PROFILE** .......... 4
- a. HISTORY .......... 4
- b. PATENTED PROCESS .......... 5
- c. SERVICES OFFERED .......... 6
- d. PORTFOLIO, REFERENCES AND NARRATIVES .......... 7

**II. AIRCRAFT VALUATION RFB – SRC0000009508** .......... 11
- a. PROCESS .......... 11
  - 1) Discovery .......... 11
  - 2) Standard Report .......... 12
  - 3) Additional reports .......... 12
- b. VALUATION .......... 13
  - 1) Nationally Recognized Publisher .......... 13
  - 2) Alternative Valuation Method .......... 13
  - 3) Market Value Report .......... 13
  - 4) Value Adjustments .......... 13
- c. APPEALS .......... 14
  - 1) Value/Uniformity .......... 14
  - 2) Use/Taxable Status .......... 14
  - 3) Situs/Nexus .......... 14
  - 4) Appeal Experience and Examples .......... 15
- d. TIMELINE .......... 16
- e. REVENUE PROJECTIONS .......... 16
- f. PRICING .......... 17
  - 1) Standard Report .......... 17
  - 2) Market Value Report .......... 17
  - 3) Detailed Report .......... 17
  - 4) Appeal Support .......... 17
  - 5) New Discovery Fee .......... 17
  - 6) Pricing Matrix .......... 18
- g. ESTIMATED COST OF PROJECT .......... 18
- h. BILLING/INVOICING .......... 19
- i. PLAN FOR DATA DELIVERY .......... 19
- j. RFB SPECS – REFERENCE OF RESPONSES .......... 20
- k. TERMS AND CONDITIONS .......... 22

APPENDICES .......... 24

# I. COMPANY PROFILE

## a. HISTORY

Specialized Tax Recovery (STR) is a unique technology-based, investigative tax discovery service founded in 2009 by experts in the field of aviation. Our Advanced Transitive Range Analysis (ATRA™), a unique software design and process was created out of necessity to properly monitor and track transitive (aviation) assets. Utilizing our patented system, our aviation experts provide all the necessary documentation for state and local governments to properly administer their tax code. We specialize in discovering and identifying taxable transitive assets, aiding in aircraft appraisals, providing appeal support, and increasing tax collections as a result of our services. In 2008, STR created the only system capable of identifying missing taxable aircraft assets, since then we have spent the last 14 years improving our system and maximizing discovered taxes throughout the country. Today, we remain the only company capable of producing the necessary documentation and support to ensure a complete and accurate aviation tax discovery project, such as the State of Alabama DOL project.

**Our Vision**—Create value and continuity for all government revenue offices

**Our Goal**—Accurate, uniform, and complete tax discovery, valuation, and appeal process on aviation assets

**Our Mission**—Discover, identify, and appraise all tax collectables for transient assets nationwide

**Our Strategy**—Provide a repository of information and service center for customers

<u>STR Management Expertise: We Know the Aviation Industry</u>

The STR team includes a seasoned group of professionals with management expertise across diverse business disciplines, specifically in aviation and tax discovery processes. Our team consists of aviation and property tax industry experts including licensed FAA pilots, licensed FAA mechanics, previous elected tax officials, and more. The performance record of the management team lies within our proven experience and customer referrals with years of experience satisfactorily completing projects for various government entities—local, state, and federal. Key management personnel have extensive backgrounds and experience in the aviation industry, tax specialty know-how, high integrity results and have consistently demonstrated their ability to deliver significant benefits to our customers. Our aviation expertise includes but is not limited to the following.

***Why Hire Specialized Tax Recovery?***

- Patented process (US Patent No. 10,956,988) proven over a decade. STR has a second patent pending further protecting our unique invention and process.
- A differentiator of "Technical Competence" benefiting ALDOR with a proven outcome.
- STR has completed substantial diligence and analysis for this ALDOR project and has provided results with near guaranteed results from STR.
- Significant Corporate and past performance references comparable to the ALDOR requirements.
- Experience partnering with government entities including local, state, and federal.
- Certified aviation appraisers and expert witnesses available for appeal processes.
- Senior leadership experience in FAR Part 135 (commercial), Part 91 (private/business) and Part 121 (airline) flight operations.
- Aviation database development with over 20 years of historical data, flight tracking & valuation studies.

- Unique capability to identify taxable assets and recovery opportunities thru our patented ATRA system.
- Former elected Assessor with 20+ years in office on staff in an advisory role
- Personal Property and Sales & Use tax experience in the business aviation sector across a dozen states.
- Committed to serving government and dedicated to working "hand in hand."
- Onsite services including expert witness or canvasing included in our full-service contract.
- Extensive experience in the documentation of aircraft ownership and transaction records.
- 80+ years of aviation industry experience across our combined employee workforce.
- STR has proven experience necessary for investigation, discovery, and documentation to minimize department workload. STR goal of augmenting the State of Alabama team, when necessary.

### b. PATENTED PROCESS

Specialized Tax Recovery is the assignee and owner of U.S. Patent No. 10,956,988, which is titled "System and Method for Determining a Taxability Status for a Vehicular Asset." Our patent covers certain inventive aspects of our discovery process and establishes the situs of aircraft for taxing purposes. In addition, STR has filed a second patent application that is currently pending to further enhance our product that we have invented. Since 2008, our discovery process has been refined and continuously enhanced to become the most comprehensive program for aviation discovery and reporting program available.

This proprietary and patented process combined with our experienced multi-dimensional team offers services to taxing authorities like ALDOR, firmly differentiates STR from any other proclaimed aviation tax discovery service. Founded in 2008, STR is ***the only proven, patented, and experienced aviation tax discovery firm in the United States.*** A few hobbyists have dabbled in the industry for brief periods, but STR is the only proven aviation specific service with a track record and demonstrated/proven results.

HOW DOES STR WORK?

1. ATRA™ –Advanced Transitive Range Analysis

2. VR-CAS –'Value Right' Certified Appraisal System

- Specialized Evaluation Tools
- Proprietary Data Bases and System Input Feed
- Customized Tracking Capabilities
- Current & Historical Tax Revenue Data
- Customizable Reporting and Tracking
- Terabytes of Data Updated Weekly
- 30+ Data Sources (and growing)
- Contains Nationwide Assessor Tax Rosters



STR-Patented Advanced Integrated Technology Platforms – How it works!

STR's Technology details aircraft ownership & monitors:

- All registered aircraft take-offs & landings
- All current & historical aircraft information
- Ownership, title, and registration changes
- Days/nights registered at each airport nationwide and international
- Tracking and recording of all registered aircraft flights
- Post-transaction aircraft activity and locations
- Specialized aviation evaluation tools
- Proprietary databases and system input channels
- Customized tracking capabilities
- Current & historical tax revenue data
- Special access to FAA and DOT records including leases, lien filings, certifications, registrations and more

How Is Tax Revenue Missed?

As transient assets, aircraft can avoid taxes in multiple ways, below are a few of many examples:

- Ownership changes every 2.4 years, according to AMSTAT historical database
- Required FAA registration changes every three years regardless of ownership change
- Aircraft change "home base" airport every 1.5 years, according to AMSTAT historical database
- Tax free registration schemes (Delaware & other tax-free states)
  - Over 10,000 aircraft are registered in Delaware, a common mitigation strategy
- Failure to report—unintentional or intentional

### c. SERVICES OFFERED

Specialized Tax Recovery is dedicated to providing top-notch service for our clients. We provide fully customized support for all of our offered services, ensuring completeness and accuracy in all of our work. Each project is customized to our client's needs to ensure all data points, documentation requirements, and timetables are met to satisfaction. Our goal, just like yours, is to ensure that all aircraft are listed and valued correctly within your established protocol. We offer three primary services to support our clients.

1. Discovery

Our primary function is to ensure that any and all aircraft in our client's jurisdiction are reporting as required. Our patented process utilizes dozens of inputs to create "the Big Picture" for each aircraft nationwide allowing STR to assign a home base for each aircraft for a selected time period. We produce the necessary documentation to prove situs, nexus, and domicile for each and every aircraft to ensure that a uniform and accurate list of aircraft is created each year. The discovery process will reveal any non-filing aircraft over the course of the desired tax years and will compile the necessary documentation and factual data to address any missing tax liability.

2. <u>Valuation Support</u>

There are many different regulations imposed on taxing authorities for valuing property nationwide. Each jurisdiction utilizes different standards and uniformity process to value and maintain their aircraft rosters. STR will work with the client to provide the necessary supporting documentation to value ALDOR accounts. Our initial consultation with our clients will determine the preferred methodology and required information to make the most accurate and uniform valuations.

3. <u>Appeal Support</u>

Discovered aircraft accounts are typically able to appeal in two forms: Situs and Valuation/Uniformity. During our discovery process, STR will compile all of the necessary documentation to address both of these possible appeals. Each aircraft goes through dozens of hours of review to ensure that only the accounts with the required documentation are recommended for noticing. If appeals do arise from discovered aircraft, STR has the ability to gather additional supporting evidence and review owner submitted documents to ensure accuracy. From fuel receipts to market analysis and market comparisons, we have seen it all! We have experience in hundreds of appeals and are familiar with the requirements to conclude a successful and uniform appeal resolution.

> "Sometimes an owner provides nothing. Sometimes they give me a pile of fuel receipts from out of state to try and confuse us. They throw it all at the wall to see what sticks. STR helped me manage and make sense of the smoke and mirrors. Huge help."
>
> - Personal Property Manager, MO




### d. PORTFOLIO, REFERENCES AND NARRATIVES

Specialized Tax Recovery has a proven track record of successful discovery projects. As of today, STR has performed and focused its work in multiple states including Texas, Georgia, Missouri, South Carolina, and Florida.



Back to Table of Contents

By the end of 2022, we anticipate 3 more states coming online with a discovery program. Each and every completed program produced the expected results (+/- 10% adjustment for local decisions) of discovering non-filing accounts and mis-reporting aircraft accounts. These accounts have complied an impressive collection of accolades and experience. We have completed successful discoveries as far back as tax year 2014. As of today, ***STR has discovered over $1 Billion in un-reported fair market values, generating over $25 Million in tax dollars.***

One key benefit to utilizing STR in a discovery program, such as the ALDOL RFB, is the extensive network created in our national ATRA database with over 20 years of historical data. STR has established connections with hundreds of state and local government taxing offices to provide us with the unique ability to further drill down into the multiple layers of aviation taxation nationwide. For example, during an audit in Georgia, STR discovered a non-filing account with split liability in Tennessee. STR was successful in assisting both jurisdictions to ensure that the aircraft filed in the appropriate state and county for the respective years. We can connect the dozens of channels of information to provide the most comprehensive look at each asset to ensure proper reporting.

STR has also been awarded multiple sole source awards across multiple states. For each project that STR has completed, it has been identified as the only company capable of possessing the ability to provide the necessary documentation, support, and evidence needed to fully enforce the various tax codes across the nation.

**1) Past Performance: Full-Service Aircraft Discovery Program**

**Authority:** Chatham County, GA
**Contract Identification**: Aircraft Discovery Program
**Discovered Tax Dollars:** $4,971,552
**Discovered FMV:** $255,640,833
**Term of Contract:** 2018, 2019, 2020, and 2021
**Start and End Dates:** November 2020 to Present (for future years)

**Project Summary:** STR audited 2018-2021 and discovered 21 additional aircraft with 53 individual years of tax liability with a combined FMV of $255,640,833 that generated $4,971,552.54 in newly discovered tax dollars. The location of Savannah proved to be a target to claim multiple places of situs. With the proximity to the border, the vast port options in the city, and a large jet manufacturer/service center located at SAV, Chatham was a challenging mixture of dealer exemptions, out-of-state registrations, and overall knowledgeable aircraft owners that knew how to avoid detection. After processing the entirety of the aircraft fleet, it proved to be a fruitful program that provided missing revenue and resulted in complete and accurate rosters.
**Point of Contact:** Linda Cramer – Assistant County Manager
**Phone:** 912-652-7869
**Email:** lbcramer@chathamcounty.org
**Client Testimonial:** *"I am happy to recommend STR's program to any jurisdiction tasked with managing aircraft ad valorem taxation"* – Linda Cramer, Assistant County Manager
**Letter of Recommendation:** Attached

**2) Past Performance: Full-Service Aircraft Discovery Program**

**Authority:** Clay County, MO
**Contract Identification**: Aircraft Discovery Program
**Discovered Tax Dollars:** $1,524,722
**Discovered FMV:** $66,110,572

**Term of Contract:** 2018
**Start and End Dates:** July 1, 2021, continued

**Project Summary:** STR audited multiple years going back to 2018. In just 2018 alone STR discovered 13 aircraft totaling a fair market value of $66,110,572: some having multiple years of liability. This resulted in $1,524,722 in newly discovered tax revenue. Before the audit, the County Assessor described a few challenges faced by the department: lack of data to prove airport use, unable to accurately value aircraft, and a need for upgraded recording and tracking of aircraft rosters. We quickly addressed the omitted aircraft, and had many accounts collected and closed in under 30 days.
**Point of Contact:** Cathy Rinehart – County Assessor
**Phone:** 816-853-9780
**Email:** cathyrinehart10@gmail.com
**Client Testimonial:** "I was interested from the moment I was approached with this service as it filled an especially important gap in our auditing functions. STR provided a turn-key solution to the discovery, valuation, appeal support, and collection necessary in applying the tax code specifically to aircraft. We partnered with STR for a full-service program to increase the accuracy of our tax rosters, and they delivered exactly as advertised." – Cathy Rinehart, County Assessor.
**Letter of Recommendation:** Attached

**3) Past Performance: Full-Service Aircraft Discovery Program**

**Authority:** Tom Green County CAD, TX
**Contract Identification**: Aircraft Discovery Program
**Discovered Tax Dollars:** $2,230,070
**Discovered FMV:** $121,164,328
**Term of Contract:** 2019, 2020, and 2021
**Start and End Dates:** October 2021 thru February 2022

**Project Summary:** Over three tax years, STR discovered 16 aircraft with 24 combined years of liability totaling $121,164,328 in FMV, generating approximately $2,230,070 in newly discovered tax dollars. Before STR, the CAD noted issues with compliance of their aircraft. In Texas only business aircraft are taxable based on the apportionment ratio of the departures in Texas divided by the total departures in the US for the calendar year. The department relied on a self-reporting system and had few resources to check owner claims of business *vs* personal use. STR made an immediate impact and addressed multiple claims of personal use, only to prove the owners were indeed using their aircraft for business intentions. It was a highly successful program and the client has plans to revisit another audit in tax year 2023.
**Point of Contact:** Tyler Johnson – Chief Appraiser
**Phone:** 325-658-5575
**Email:** tyler.j@tomgreencad.com
**Client Testimonial:** "With his vast knowledge of not only the aircraft, but also the supporting documentation needed to value them, I would strongly recommend this service and look forward to working with the Specialized Tax Recovery team and Mr. Butara in the future." - Tyler Johnson, Chief Appraiser
**Letter of Recommendation:** Attached

**4) Current Performance: Full-Service Aircraft Discovery Program**

**Authority:** Fulton County, GA

**Contract Identification:** Aircraft Discovery Program
**Discovered Tax Dollars:** $11,721,793
**Discovered FMV:** $739,571,393
**Term of Contract:** 2014, 2015, 2016, 2017, 2018, 2019, 2020, 2021, 2022, 2023, 2024
**Start and End Dates:** 7/8/2021 through 12/31/2024
**Project Summary:** One of STR's most extensive contracts is with Fulton County, GA. STR entered into an agreement with Fulton County on July 8, 2021, to audit 11 years (7 years back, current, and 3 years forward). Through the course of work thus far, STR has discovered 32 aircraft having 108 years of tax liability. STR has discovered $739,571,393 in fair market value yielding the county $11,721,793 in additional tax revenue to Fulton County.

**5) Current Performance: Full-Service Aircraft Discovery Program**

**Authority:** Beaufort County, TX
**Contract Identification:** Aircraft Discovery Program
**Discovered Tax Dollars:** $1,399,207
**Discovered FMV:** $94,931,326
**Term of Contract:** 2019, 2020, 2021, 2022, 2023, 2024, 2025
**Start and End Dates:** 3/17/22 continued

**Project Summary:** STR has completed an audit for 2019-2022 for Beaufort County, TX. In those four years of discovery STR found 20 aircraft, having 43 years of tax liability, for a total fair market value of $94,931,326. The resulting newly discovered tax revenue for Beaufort County is $1,399,207. The contract is ongoing through 2025.

**6) Current Performance: Aircraft Appeal Support**

**Authority:** Uvalde Central Appraisal District, TX
**Contract Identification:** Aircraft Appeal Documentation and Support
**Contract Value:** Hourly Rate as Needed
**Term of Contract:** 2022 and future
**Start and End Dates:** 8/3/2022 – Ongoing

**Project Summary:** STR has been honored to work with the Uvalde CAD during an incredibly challenging time. STR entered into an agreement with Uvalde on August 3, 2022, providing much needed support with aircraft appeals. The scope of work has been to support the county with our professional industry expertise, utilizing an extensive network of industry resources, and supplying the county with documentation that solidifies their response to numerous aircraft appeals. The appeal support has ranged from situs, conformity, to valuation. This partnership is ongoing, and an intent to enter a full-service discovery contract is imminent.

**7) Current Performance: Sales & Use Aircraft Discovery Program**

**Authority:** State of Florida Department of Revenue – Sales & Use Pilot Program
**Contract Identification:** Sales & Use – Aircraft Discovery Program
**Estimated Discovered Tax Dollars:** $1,852,950
**Estimated Discovered FMV:** $30,882,500
**Term of Contract:** 2020

**Start and End Dates:** April 2022-continued

**Project Summary:** STR is currently assisting the DOR in determining the yearly impact of non-compliant aviation assets regarding sale and use taxation. Utilizing the patented process and information provided by STR to better monitor and enforce the tax code. As a starting point, STR has blindly identified 13 accounts with a FMV of $30,882,500 and an estimated newly discovered tax value of $1,852,950. This represents 5% completion of the project to date.

*****SEE ATTACHED COMPLETE REFERRALS, LETTERS OF RECOMMENDATION, and RECOVERY BREAKDOWN*****

## II. AIRCRAFT VALUATION RFB – SRC0000009508

### a. PROCESS

1) **Discovery –** The first step in our proposed process is the discovery of those aircraft liable for tax in the state of Alabama in accordance with §40-11-1, Code of Ala, 1975. STR will compile a preliminary list of aircraft meeting this code and make available to the ALDOR. STR has already completed significant work (at risk) in this area in preparation for this proposal and estimates 4,533 aircraft liable for property tax in Alabama. ***Those 4,533 aircraft reflect an estimated total fair market value of $1,403,267,211, which includes an <u>estimated $769,583,562 in newly discovered asset value</u> when compared to the Alabama tax year 2022 roster already provided***. This new roster for tax year 2023 is projected to yield $10,490,826 in tax revenue (using 42 mills – state average).

| *Aircraft* | Already assessed | STR Newly Discovered | Percent Increase |
|---|---|---|---|
| TY2023 | 2,047 | 2,486 | **121.4%** |

| $ | Est. Assessed FMV | STR Newly Discovered FMV | Projected New Revenue | +% |
|---|---|---|---|---|
| TY2023 | $633,683,649 | $769,583,562 | $5,753,407 | **121.4%** |






Back to Table of Contents

If STR is awarded this bid, STR would continue our review of this preliminary list and make available to the ALDOR on September 1 or within 24 hours of contract issuance. In addition, we will continue to audit those findings and further amend as necessary through the October 1 lien date.

STR will specifically accomplish this part of the process using the following means:

- **i.)** **Aircraft Return Form ADV-ACR45** – Open communication with the ALDOR and the local tax jurisdictions will be important throughout this process. Specifically, STR will work with the respective agencies to document those aircraft owners that have properly submitted the Aircraft Return Form (AVD-ACR45) within the previous October-December allotted period.
- **ii.)** **County Aircraft Rosters** – Using that same open line of communication, STR will document those aircraft that received Alabama returns for the previous tax year. In addition to Alabama rosters, STR already has an extensive network of tax authorities throughout the United States, which include rosters exceeding 47,000 assessed aircraft accounts over multiple years.
- **iii.)** **New Discovery** – STR will use numerous resources, including our own patented technology process, to document those aircraft that did not file an Aircraft Return Form and were not on the previous year's rosters.
- **iv.)** **Exemptions** – Aircraft that meet the exemptions provided by the ALDOR (i.e., crop dusters) will not be included in the final discovery list. Communication with the ALDOR and local tax authorities will be important to establish any aircraft already approved for an exemption (i.e., aircraft in inventory where dealer has already provided necessary documentation).
- **v.)** **Quality Control** – Before submitting a preliminary list to the ALDOR, STR estimates spending 288 man-hours reviewing and validating each aircraft to ensure tax liability for the new tax year.

**2)** **Standard Report –** The final deliverable for this step in the process will be a Standard Report listing all discovered aircraft liable for property tax in Alabama (see APPENDIX A). The Standard Report will be submitted with all necessary amendments by October 31. Included in that report will be the following:

- **i.)** Aircraft N-Number
- **ii.)** Serial Number
- **iii.)** Aircraft make
- **iv.)** Model
- **v.)** Year of Manufacture
- **vi.)** Aircraft physical location (including county)
- **vii.)** Location on October 1
- **viii.)** Tax Year
- **ix.)** Rendition Submitted (yes/no)
- **x.)** Rendition Owner Value
- **xi.)** Previous Year Liability (yes/no)
- **xii.)** Owner name
- **xiii.)** Owner address
- **xiv.)** Owner email and/or phone (if available)
- **xv.)** Year of acquisition
- **xvi.)** Changes to registration during tax year
- **xvii.)** Purchase Price (if known)
- **xviii.)** Any known non-standard avionics: Cost of listed non-standard avionics

**3)** **Additional reports –** Supporting documentation, such as aircraft activity reports, including graphical representation of aircraft flights from base location, may also be included when possible. STR has already developed this type of report and an example is provided with this proposal (See APPENDIX D). STR estimates spending 563 man-hours supplementing the project with these additional reports.

**b. VALUATION**

The second step in our proposed process is to provide the necessary documentation to appropriately value each aircraft discovered in accordance with §40-11-6, Code of Ala, 1975, using the method of valuation outlined in 810-4-1-.09. As identified in section (1) of this code, aircraft values will be determined based on the lien date of October 1. STR estimates spending approximately 563 man-hours towards producing the required valuation reports.

Not only is a uniform and detailed process necessary for creating accurate reviews of aircraft values, but this is specifically where the vast industry knowledge of STR comes into full benefit. With our support, appealing aircraft owners no longer have the upper hand. All of their claims can be checked, reviewed, and confirmed or denied. The aviation experts at STR know all of the tricks and smoke screens utilized by aircraft owners to obtain a lower taxable value when they want the highest sale price possible! We are intimately familiar with aircraft upgrades, additions, avionics, and engines programs available that can cause huge variations in aircraft values.

The knowledge of STR is made even more valuable as the aircraft market has seen tremendous growth since the beginning of 2020. Along with the housing market, aircraft values of aircraft have risen 20%, 30%, even 40% in some markets. STR has direct experience in hundreds of aircraft transactions and is very experienced in the process of buying/selling aircraft.

While every taxing office has experienced real estate and real property personnel, not many have direct experience in buying, selling, modifying, leasing, maintaining, or owning aircraft. By partnering with STR, we share our industry experience with your staff to make sure they have all of the tools and information to make the best decision on each and every aircraft account.

STR will specifically accomplish this part of the process using the following means:

1) **Nationally Recognized Publisher** – Market Value determined using Aircraft Bluebook (See APPENDIX E) retail value adjusted for condition, engine hours since major overhaul, airframe hours, and modifications impacting value will be used for all aircraft where able, then multiplied by 89% [per section (2)(b) of the guidance].
2) **Alternative Valuation Method** – As outlined in section (2)(c) guidance, the purchase price, plus any additional cost for rebuilding or modifications after purchase, or other nationally recognized publications or area comparisons, will be used as a basis of Market Value.
3) **Market Value Report** – The final deliverable for this step in the process will be a Market Values Report for all aircraft discovered (See APPENDIX B) to support the valuation. The Market Value Report will be delivered to the ALDOR by December 1. Included in that report will be the following:
    - **i.)** Aircraft N-Number
    - **ii.)** Serial Number
    - **iii.)** Aircraft make
    - **iv.)** Model
    - **v.)** Year of Manufacture
    - **vi.)** Tax Year
    - **vii.)** Owner name
    - **viii.)** Rendition Owner Value
    - **ix.)** Retail value of average aircraft as of October 1
    - **x.)** Fair Market Value (FMV) of Aircraft (89% of average retail value as of October 1 lien date)
4) **Value Adjustments** – Value adjustments furnished on request by ALDOR are to be reported on a Detailed Report for aircraft conditions other than standard. The Detailed Report will include:

i.) Aircraft N-Number
ii.) Serial Number
iii.) Aircraft make
iv.) Model
v.) Year of Manufacture
vi.) Tax Year
vii.) Owner name
viii.) Fair market Value of Aircraft
ix.) Any known conversions and modifications
x.) Engine upgrades, replacements, enhancements
xi.) Air frame total time (AFTT)
xii.) Since major overhaul (SMOH)
xiii.) Condition

**c. APPEALS**

STR will further support the ALDOR with any appeals received, whether for situs or valuation, as requested, at an hourly rate. STR would specifically assist by providing additional documentation, valuation data, flight logs, etc. to settle any concerns from the taxpayer. STR has a successful track record in providing the necessary evidence to resolve most appeals quickly and effectively. We can utilize our appeal experience to minimize the time and staffing required to find the correct conclusion of any appeal that may arise. This service alone will help the ALDOR save hours of valuable time and corresponding dollars for litigation.

Ways that STR will help address appeals include, but is not limited to:

1. **Value/Uniformity** – To assist with value/uniformity appeals STR will provide detailed Nationally Recognized Publisher reports as able with adjustments made for AFTT (airframe total time), SMOH (time since major engine overhaul), and any modifications/upgrades to the aircraft (See APPENDIX E). Alternative methods of support: provision of any sales prices and/or asking prices available, market comparison reports to aircraft similar to the subject aircraft, as well as access to industry certified appraisers, if required.

2. **Use/Taxable Status** – To assist with use/taxable status appeals STR will utilize industry resources that specify primary use. Additionally, STR has access to the FAR 135 certified aircraft (being used for charter), extensive resources connecting all contacts/business associated with the aircraft (such as DBAs, Operators, etc.), and a thorough review of those airports most frequented.

3. **Situs/Nexus** – To assist with situs/nexus appeals STR can provide detailed activity reports reflecting most frequented airports, days at each airport, overnights at each airport, and percentage of departures/arrivals from each airport (See APPENDIX D). Additionally, images that reflect a visual representation of where each aircraft is primarily operating as well as comprehensive flight log data can be made available.




**Value/Uniformity**

- Provide detailed Nationally Recognized Publisher report with aircraft adjusted for specific AFTT, SMOH, and modifications.
- Review and provide purchase price and/or current asking price
- Provide comparison reports of similar aircraft for sale
- Provide desktop or certified appraisal as required
- Access to Certified Aircraft Appraisers

**Use/Taxable Status**

- Access to resources specifying primary use
- Access to FAA 135 certified aircraft (being used for charter)
- Access to extensive connections related to the aircraft such as DBAs, Operators, etc.
- Review of most frequented locations

**Situs/Nexus**

- Detailed reporting reflecting most frequented airports, days at each airport, overnights at each airport, and percentage of departures/arrivals from each airport
- Flight images to reflect visual representation of where the aircraft is primarily being used
- Flight log information

STR has gained extensive experience with providing appeal support. Examples of those are the following:

1) **Value/Uniformity Example** – An aircraft owner decided to appeal for a lower value than was noticed on their return. The owner provided a list of market comps of aircraft that they believed to prove a lower valuation for their aircraft. It was also claimed that their aircraft had such high-tech and expensive avionics the aircraft was difficult to sell and would go below market value. Through our additional research, in contradiction to the owners' claims, it was proven that the aircraft comps provided further supported the uniformity of the aircraft and aligned with the department appraisal methodology of using Bluebook values as of Jan. 1 for each year. To further the point, the aircraft was sold 1 year later in 2021 at a higher price than the previous year. This example also highlights the rare occasion that 2020-2022 has produced aircraft appreciation, instead of depreciating, causing higher than normal valuations as the market dictates. ** **See attached Appendix F for full report**

2) **Use/Taxable Status Example** – Texas code allows for only business use aircraft to be taxable, so there are many claims of personal use to avoid paying taxes. The Central Appraisal Districts (CAD) normally have a challenging time proving business *vs* private use of an aircraft. STR was able provide and prove the type of flights (Part 135 operating for charter clearly outlines business use of the aircraft) and the flight patterns of the aircraft. The aircraft owner happened to have multiple business locations inside

of Texas, and the flight image layover provided by STR clearly showed that the 4 most common traveled airports, were the same airports closest to their other business locations. When presented with the information, the owner dropped the appeal and payment was received.

3) **Situs/Nexus Example** – An omitted aircraft was noted for assessment and a notice was delivered to the owner. Upon receipt of the assessment, the owner claimed "I have never been to Kansas City, never flown there. I should not be getting a tax bill for my aircraft if I wasn't there." What the owner didn't know, was that STR had already provided the flight logs of the aircraft for the in-question tax year. Proving that the aircraft indeed flew over 85% of its flights to/from Kansas City and was indeed calling Kansas City home. When the assessor presented the information to the owner and asked to confirm the flight logs, the appeal was immediately dropped, and a check was received 5 days later.

**d. TIMELINE**

If awarded this contract, STR would build on the preliminary work already completed for the ALDOR and continue to develop the first task of compiling a preliminary list of aircraft. Our ability to meet these suggested deadlines will be contingent on date awarded, and any delays in the award process could alter ALDOR timeframe and expected delivery dates. We remain flexible in adjusting to external factors in scheduling timing. As understood from the RFB specifications, the desired timeline for the process is outlined below (requirements STR can meet).

***September 1, 2022, through October 31, 2022***– Initial discovery data made available to ALDOR
***October 1, 2022*** – Values to be recorded for each aircraft discovered
***October 31, 2022*** – Amended **Standard Report** submitted to the ALDOR as necessary and additional documentation provided to support discovery of jurisdictional location of all aircraft with taxable situs in Alabama beginning on October 1 (Example: Aircraft activity report for 9/1/21 – 10/1/22).
***November 30, 2022*** – Values reported to the DOR using **Market Value Report** or approved supplement
***ADHOC* – Detailed report** for aircraft conditions other than standard upon request by the DOR

| | SEPT | OCT | NOV | DEC | JAN | FEB | MAR | APR | MAY | JUN | JUL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Discovery** | Initial Discovery | | | | | | | | | | |
| **Amendments** | Standard Report Amendments | | | | | | | | | | |
| **Valuation** | | Market Value Report | | | | | | | | | |
| **Appeal Support** | Appeal Support Year-round | | | | | | | | | | |

**e. REVENUE PROJECTIONS**

Although STR was not provided with the TY2022 assessed values or total FMV, using average aircraft values we estimate that Alabama previously assessed a total FMV of $633,683,649. This would have resulted in approximately $4,737,419 in statewide tax revenue.

For TY2023, considering the STR newly discovered assets statewide, we project a potential additional $769,583,562 in FMV and newly discovered revenue of $5,753,407 (increase of 121.4%).

When adding the previously assessed revenue with the newly discovered revenue, STR is projecting a potential total of **$10,490,826 in statewide revenue in 2023**.

| $ | Est. Assessed Revenue | STR Newly Discovered Revenue | Total Projected Revenue | +% |
|---|---|---|---|---|
| **TY2023** | $4,737,419 | $5,753,407 | $10,490,826 | **121.4%** |



Back to Table of Contents




If STR only achieves 50% of the projected newly discovered aircraft the total tax revenue for the state of Alabama is still $7,614,122. The table below reflects the range of revenue projections from 50% to 100% of our estimated newly discovered STR tax revenues.

| % of Projected New Discovery | 100% | 75% | 50% |
|---|---|---|---|
| **Total Projected Revenue** | $10,490,826 | $9,051,317 | $7,614,122 |

**f. PRICING**

As requested in the RFB specifications, STR is submitting pricing for data provided in a Standard Report, pricing for Market Value Report, pricing for any additional adjustments submitted in a Detailed Report, and pricing for additional documentation and support for appeals to include any price points or discounts by number of aircraft. Below is the breakdown for each of those subcategories outlined in the RFB specifications:

1) **Standard Report –** The Standard Report, as described in the discovery process above, will be priced as follows: $70.00 for each aircraft listed.
2) **Market Value Report –** The Market Value Report, as described in the discovery process above, will be priced as follows: $38.00 for each aircraft listed and is derived from aircraft included in the Standard Report. To produce the market value report at this price, STR must complete the Standard Report.
3) **Detailed Report –** The Detailed Report, as described in the discovery process will be priced as follows: $14.00 for each aircraft listed and is derived from aircraft included in the Market Value Report.
4) **Appeal Support –** Appeal support will be provided as requested by the ALDOR and will be invoiced at a consistent rate of $170.00 per hour, charged in 30-minute increments, with a 1-hour minimum per appeal.
5) **New Discovery Fee –** STR typically charges a premium fee based on the newly discovered revenue. Based on the preliminary work completed for this proposal, STR estimates a fair market value of $769,583,562 in newly discovered assets by STR. This equates to an estimated increase of $5,753,407 in AL tax revenue (using 42 mills – state average). Applying our typical discovery fee to this amount, STR would normally charge an additional $2,013,692 for this added benefit. For the sake of this contract, ***STR will waive this fee and only charge per the pricing matrix reflected below.***

6) **Pricing Matrix –** The following pricing matrix provides a visual representation of the pricing described in 1 through 5 above:

| | Price per item |
|---|---|
| Standard Report | $70 each aircraft listed |
| Market Value Report | $38 each aircraft listed |
| Detailed Report | $14 each aircraft listed |
| Appeal Support | All aircraft - $170 per hour, 1 hour minimum per appeal |

**g. ESTIMATED COST OF PROJECT**

As mentioned above, STR has already conducted roughly 94-man hours of pre-audit work and discovery for those aircraft having situs in the state of Alabama. Those preliminary results reflect the following:

1) 4,533 estimated aircraft based in Alabama
2) Aircraft broken down by Weight Category and listed per report type

| | UAV up to 55 | Up to 12,499 | 12,500 and over |
|---|---|---|---|
| Standard Report | 37 | 4252 | 244 |
| Market Value Report | 37 | 4252 | 244 |
| Detailed Report | 37 | 4252 | 244 |




3) Cost per report & aircraft breakdown using the pricing described above

| | Quantity | Price | Line Item Total |
|---|---|---|---|
| Standard Report | 4,533 | $70 | $317,310 |
| Market Value Report | 4,533 | $38 | $172,254 |
| Detailed Report | 4,533 | $14 | $63,462 |
| | | **Total estimated report cost** | **$553,026** |

Based on the preliminary data above, STR **estimates** the following:

| **ITEMIZED ESTIMATE** | |
|---|---|
| Standard Report total | $317,310 |
| Market Value Report total | $172,254 |
| Detailed Report total | $63,462 |
| New Discovery Fee | $2,013,692 |
| *New Discovery Fee Waived* | ***($2,013,692)*** |
| **TOTAL ESTIMATED REPORT COST** | **$553,026** |

The above estimate is a projection that should represent the ceiling, or maximum, cost for discovery and valuation services provided by STR. For comparison, the below chart reflects how the project cost would be impacted if the total newly discovered aircraft were to decrease to either 75% or 50% of our max projection.

| % of Projected New Discovery | 100% | 75% | 50% |
|---|---|---|---|
| **Standard Report** | $317,310 | $237,983 | $158,655 |
| **Market Value Report** | $172,254 | $129,191 | $86,127 |
| **Detailed Report** | $63,462 | $47,597 | $31,731 |
| | **$553,026** | **$414,770** | **$276,513** |

**** Does not include an estimate for the number of appeals or number of appeal hours**

**h. BILLING/INVOICING**

Services performed by STR for this project through the before mentioned process will be compiled monthly and billed to the ALDOR with 30-day payment terms. Delinquent payments will accrue 1.5% per month until payment is received. Monthly invoicing will include a reconciliation of all completed work (percentage completion) in each category of the above defined process. ALDOR can expect the first invoice submittal on approximately November 1, 2022, with a due date of December 1, 2022.

**i. PLAN FOR DATA DELIVERY FOR REPORTS AND DOCUMENTATION**

The data and reports produced for this project will be made available through a secured file transfer portal (SFTP). The ALDOR advised in the RFB that they may provide such access, which if preferred, is fully acceptable by STR. However, other methods such as SFTP to an outside server maintained by STR or secure cloud-based services can alternatively be selected. Whichever means is preferred by the ALDOR, STR will work with the team to customize the organization of that shared file location so that it is easily accessed using secure credentials. As files are added to the SFTP, communication will be sent to the ALDOR (i.e., via email) advising. This will include adherence to the following deadlines outlined by RFB:

**September 1 (Pending Contract Award Date)– Initial discovery data delivery. STR will deliver within 24 business hours from contract award date**
**October 31 – Standard Report supplement**
**November 30 – Market Value Report**

In addition, STR will create a log file to track all activity such as revisions, uploads, and changes. All required reporting and supplemental documentation will be managed in this SFTP location and securely accessible by both STR and ALDOR. If STR is chosen to renew these services for subsequent years, files will continue to be maintained and access provided to the ALDOR. STR will collaborate with ALDOR on an approved retention policy for renewing years as well as a termination event.

**j. RFB REQUIREMENTS – REFERENCE OF STR RESPONSES / COMPLIANCE MATRIX**

| ***ALDOR requires aircraft discovery and retail market valuation services to include but not limited to:*** | | |
|---|---|---|
| | | |
| 1) | Initial discovery data to be available as of September 1, 2022 | **Timeline - Page 16** |
| 2) | Discovery and valuation data delivered to ALDOR Property Tax Division in a standard report, in CSV or Microsoft Excel digital format, of aircraft having situs in Alabama (copy attached to this SRC) from sources such as the FAA registry, flightaware.com, etc. A supplemental standard report of any changes in aircraft situs as of October 1 annually will be provided as an addendum to the standard report and delivered no later than the following November 1, indicating any aircraft removed from Alabama and any added as of October 1 | **Timeline - Page 16** |
| 3) | Standard report should include columns labeled: Aircraft N-Number; Aircraft make; Model; Year of Manufacture; Aircraft physical location (including county); Owner name; Owner address; Owner email and/or phone (if available); Year of acquisition; Changes to registration during tax year; Purchase Price; Any known non-standard avionics; Cost of listed non-standard avionics (copy attached to this SRC) | **Standard Report - Page 12** |
| 4) | Values as of October 1 annually are to be reported on a market value report for each aircraft based on published sources consistent with ALDOR administrative rule 810-4-1-.09 for mass appraisal of aircraft (copy attached to this SRC) | **Valuation - Page 12** |
| 5) | Market Value report should be available to ALDOR by December 1 annually and include columns labeled: Aircraft N-Number; Aircraft make; Model; Year of Manufacture; Owner name; Retail value of average aircraft as of October 1; Fair Market Value (FMV) of Aircraft (89% of average retail value as of October 1 lien date) (copy attached to this SRC) | **Market Value Report - Page 13** |
| 6) | Value adjustments to be furnished on request by ALDOR are to be reported on a Detailed report for aircraft conditions other than standard. | **Value Adjustments - Page 13** |
| 7) | Detailed report should include columns labeled: Aircraft N-Number; Aircraft make; Model; Year of Manufacture; Owner name; fair market Value of Aircraft; any known conversions and modifications; Engine upgrades, replacements, enhancements; air frame total time (AFTT); since major overhaul (SMOH); and condition (copy attached to this SRC) | **Value Adjustments - Page 13** |
| 8) | Documentation of annual discovery of jurisdictional location of aircraft with taxable situs in Alabama beginning on October 1, 2022, and yearly review of fair market value of each aircraft each year thereafter; supporting documentation may include graphic representation of aircraft flights from base location | **Additional reports - Page 12** |

| | | |
|---|---|---|
| 9) | Pricing for data provided in standard report and addendum to be provided by vendor including any price points or discounts by number of aircraft discovered | **Standard Report - Page 17** |
| 10) | Pricing for fair market value provided in Market Value report to be provided by vendor including any price points or discounts by number of aircraft valued | **Market Value Report - Page 17** |
| 11) | Pricing for any additional value adjustments requested by ALDOR to be provided by vendor on the Detailed Report including any price points or discounts by number of aircraft valued | **Detailed Report - Page 17** |
| 12) | Additional documentation and support for aircraft valuation appeals for individual aircraft following preliminary assessment, on request by ALDOR | **Appeal Support - Page 18** |
| 13) | Pricing for additional documentation and support for valuation appeals following preliminary assessment to be provided by vendor, including price points or discounts by number of aircraft valued | **Appeal Support - Page 18** |
| 14) | Plan for data delivery for reports and documentation; ALDOR will maintain all data and can provide secure electronic file transfer system | **Plan for Data Delivery - Page 20** |
| 15) | References from other states/jurisdictions to which vendor provides this service | **Portfolio, References and Narratives - Page 7** |
| 16) | Narrative of any past performance/experience in other jurisdictions and technical competence | **Portfolio, References and Narratives - Page 7** |
| 17) | Digital samples of:<br>• the standard report (sample supplied)<br>• the market value report (sample supplied)<br>• the detailed report of information provided on request of ALDOR (sample supplied)<br>• additional documentation for proof of situs | **APPENDIX A-D – Pages 24-27** |
| | ***Pricing Item Lines*** | |
| 1) | Pricing for standard report per aircraft | **Standard Report - Page 17** |
| 2) | Pricing for market value report per aircraft | **Market Value Report - Page 17** |
| 3) | Pricing for detailed report per aircraft | **Detailed Report - Page 17** |
| 4) | Pricing for appeal support per aircraft | **Appeal Support - Page 18** |
| | ***Questionnaire items*** | |
| 1) | Plan for data delivery of reports and documentation; ALDOR will maintain all data and can provide secure electronic file transfer system | **Plan for Data Delivery - Page 20** |
| 2) | References from other states/jurisdictions to which vendor provides this service | **Portfolio, References and Narratives - Page 7** |
| 3) | Narrative of any past performance/experience in other jurisdictions and technical competence | **Portfolio, References and Narratives - Page 7** |

## k. TERMS AND CONDITIONS

**Assignment of contract:**
To assign, sublet or transfer any contract resulting from this solicitation, the vendor's written request must be approved by the State Purchasing director.

**Contract period:**
Establish a 12-month contract with an option to extend for a second, third, fourth, and fifth 12-month period with the same pricing, terms and conditions. The second, third, fourth, or fifth 12-month period, if agreed by both parties, would begin the day after the first, second, third, or fourth 12-month period expires. Any successive extension must have written approval of both the state and vendor no later than 30 days prior to expiration of the previous 12-month period.

**Non-appropriation of funds:**
Continuation of any agreement between the State and a bidder beyond a fiscal year is contingent upon continued legislative appropriation of funds for the purpose of this bid and any resulting agreement. Non-availability of funds at any time shall cause any agreement to become void and unenforceable and no liquidated damages shall accrue to the state as a result. The State will not incur liability beyond the payment of accrued agreement payment.

**Proration:**
Any provision of a contract resulting from this bid to the contrary notwithstanding, in the event of failure of the State to make payment hereunder as a result of partial unavailability, at the time such payment is due, of such sufficient revenues of the State to make such payment (proration of appropriated funds for the State having been declared by the governor pursuant to Section 41-4-90 of the Code of Alabama 1975), the contractor shall have the option, in addition to the other remedies of the contract, of renegotiating the contract (extending or changing payment terms or amounts) or terminating the contract.

**Indemnity:**
Contractor shall be fully liable for the actions of its agents, employees, officers, partners, and Subcontractors, and shall fully indemnify, defend, and save harmless the Division, Eligible Users, and the State of Alabama from all claims, losses, suits, actions, damages, and costs of every name and description arising out of Contractor's performance of this Contract caused by any intentional act or negligence of Contractor, its agents, employees, officers, partners, or Subcontractors, without limitation; provided, however, that the Contractor shall not indemnify for that portion of any claim, loss, or damage arising hereunder due to the sole fault of the Division, Eligible Users, or the State of Alabama. The parties agree that if there are any limitations of the Contractor's liability, including a limitation of liability clause for anyone for whom the Contractor is responsible, such limitations of liability will not apply to injuries to persons, including death, or to damages to property.

**Price Escalation:**
If, during the performance of this contract, the price of the material significantly increases, through no fault of the vendor, a price increase may be considered based upon product cost only. Documentation of the price increase is required from the manufacturer. All price increases must be approved by both the state and the vendor in writing. Any de-escalation in price shall be passed onto the state immediately while still meeting all specifications, terms and conditions of the contract.

**Quantity:**
The exact quantity of each item is unknown. The Division of Purchasing does not guarantee the State will buy any amount. Orders will be placed by the agency as needed and give complete shipping instructions.
Requested information:
Any additional information requested from a vendor must be furnished within five (5) days from receipt of request.

**APPENDIX A – Standard Report Example**

**APPENDIX B – Market Value Report Example**

**APPENDIX C – Detailed Report Example**

**APPENDIX D – Aircraft Activity Report Example**

**APPENDIX E – Aircraft Bluebook Report Example**

| Aircraft N-Number | Aircraft make | Model | Year of Manufacture | Aircraft physical location | Phys. Location County | Owner name | Owner address | Owner email (if available) | Owner phone (if available) | Year of acquisition | Changes to registration during year (if any) | Purchase Price | Any known non-standard avionics | Cost of non-standard avionics |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| N1 | PIPER | PA-28-140 | 1976 | MDQ | Madison | John Doe | 3511 SILVERSIDE RD STE 105 , WILMINGTON, DE 198104902 US | JohnDoe@email.com | (123) 456-7890 | 2018 | | $72,478 | GPS 175 | $8,903 |
| N2 | CIRRUS DESIGN CORP | SR22 | 1982 | JKA | Baldwin | Jane Doe | 251 LITTLE FALLS DR , WILMINGTON, DE 198081674 US | JaneDoe@email.com | (123) 456-7890 | 2005 | | $263,231 | GPS 400W | $17,517 |
| N3 | CESSNA | 172M | 1971 | BHM | Jefferson | Company ABC | 16192 COASTAL HWY , LEWES, DE 199583608 US | CompanyABC@email.com | (123) 456-7890 | 2012 | | $64,515 | GPS 500W | $22,986 |
| N4 | PIPER | PA-28-180 | 1991 | EET | Shelby | John Doe | 1013 CENTRE RD STE 403-A , WILMINGTON, DE 198051270 US | JohnDoe@email.com | (123) 456-7890 | 2018 | | $330,894 | GPS 500W TAWS | $2,058 |
| N5 | PIPER | J3C-65 | 1991 | CMD | Cullman | Jane Doe | 1232 CHOPTANK RD , MIDDLETOWN, DE 197099038 US | JaneDoe@email.com | (123) 456-7890 | 2019 | | $664,432 | GPS 55 AVD | $16,438 |
| N6 | CESSNA | 172N | 1967 | AUO | Lee | Company ABC | 1013 CENTRE RD STE 403A , WILMINGTON, DE 198051270 US | CompanyABC@email.com | (123) 456-7890 | 2011 | | $264,827 | GPS 90 | $17,044 |
| N7 | PIPER | PA-28-181 | 1987 | DHN | Dale | John Doe | 3500 S DUPONT HWY , DOVER, DE 199016041 US | JohnDoe@email.com | (123) 456-7890 | 2002 | | $90,482 | GPS 95 | $9,977 |
| N8 | CESSNA | 182P | 1983 | PLR | St. Clair | Jane Doe | 1100 N MARKET ST , WILMINGTON, DE 198901100 US | JaneDoe@email.com | (123) 456-7890 | 2011 | | $300,473 | GPS 95 | $1,082 |
| N9 | PIPER | PA-18-150 | 1976 | MGM | Montgomery | Company ABC | 117 SALEM CHURCH RD , NEWARK, DE 197132940 US | CompanyABC@email.com | (123) 456-7890 | 2013 | | $1,411,007 | GPS 95XL | $14,126 |
| N10 | CESSNA | 172S | 1999 | DCU | Limestone | John Doe | 704 N KING ST STE 500 , WILMINGTON, DE 198013584 US | JohnDoe@email.com | (123) 456-7890 | 2021 | | $1,395,952 | GPS-100 AVD | $23,248 |
| N11 | BEECH | A36 | 1981 | 8A1 | Marshall | Jane Doe | 1209 N ORANGE ST , WILMINGTON, DE 198011120 US | JaneDoe@email.com | (123) 456-7890 | 2005 | | $1,369,914 | GTN 625Xi Series | $18,546 |
| N12 | AERONCA | 7AC | 1979 | EDN | Coffee | Company ABC | 3511 SILVERSIDE RD , WILMINGTON, DE 198104902 US | CompanyABC@email.com | (123) 456-7890 | 2016 | | $320,789 | GTN 635Xi Series | $3,510 |
| N13 | CESSNA | 172 | 1970 | 33J | Geneva | John Doe | 1100 N MARKET ST , WILMINGTON, DE 198901605 US | JohnDoe@email.com | (123) 456-7890 | 2019 | | $610,483 | GTN 650 Touchscreen | $8,167 |
| N14 | CESSNA | 152 | 1999 | 5R7 | Mobile | Jane Doe | 1209 ORANGE ST , WILMINGTON, DE 19801 US | JaneDoe@email.com | (123) 456-7890 | 2016 | | $210,133 | GTN 650Xi Series | $14,077 |
| N15 | CIRRUS DESIGN CORP | SR22T | 1977 | 5M0 | Morgan | Company ABC | 8 THE GRN STE A , DOVER, DE 199013618 US | CompanyABC@email.com | (123) 456-7890 | 2009 | | $374,648 | GTN 750 Touchscreen | $3,040 |
| N16 | CESSNA | 140 | 1994 | 4A6 | Jackson | John Doe | PO BOX 1347 , WILMINGTON, DE 198991347 US | JohnDoe@email.com | (123) 456-7890 | 2013 | | $994,571 | GTN 750Xi Series | $17,186 |
| N17 | CESSNA | 182Q | 1999 | 4A9 | DeKalb | Jane Doe | 2140 S DUPONT HWY , CAMDEN, DE 199341249 US | JaneDoe@email.com | (123) 456-7890 | 2011 | | $183,604 | GMA 350 | $13,822 |
| N18 | PIPER | PA-28-161 | 1999 | 08A | Elmore | Company ABC | 1201 N ORANGE ST STE 600 , WILMINGTON, DE 198011171 US | CompanyABC@email.com | (123) 456-7890 | 2005 | | $286,365 | GMX-200 | $22,319 |
| N19 | CESSNA | 150L | 1982 | 0J0 | Henry | John Doe | PO BOX 8702 , WILMINGTON, DE 198998702 US | JohnDoe@email.com | (123) 456-7890 | 2012 | | $464,840 | GMX-200 Traffic | $11,799 |
| N20 | CESSNA | 150M | 1984 | TOI | Pike | Jane Doe | MAIL BOXES ETC #1710 2207 CONCORD PIKE, WILMINGTON, DE 198032908 US | JaneDoe@email.com | (123) 456-7890 | 2005 | | $330,935 | GNC 250 | $15,948 |
| N21 | MOONEY | M20J | 1984 | GAD | Etowah | Company ABC | 2711 CENTERVILLE RD STE 400 , WILMINGTON, DE 198081645 US | CompanyABC@email.com | (123) 456-7890 | 2004 | | $645,947 | GNC 250XL | $20,095 |
| N22 | CESSNA | 170B | 1978 | 20A | Blount | John Doe | PO BOX 1031 , WILMINGTON, DE 198991031 US | JohnDoe@email.com | (123) 456-7890 | 2015 | | $118,458 | GNC 300 | $4,180 |
| N23 | MOONEY | M20C | 1979 | MSL | Colbert | Jane Doe | 2000 BRETT RD STE 767 , NEW CASTLE, DE 197202428 US | JaneDoe@email.com | (123) 456-7890 | 2021 | | $481,122 | GNC 300XL TSO | $4,846 |
| N24 | PIPER | PA-28R-200 | 1986 | 9A4 | Lawrence | Company ABC | 2207 CONCORD PIKE # 1710 , WILMINGTON, DE 198032908 US | CompanyABC@email.com | (123) 456-7890 | 2008 | | $1,261,758 | GNC 355 | $14,872 |
| N25 | PIPER | PA-12 | 1991 | 1A9 | Autauga | John Doe | MAILBOXES ETC #1710 2207 CONCORD PIKE, WILMINGTON, DE 19803 US | JohnDoe@email.com | (123) 456-7890 | 2010 | | $523,716 | GNC 420W | $14,381 |
| N26 | PIPER | PA-24-250 | 1996 | PYP | Cherokee | Jane Doe | 257 OLD CHURCHMANS RD , NEW CASTLE, DE 197201529 US | JaneDoe@email.com | (123) 456-7890 | 2014 | | $1,219,903 | GNS 430W | $13,173 |
| N27 | PIPER | PA-22-150 | 1972 | 79J | Covington | Company ABC | 1232 CHOPTANK RD , MIDDLETOWN, DE 19709 US | CompanyABC@email.com | (123) 456-7890 | 2013 | | $1,196,048 | GNS 530AW TAWS | $15,084 |
| N28 | CESSNA | 180 | 1975 | ANB | Calhoun | John Doe | ATTN: CORPORATE TRUST ADMIN 1100 N MARKET ST, WILMINGTON, DE 198901605 US | JohnDoe@email.com | (123) 456-7890 | 2015 | | $1,207,655 | GNS 530W | $16,106 |
| N29 | ROBINSON HELICOPTER COMPANY | R44 II | 1993 | M95 | Fayette | Jane Doe | 4023 KENNETT PIKE # 901 , WILMINGTON, DE 198072018 US | JaneDoe@email.com | (123) 456-7890 | 2018 | | $920,998 | GNS 530W TAWS | $18,143 |
| N30 | CESSNA | A185F | 1990 | DYA | Marengo | Company ABC | 6 SHEFFIELD RD HNGR 1 , REHOBOTH BEACH, DE 199711400 US | CompanyABC@email.com | (123) 456-7890 | 2008 | | $1,182,226 | GNX 375 Touchscreen | $19,948 |
| N31 | CESSNA | 172P | 1966 | 02A | Chilton | John Doe | 1000 N WEST ST STE 1501 , WILMINGTON, DE 198011001 US | JohnDoe@email.com | (123) 456-7890 | 2004 | | $336,188 | GPS 150 | $3,875 |
| N32 | CIRRUS DESIGN CORP | SR20 | 2000 | 7A5 | Randolph | Jane Doe | RODNEY SQUARE NORTH 1100 N MARKET ST, WILMINGTON, DE 198901100 US | JaneDoe@email.com | (123) 456-7890 | 2005 | | $1,389,197 | GPS 150XL | $7,435 |
| N33 | CESSNA | 150F | 1976 | M22 | Franklin | Company ABC | MAIL BOXES ETC #1710 2207 CONCORD PIKE, WILMINGTON, DE 19803 US | CompanyABC@email.com | (123) 456-7890 | 2000 | | $1,340,094 | GPS 155TSO | $20,318 |
| N34 | CESSNA | 172K | 1985 | MVC | Monroe | John Doe | 704 N KING ST STE 500 , WILMINGTON, DE 198013535 US | JohnDoe@email.com | (123) 456-7890 | 2021 | | $1,234,909 | GPS 155XL TSO | $2,895 |
| N35 | PIPER | PA-32-300 | 1976 | EUF | Barbour | Jane Doe | 850 NEW BURTON RD STE 201 , DOVER, DE 199045786 US | JaneDoe@email.com | (123) 456-7890 | 2003 | | $904,800 | GPS 165TSO | $8,989 |

| Aircraft N-Number | Aircraft make | Model | Year of Manufacture | Owner name | Retail value of average aircraft as of October 1 | Fair Market Value (FMV) of Aircraft (89% of average retail value as of October 1 lien date) |
|---|---|---|---|---|---|---|
| N1 | PIPER | PA-28-140 | 1976 | John Doe | $72,478 | $64,505.42 |
| N2 | CIRRUS DESIGN CORP | SR22 | 1982 | Jane Doe | $263,231 | $234,275.59 |
| N3 | CESSNA | 172M | 1971 | Company ABC | $64,515 | $57,418.35 |
| N4 | PIPER | PA-28-180 | 1991 | John Doe | $330,894 | $294,495.66 |
| N5 | PIPER | J3C-65 | 1991 | Jane Doe | $664,432 | $591,344.48 |
| N6 | CESSNA | 172N | 1967 | Company ABC | $264,827 | $235,696.03 |
| N7 | PIPER | PA-28-181 | 1987 | John Doe | $90,482 | $80,528.98 |
| N8 | CESSNA | 182P | 1983 | Jane Doe | $300,473 | $267,420.97 |
| N9 | PIPER | PA-18-150 | 1976 | Company ABC | $1,411,007 | $1,255,796.23 |
| N10 | CESSNA | 172S | 1999 | John Doe | $1,395,952 | $1,242,397.28 |
| N11 | BEECH | A36 | 1981 | Jane Doe | $1,369,914 | $1,219,223.46 |
| N12 | AERONCA | 7AC | 1979 | Company ABC | $320,789 | $285,502.21 |
| N13 | CESSNA | 172 | 1970 | John Doe | $610,483 | $543,329.87 |
| N14 | CESSNA | 152 | 1999 | Jane Doe | $210,133 | $187,018.37 |
| N15 | CIRRUS DESIGN CORP | SR22T | 1977 | Company ABC | $374,648 | $333,436.72 |
| N16 | CESSNA | 140 | 1994 | John Doe | $994,571 | $885,168.19 |
| N17 | CESSNA | 182Q | 1999 | Jane Doe | $183,604 | $163,407.56 |
| N18 | PIPER | PA-28-161 | 1999 | Company ABC | $286,365 | $254,864.85 |
| N19 | CESSNA | 150L | 1982 | John Doe | $464,840 | $413,707.60 |
| N20 | CESSNA | 150M | 1984 | Jane Doe | $330,935 | $294,532.15 |
| N21 | MOONEY | M20J | 1984 | Company ABC | $645,947 | $574,892.83 |
| N22 | CESSNA | 170B | 1978 | John Doe | $118,458 | $105,427.62 |
| N23 | MOONEY | M20C | 1979 | Jane Doe | $481,122 | $428,198.58 |
| N24 | PIPER | PA-28R-200 | 1986 | Company ABC | $1,261,758 | $1,122,964.62 |
| N25 | PIPER | PA-12 | 1991 | John Doe | $523,716 | $466,107.24 |
| N26 | PIPER | PA-24-250 | 1996 | Jane Doe | $1,219,903 | $1,085,713.67 |
| N27 | PIPER | PA-22-150 | 1972 | Company ABC | $1,196,048 | $1,064,482.72 |
| N28 | CESSNA | 180 | 1975 | John Doe | $1,207,655 | $1,074,812.95 |
| N29 | ROBINSON HELICOPTER COMPANY | R44 II | 1993 | Jane Doe | $920,998 | $819,688.22 |
| N30 | CESSNA | A185F | 1990 | Company ABC | $1,182,226 | $1,052,181.14 |
| N31 | CESSNA | 172P | 1966 | John Doe | $336,188 | $299,207.32 |
| N32 | CIRRUS DESIGN CORP | SR20 | 2000 | Jane Doe | $1,389,197 | $1,236,385.33 |
| N33 | CESSNA | 150F | 1976 | Company ABC | $1,340,094 | $1,192,683.66 |
| N34 | CESSNA | 172K | 1985 | John Doe | $1,234,909 | $1,099,069.01 |
| N35 | PIPER | PA-32-300 | 1976 | Jane Doe | $904,800 | $805,272.00 |

| Aircraft N-Number | Aircraft make | Model | Year of Manufacture | Owner name | Fair Market Value (FMV) of Aircraft (89% of average retail value as of October 1 lien date) | Any known conversions and modifications | Engine Upgrades/Replacements/Enhancements (if any) | AFTT | SMOH | Condition Adjustments | Total Value Adjustments | Final FMV after adjustments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| N1 | PIPER | PA-28-140 | 1976 | John Doe | $64,505.42 | Cockpit overhead tinted windows | Hartzell Propeller Airframe De-Ice Kits | 4194 | 935 | $154,962.00 | $315,395.00 | $379,900.42 |
| N2 | CIRRUS DESIGN CORP | SR22 | 1982 | Jane Doe | $234,275.59 | Manual cowl flaps | Hawkeye DigiLog Engine Gauges Full Stack | 4350 | 1919 | $179,814.00 | $367,876.00 | $602,151.59 |
| N3 | CESSNA | 172M | 1971 | Company ABC | $57,418.35 | R/X Mod & Zr Lite Combo | Pratt & Whitney FAST Kit for Caravan | 7009 | 1477 | $21,878.00 | $24,531.00 | $81,949.35 |
| N4 | PIPER | PA-28-180 | 1991 | John Doe | $294,495.66 | 90 amp alternator conversions | AeroAcoustics APE STOL KIT | 6636 | 1235 | $374,720.00 | $787,565.00 | $1,082,060.66 |
| N5 | PIPER | J3C-65 | 1991 | Jane Doe | $591,344.48 | Single place aft folding seats | Hawkeye Digilog TRQ Guages (2) | 6580 | 1860 | $262,088.00 | $378,431.00 | $969,775.48 |
| N6 | CESSNA | 172N | 1967 | Company ABC | $235,696.03 | Super 700 Aerostar | Oil Pressure Trasmitter Kit for Hawkeye DigiLog Eng Gauges | 7474 | 1291 | $274,199.00 | $482,582.00 | $718,278.03 |
| N7 | PIPER | PA-28-181 | 1987 | John Doe | $80,528.98 | Aux dry air pump standby vacuum sys | XP135A Engine + Upgrade (PT6A-135A) | 5553 | 1693 | $422,427.00 | $461,198.00 | $541,726.98 |
| N8 | CESSNA | 182P | 1983 | Jane Doe | $267,420.97 | Camera/Special Mission Modifications | XP42 Engine+ Upgrade (PT6A-42) | 2237 | 1966 | $211,349.00 | $422,831.00 | $690,251.97 |
| N9 | PIPER | PA-18-150 | 1976 | Company ABC | $1,255,796.23 | Auxiliary fuel | XP52 Engine+ Upgrade (PT6A-52) | 6291 | 815 | $372,517.00 | $516,166.00 | $1,771,962.23 |
| N10 | CESSNA | 172S | 1999 | John Doe | $1,242,397.28 | Blended Winglets | McCauley 4-Blade Propellers | 2526 | 1001 | $250,167.00 | $742,425.00 | $1,984,822.28 |
| N11 | BEECH | A36 | 1981 | Jane Doe | $1,219,223.46 | Long Ranger extended fuel | XP61 Engine + Upgrade (PT6A-61) | 6074 | 1343 | $442,506.00 | $645,458.00 | $1,864,681.46 |
| N12 | AERONCA | 7AC | 1979 | Company ABC | $285,502.21 | Raisbeck Locker | G1000 Transducer Kit | 113 | 532 | $328,205.00 | $522,944.00 | $808,446.21 |
| N13 | CESSNA | 172 | 1970 | John Doe | $543,329.87 | Buckaroo-Type Molded Cowling | True Blue Power Lithium Ion Battery | 2728 | 1895 | $185,380.00 | $660,620.00 | $1,203,949.87 |
| N14 | CESSNA | 152 | 1999 | Jane Doe | $187,018.37 | Extended baggage kit | XP140 Engine+ Upgrade (PT6A-140) | 1317 | 476 | $180,113.00 | $450,978.00 | $637,996.37 |
| N15 | CIRRUS DESIGN CORP | SR22T | 1977 | Company ABC | $333,436.72 | Square Turbo Commander rudder cap | XP67A Engine+ ER Upgrade (PT6A-67A) | 6291 | 1600 | $163,031.00 | $214,077.00 | $547,513.72 |
| N16 | CESSNA | 140 | 1994 | John Doe | $885,168.19 | Speed-sloped windshield/side window glass | Torque Transmitter Kit for Hawkeye DigiLog Eng Gauges | 1517 | 948 | $216,544.00 | $395,364.00 | $1,280,532.19 |
| N17 | CESSNA | 182Q | 1999 | Jane Doe | $163,407.56 | Exhaust deflectors | MT 5-Blade Composite Propellers | 7449 | 516 | $353,575.00 | $427,655.00 | $591,062.56 |
| N18 | PIPER | PA-28-161 | 1999 | Company ABC | $254,864.85 | Split nose bowls | Vx Engine+ Upgrade (PT6A-42A) | 7835 | 1488 | $167,764.00 | $632,258.00 | $887,122.85 |
| N19 | CESSNA | 150L | 1982 | John Doe | $413,707.60 | Float steps & handles | MT Propeller Core Charge (Set) | 4258 | 972 | $360,660.00 | $455,744.00 | $869,451.60 |
| N20 | CESSNA | 150M | 1984 | Jane Doe | $294,532.15 | Hydraulic landing gear retract system | XP67A Engine+ XR Upgrade (PT6A-67A) | 782 | 1563 | $407,493.00 | $736,732.00 | $1,031,264.15 |
| N21 | MOONEY | M20J | 1984 | Company ABC | $574,892.83 | Quick fold double seat | Engine Guages | 3759 | 1889 | $381,278.00 | $663,723.00 | $1,238,615.83 |
| N22 | CESSNA | 170B | 1978 | John Doe | $105,427.62 | Rudder pedal extensions | Ametek 325 AMP Starter Generator | 1527 | 1539 | $212,040.00 | $391,656.00 | $497,083.62 |
| N23 | MOONEY | M20C | 1979 | Jane Doe | $428,198.58 | Single point pressure refueling system | Hartzell 3-Blade Propeller | 7284 | 1693 | $48,188.00 | $449,378.00 | $877,576.58 |
| N24 | PIPER | PA-28R-200 | 1986 | Company ABC | $1,122,964.62 | R/X Modification | XP67A Engine+ Upgrade (PT6A-67A) | 1509 | 1203 | $158,055.00 | $402,775.00 | $1,525,739.62 |
| N25 | PIPER | PA-12 | 1991 | John Doe | $466,107.24 | Windshield sunscreens | Hartzell 4-Blade Propellers | 1354 | 1120 | $477,571.00 | $752,999.00 | $1,219,106.24 |
| N26 | PIPER | PA-24-250 | 1996 | Jane Doe | $1,085,713.67 | 20-gallon tip tanks | Blackhawk XR Fuel Lockers with XP135A Upgrade^Blackhawk XR Fuel Lockers without XP135A Upgrade | 3664 | 403 | $248,259.00 | $508,216.00 | $1,593,929.67 |
| N27 | PIPER | PA-22-150 | 1972 | Company ABC | $1,064,482.72 | Cool Air, A/C | Fuel Flow Transmitter Kit for Hawkeye DigiLog Eng Gauges | 54 | 193 | $409,962.00 | $799,854.00 | $1,864,336.72 |
| N28 | CESSNA | 180 | 1975 | John Doe | $1,074,812.95 | Electric Elevator Trim | Hartzell Propeller Airframe De-Ice Kits | 6732 | 1823 | $152,631.00 | $167,250.00 | $1,242,062.95 |
| N29 | ROBINSON HELICOPTER COMPANY | R44 II | 1993 | Jane Doe | $819,688.22 | Escape Hatch | Hawkeye DigiLog Engine Gauges Full Stack | 312 | 1431 | $478,470.00 | $691,454.00 | $1,511,142.22 |
| N30 | CESSNA | A185F | 1990 | Company ABC | $1,052,181.14 | Stainless steel dual exhaust system | Pratt & Whitney FAST Kit for Caravan | 751 | 968 | $286,071.00 | $400,578.00 | $1,452,759.14 |
| N31 | CESSNA | 172P | 1966 | John Doe | $299,207.32 | Frameless vent windows | AeroAcoustics APE STOL KIT | 2439 | 1198 | $324,103.00 | $574,439.00 | $873,646.32 |
| N32 | CIRRUS DESIGN CORP | SR20 | 2000 | Jane Doe | $1,236,385.33 | Advent eABS Anti-Skid Braking System | Hawkeye Digilog TRQ Guages (2) | 773 | 752 | $495,667.00 | $753,568.00 | $1,989,953.33 |
| N33 | CESSNA | 150F | 1976 | Company ABC | $1,192,683.66 | Advent eABS Anti-Skid Braking System | Oil Pressure Trasmitter Kit for Hawkeye DigiLog Eng Gauges | 1612 | 1966 | $141,652.00 | $285,471.00 | $1,478,154.66 |
| N34 | CESSNA | 172K | 1985 | John Doe | $1,099,069.01 | CargoLiner | XP135A Engine + Upgrade (PT6A-135A) | 6063 | 1419 | $438,230.00 | $807,871.00 | $1,906,940.01 |
| N35 | PIPER | PA-32-300 | 1976 | Jane Doe | $805,272.00 | Winglets | MT 5-Blade Composite Propellers | 5700 | 1124 | $387,188.00 | $769,287.00 | $1,574,559.00 |



# N979CF

| AIRCRAFT VALUE |
|---|
| **$5,664,600** |

| *County ID* | *Account Year* | REG DATE |
|---|---|---|
| *MOCLAY* | *2018* | 1/23/2012 |

| | |
|---|---|
| MAKE | MFR YEAR |
| HAWKER | 2011 |
| MODEL | SERIAL NUMBER |
| 900XP | HA-0195 |
| MFR | MFR MDL CODE |
| HAWKER BEECHCRAFT CORP | 4220011 |

| EST. PURCHASE VALUE | PURCHASE YEAR | YEARS OWNED |
|---|---|---|
| $12,750,000 | 2012 | 6 |




*Top 5 - Departures*

| | |
|---|---|
| MKC | 73 |
| SLC | 18 |
| STL | 7 |
| PHX | 6 |
| IAD | 6 |

*Top 5 - Landings*

| | |
|---|---|
| MKC | 73 |
| SLC | 18 |
| STL | 7 |
| IAD | 6 |
| PHX | 6 |

| FIRST DEP APT | FIRST DEP DATE | APT MOST LANDINGS | LANDINGS | CALCULATED BASE AIRPORT | BASE DAYS | OVERNIGHTS |
|---|---|---|---|---|---|---|
| MKC | 1/3/2018 | MKC | 73 | **MKC** | 345 | 313 |

## 2018 FAA Information

| | |
|---|---|
| NAME | **WILMINGTON TRUST CO TRUSTEE** |
| STREET | **BALC SN HA-0195 UNIT 7441723 / 1100 N MARKET ST** |
| CITY, ST ZIP CTRY | **WILMINGTON, DE 19890 US** |
| OTHER NAMES | |

| BASE DEPARTURES | BASE DEP PERC |
|---|---|
| 73 | 42.9% |
| BASE LEGS | BASE LEG PERC |
| 143 | 84.1% |

TOTAL REPORTED
170 legs / 355 hours

*Top 5 - Days Visited*

| | |
|---|---|
| MKC | 345 |
| SLC | 36 |
| IAD | 11 |
| MCC | 7 |
| PHX | 7 |

*Top 5 - Overnights*

| | |
|---|---|
| MKC | 313 |
| SLC | 18 |
| IAD | 5 |
| MCC | 3 |
| FRG | 3 |

## Operator Information

N979CF MKC Cerner Corporation 2800 Rockcreek Parkway North Kansas City, MO U.S. 816-221-1024

Comments Same owner since 2011. Providence, RI based owner with North Kansas City, MO based Lessee / Delaware registered. Additional equipment: ADS-B Out.

## Flight Summary

| DEP DATE | DEP TIME | TAIL | DEP AIRPORT | ARR AIRPORT | DISTANCE | FLIGHT TIME | OPERATOR |
|---|---|---|---|---|---|---|---|
| 12/21/2017 | 1:21 AM | N979CF | KMCC | KMKC | 1438 | 2.8 | Cerner Corporation |
| 1/3/2018 | 2:58 PM | N979CF | KMKC | KORL | 1053 | 2.5 | Cerner Corporation |
| 1/3/2018 | 9:29 PM | N979CF | KORL | KMKC | 1053 | 2.7 | Cerner Corporation |
| 1/7/2018 | 3:53 PM | N979CF | KMKC | KSTL | 228 | 0.6 | Cerner Corporation |
| 1/7/2018 | 6:24 PM | N979CF | KSTL | KTRM | 1477 | 3.5 | Cerner Corporation |
| 1/7/2018 | 10:56 PM | N979CF | KTRM | KMKC | 1256 | 2.6 | Cerner Corporation |
| 1/9/2018 | 9:55 PM | N979CF | KMKC | KBFI | 1500 | 3.7 | Cerner Corporation |
| 1/11/2018 | 2:34 AM | N979CF | KBFI | KMKC | 1500 | 3.0 | Cerner Corporation |
| 1/16/2018 | 9:06 PM | N979CF | KMKC | MKC | 0 | 0.7 | Cerner Corporation |
| 1/22/2018 | 4:37 PM | N979CF | KMKC | KMKC | 0 | 0.3 | Cerner Corporation |
| 1/24/2018 | 10:21 PM | N979CF | KMKC | KBWI | 960 | 2.1 | Cerner Corporation |
| 1/25/2018 | 6:18 PM | N979CF | KBWI | KMKC | 960 | 2.4 | Cerner Corporation |
| 1/29/2018 | 12:37 PM | N979CF | KMKC | MCC | 1438 | 3.4 | Cerner Corporation |
| 1/30/2018 | 4:17 PM | N979CF | KMCC | KMKC | 1438 | 3.0 | Cerner Corporation |
| 2/1/2018 | 3:48 PM | N979CF | KMKC | KBFL | 1365 | 3.5 | Cerner Corporation |
| 2/2/2018 | 1:24 AM | N979CF | KBFL | KMKC | 1365 | 2.9 | Cerner Corporation |
| 2/5/2018 | 4:09 PM | N979CF | KMKC | KSLC | 927 | 2.6 | Cerner Corporation |
| 2/6/2018 | 8:01 PM | N979CF | KSLC | KMKC | 927 | 1.9 | Cerner Corporation |
| 2/22/2018 | 5:02 PM | N979CF | KMKC | KSTL | 228 | 0.7 | Cerner Corporation |
| 2/22/2018 | 10:37 PM | N979CF | KSTL | KMKC | 228 | 0.7 | Cerner Corporation |
| 3/1/2018 | 1:04 PM | N979CF | KMKC | KSDL | 1035 | 2.7 | Cerner Corporation |
| 3/1/2018 | 6:05 PM | N979CF | KSDL | KMKC | 1035 | 2.0 | Cerner Corporation |
| 3/2/2018 | 7:52 PM | N979CF | KMKC | KPNE | 1043 | 2.2 | Cerner Corporation |
| 3/2/2018 | 10:47 PM | N979CF | KPNE | KHPN | 97 | 0.7 | Cerner Corporation |
| 3/3/2018 | 12:10 AM | N979CF | KHPN | KMKC | 1110 | 2.7 | Cerner Corporation |
| 3/6/2018 | 11:50 AM | N979CF | KMKC | KLAS | 1143 | 2.9 | Cerner Corporation |
| 3/8/2018 | 4:19 PM | N979CF | LAS | MKC | 1143 | 2.3 | Cerner Corporation |
| 3/9/2018 | 12:59 PM | N979CF | KMKC | KLAS | 1143 | 2.9 | Cerner Corporation |
| 3/9/2018 | 7:41 PM | N979CF | KLAS | KMKC | 1143 | 2.2 | Cerner Corporation |
| 3/12/2018 | 2:04 PM | N979CF | KMKC | KHPN | 1110 | 2.5 | Cerner Corporation |
| 3/12/2018 | 8:40 PM | N979CF | KHPN | KMKC | 1110 | 2.7 | Cerner Corporation |
| 3/13/2018 | 12:38 PM | N979CF | KMKC | KPHX | 1045 | 2.7 | Cerner Corporation |
| 3/13/2018 | 8:54 PM | N979CF | KPHX | KSLC | 508 | 1.2 | Cerner Corporation |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3/15/2018 | 10:35 PM | N979CF | KSLC | KMKC | 927 | 2.0 | Cerner Corporation |
| 3/21/2018 | 1:04 PM | N979CF | KMKC | KBNA | 480 | 1.1 | Cerner Corporation |
| 3/21/2018 | 5:04 PM | N979CF | KBNA | KMKC | 480 | 1.4 | Cerner Corporation |
| 3/27/2018 | 3:33 PM | N979CF | KMKC | KAVL | 710 | 1.4 | Cerner Corporation |
| 3/27/2018 | 8:34 PM | N979CF | KAVL | KFRG | 616 | 1.6 | Cerner Corporation |
| 3/28/2018 | 9:47 PM | N979CF | KFRG | KMKC | 1125 | 3.2 | Cerner Corporation |
| 3/29/2018 | 12:19 PM | N979CF | KMKC | KPHX | 1045 | 2.5 | Cerner Corporation |
| 3/29/2018 | 7:13 PM | N979CF | KPHX | KMKC | 1045 | 2.2 | Cerner Corporation |
| 4/2/2018 | 3:14 PM | N979CF | KMKC | KPHX | 1045 | 2.7 | Cerner Corporation |
| 4/2/2018 | 10:38 PM | N979CF | KPHX | KMKC | 1045 | 2.1 | Cerner Corporation |
| 4/9/2018 | 11:06 AM | N979CF | KMKC | KSLC | 927 | 2.6 | Cerner Corporation |
| 4/9/2018 | 6:30 PM | N979CF | KSLC | KMKC | 927 | 1.9 | Cerner Corporation |
| 4/11/2018 | 12:34 PM | N979CF | KMKC | KLNK | 165 | 0.6 | Cerner Corporation |
| 4/11/2018 | 7:08 PM | N979CF | LNK | MKC | 165 | 0.5 | Cerner Corporation |
| 4/16/2018 | 11:10 PM | N979CF | KMKC | KIAD | 920 | 2.0 | Cerner Corporation |
| 4/18/2018 | 5:10 PM | N979CF | KIAD | KMKC | 920 | 2.5 | Cerner Corporation |
| 4/19/2018 | 1:05 PM | N979CF | KMKC | KPHX | 1045 | 2.9 | Cerner Corporation |
| 4/20/2018 | 3:06 PM | N979CF | KPHX | KMKC | 1045 | 2.1 | Cerner Corporation |
| 4/26/2018 | 2:49 PM | N979CF | KMKC | KTRM | 1256 | 2.9 | Cerner Corporation |
| 4/26/2018 | 7:10 PM | N979CF | KTRM | KSTL | 1477 | 3.1 | Cerner Corporation |
| 4/26/2018 | 10:35 PM | N979CF | KSTL | KMKC | 228 | 0.7 | Cerner Corporation |
| 4/30/2018 | 5:17 PM | N979CF | KMKC | KSJC | 1484 | 3.7 | Cerner Corporation |
| 5/1/2018 | 12:06 AM | N979CF | KSJC | KMKC | 1484 | 3.1 | Cerner Corporation |
| 5/1/2018 | 11:36 AM | N979CF | KMKC | KBUF | 867 | 2.0 | Cerner Corporation |
| 5/1/2018 | 3:53 PM | N979CF | KBUF | KMKC | 867 | 2.1 | Cerner Corporation |
| 5/2/2018 | 2:36 PM | N979CF | KMKC | KACY | 1069 | 2.2 | Cerner Corporation |
| 5/2/2018 | 8:38 PM | N979CF | KACY | KMKC | 1069 | 2.6 | Cerner Corporation |
| 5/16/2018 | 9:34 PM | N979CF | KMKC | KIAD | 920 | 2.1 | Cerner Corporation |
| 5/17/2018 | 12:15 AM | N979CF | KIAD | KPNE | 152 | 0.6 | Cerner Corporation |
| 5/17/2018 | 3:46 PM | N979CF | KPNE | KIAD | 152 | 0.9 | Cerner Corporation |
| 5/17/2018 | 5:38 PM | N979CF | KIAD | KMKC | 920 | 2.1 | Cerner Corporation |
| 5/18/2018 | 5:43 PM | N979CF | KMKC | KRST | 348 | 0.9 | Cerner Corporation |
| 5/18/2018 | 7:07 PM | N979CF | KRST | KSLC | 1016 | 2.5 | Cerner Corporation |
| 5/18/2018 | 10:11 PM | N979CF | KSLC | KMKC | 927 | 2.0 | Cerner Corporation |
| 5/21/2018 | 12:26 PM | N979CF | KMKC | KPHX | 1045 | 2.7 | Cerner Corporation |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5/21/2018 | 9:06 PM | N979CF | KPHX | KSLC | 508 | 1.1 | Cerner Corporation |
| 5/23/2018 | 3:41 PM | N979CF | KSLC | KMCC | 522 | 1.3 | Cerner Corporation |
| 5/23/2018 | 10:53 PM | N979CF | KMCC | KMKC | 1438 | 3.1 | Cerner Corporation |
| 5/29/2018 | 3:54 PM | N979CF | KMKC | KILG | 1013 | 2.4 | Cerner Corporation |
| 5/29/2018 | 11:28 PM | N979CF | KILG | KMKC | 1013 | 2.3 | Cerner Corporation |
| 6/1/2018 | 1:29 PM | N979CF | KMKC | KSFO | 1503 | 3.7 | Cerner Corporation |
| 6/1/2018 | 10:32 PM | N979CF | KSFO | KMKC | 1503 | 3.0 | Cerner Corporation |
| 6/4/2018 | 1:11 PM | N979CF | KMKC | KBOS | 1252 | 2.8 | Cerner Corporation |
| 6/4/2018 | 7:50 PM | N979CF | KBOS | KMKC | 1252 | 3.1 | Cerner Corporation |
| 6/11/2018 | 2:53 PM | N979CF | KMKC | KSLC | 927 | 2.4 | Cerner Corporation |
| 6/11/2018 | 11:49 PM | N979CF | KSLC | MKC | 927 | 1.9 | Cerner Corporation |
| 6/14/2018 | 11:19 AM | N979CF | KMKC | KSAN | 1336 | 3.2 | Cerner Corporation |
| 6/14/2018 | 7:59 PM | N979CF | KSAN | KMKC | 1336 | 2.7 | Cerner Corporation |
| 6/18/2018 | 11:51 AM | N979CF | KMKC | KSLC | 927 | 2.2 | Cerner Corporation |
| 6/18/2018 | 3:21 PM | N979CF | KSLC | KMKC | 927 | 2.0 | Cerner Corporation |
| 6/19/2018 | 6:42 PM | N979CF | KMKC | KSLC | 927 | 2.4 | Cerner Corporation |
| 6/19/2018 | 9:44 PM | N979CF | KSLC | KMKC | 927 | 2.1 | Cerner Corporation |
| 6/21/2018 | 10:12 PM | N979CF | KMKC | KSLC | 927 | 2.3 | Cerner Corporation |
| 6/22/2018 | 11:46 PM | N979CF | KSLC | KMKC | 927 | 2.0 | Cerner Corporation |
| 6/25/2018 | 1:52 PM | N979CF | KMKC | KLNK | 165 | 0.6 | Cerner Corporation |
| 6/27/2018 | 8:16 PM | N979CF | KLNK | KSLC | 796 | 1.9 | Cerner Corporation |
| 6/28/2018 | 3:17 PM | N979CF | KSLC | KSTL | 1154 | 2.5 | Cerner Corporation |
| 6/28/2018 | 9:31 PM | N979CF | KSTL | KMKC | 228 | 0.7 | Cerner Corporation |
| 6/29/2018 | 6:19 PM | N979CF | KMKC | KSLC | 927 | 2.2 | Cerner Corporation |
| 6/29/2018 | 9:01 PM | N979CF | KSLC | KMKC | 927 | 1.9 | Cerner Corporation |
| 7/10/2018 | 12:49 PM | N979CF | KMKC | KORL | 1053 | 2.4 | Cerner Corporation |
| 7/10/2018 | 8:53 PM | N979CF | KORL | KMKC | 1053 | 2.3 | Cerner Corporation |
| 7/11/2018 | 2:33 PM | N979CF | KMKC | KSLC | 927 | 2.1 | Cerner Corporation |
| 7/11/2018 | 11:54 PM | N979CF | KSLC | KMKC | 927 | 2.1 | Cerner Corporation |
| 7/15/2018 | 7:42 PM | N979CF | KMKC | KHUT | 191 | 0.7 | Cerner Corporation |
| 7/15/2018 | 8:38 PM | N979CF | KHUT | KSLC | 776 | 1.9 | Cerner Corporation |
| 7/18/2018 | 9:19 PM | N979CF | KSLC | KSFO | 597 | 1.6 | Cerner Corporation |
| 7/20/2018 | 5:29 PM | N979CF | KSFO | KSLC | 597 | 1.4 | Cerner Corporation |
| 7/20/2018 | 7:30 PM | N979CF | KSLC | KMKC | 927 | 1.9 | Cerner Corporation |
| 7/24/2018 | 1:17 PM | N979CF | KMKC | KSDF | 483 | 1.3 | Cerner Corporation |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 7/24/2018 | 7:36 PM | N979CF | KSDF | KCEF | 750 | 1.7 | Cerner Corporation |
| 7/25/2018 | 5:53 PM | N979CF | KCEF | KMKC | 1173 | 2.7 | Cerner Corporation |
| 7/28/2018 | 1:01 PM | N979CF | KMKC | KWDG | 258 | 0.7 | Cerner Corporation |
| 7/28/2018 | 6:46 PM | N979CF | KWDG | KMKC | 258 | 0.7 | Cerner Corporation |
| 8/2/2018 | 2:04 PM | N979CF | KMKC | KSLC | 927 | 2.4 | Cerner Corporation |
| 8/3/2018 | 7:16 PM | N979CF | KSLC | KMKC | 927 | 2.0 | Cerner Corporation |
| 8/9/2018 | 3:04 PM | N979CF | KMKC | KLXT | 16 | 1.3 | Cerner Corporation |
| 8/9/2018 | 6:08 PM | N979CF | KLXT | KMKC | 16 | 0.3 | Cerner Corporation |
| 8/16/2018 | 9:30 PM | N979CF | KMKC | KSLC | 927 | 2.3 | Cerner Corporation |
| 8/17/2018 | 12:30 AM | N979CF | KSLC | KMKC | 927 | 2.0 | Cerner Corporation |
| 8/22/2018 | 9:55 PM | N979CF | KMKC | KMQS | 999 | 2.1 | Cerner Corporation |
| 8/23/2018 | 7:50 PM | N979CF | KMQS | KMKC | 999 | 2.5 | Cerner Corporation |
| 9/4/2018 | 5:23 PM | N979CF | KMKC | KPHL | 1033 | 2.4 | Cerner Corporation |
| 9/5/2018 | 11:19 AM | N979CF | KPHL | KPBI | 954 | 2.1 | Cerner Corporation |
| 9/5/2018 | 8:48 PM | N979CF | KPBI | KMKC | 1200 | 2.7 | Cerner Corporation |
| 9/6/2018 | 12:20 PM | N979CF | KMKC | KHCR | 898 | 2.0 | Cerner Corporation |
| 9/7/2018 | 7:46 PM | N979CF | KHCR | KSAF | 444 | 1.0 | Cerner Corporation |
| 9/7/2018 | 9:06 PM | N979CF | KSAF | KOUN | 486 | 1.3 | Cerner Corporation |
| 9/7/2018 | 10:59 PM | N979CF | KOUN | KMKC | 312 | 0.8 | Cerner Corporation |
| 9/10/2018 | 10:08 PM | N979CF | KMKC | KMCC | 1438 | 3.4 | Cerner Corporation |
| 9/11/2018 | 6:34 PM | N979CF | KMCC | KMKC | 1438 | 2.8 | Cerner Corporation |
| 9/19/2018 | 8:58 PM | N979CF | KMKC | KIAD | 920 | 2.0 | Cerner Corporation |
| 9/20/2018 | 9:57 PM | N979CF | KIAD | KMKC | 920 | 2.2 | Cerner Corporation |
| 9/25/2018 | 11:45 PM | N979CF | KMKC | KMCC | 1438 | 3.3 | Cerner Corporation |
| 9/26/2018 | 8:02 PM | N979CF | KMCC | KMKC | 1438 | 3.0 | Cerner Corporation |
| 9/27/2018 | 12:05 PM | N979CF | KMKC | KBGR | 1376 | 2.7 | Cerner Corporation |
| 9/27/2018 | 7:15 PM | N979CF | KBGR | KMKC | 1376 | 3.8 | Cerner Corporation |
| 10/1/2018 | 1:59 PM | N979CF | KMKC | KIAD | 920 | 1.9 | Cerner Corporation |
| 10/3/2018 | 7:50 PM | N979CF | KIAD | KMKC | 920 | 2.2 | Cerner Corporation |
| 10/10/2018 | 12:24 AM | N979CF | KMKC | KTEB | 1092 | 2.4 | Cerner Corporation |
| 10/10/2018 | 4:06 AM | N979CF | KTEB | KMCI | 1096 | 2.6 | Cerner Corporation |
| 10/10/2018 | 10:50 AM | N979CF | KMCI | KMKC | 14 | 0.2 | Cerner Corporation |
| 10/11/2018 | 1:19 PM | N979CF | KMKC | KSDL | 1035 | 2.8 | Cerner Corporation |
| 10/12/2018 | 6:15 PM | N979CF | KSDL | KSLC | 496 | 1.1 | Cerner Corporation |
| 10/15/2018 | 10:58 PM | N979CF | KSLC | KMKC | 927 | 1.9 | Cerner Corporation |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 10/17/2018 | 7:50 PM | N979CF | KMKC | KHCR | 898 | 2.9 | Cerner Corporation |
| 10/18/2018 | 10:49 PM | N979CF | KHCR | KMKC | 898 | 1.9 | Cerner Corporation |
| 10/29/2018 | 12:39 PM | N979CF | MKC | TPA | 1036 | 2.1 | Cerner Corporation |
| 10/29/2018 | 9:14 PM | N979CF | KTPA | KMKC | 1036 | 2.5 | Cerner Corporation |
| 10/30/2018 | 8:01 PM | N979CF | KMKC | KSAN | 1336 | 3.5 | Cerner Corporation |
| 10/31/2018 | 9:02 PM | N979CF | KSAN | KSLC | 627 | 1.8 | Cerner Corporation |
| 11/4/2018 | 10:19 PM | N979CF | KSLC | KMKC | 927 | 1.9 | Cerner Corporation |
| 11/7/2018 | 4:49 PM | N979CF | KMKC | KSTL | 228 | 0.6 | Cerner Corporation |
| 11/7/2018 | 6:12 PM | N979CF | KSTL | TRM | 1477 | 3.8 | Cerner Corporation |
| 11/7/2018 | 11:10 PM | N979CF | KTRM | KMKC | 1256 | 2.2 | Cerner Corporation |
| 11/19/2018 | 3:42 PM | N979CF | KMKC | KTRM | 1256 | 2.9 | Cerner Corporation |
| 11/19/2018 | 8:11 PM | N979CF | KTRM | KSTL | 1477 | 3.0 | Cerner Corporation |
| 11/19/2018 | 11:34 PM | N979CF | KSTL | KMKC | 228 | 0.7 | Cerner Corporation |
| 11/26/2018 | 11:30 PM | N979CF | KMKC | KFRG | 1125 | 2.3 | Cerner Corporation |
| 11/27/2018 | 4:25 PM | N979CF | KFRG | KMKC | 1125 | 2.9 | Cerner Corporation |
| 11/28/2018 | 6:40 PM | N979CF | KMKC | KMKC | 0 | 1.3 | Cerner Corporation |
| 12/2/2018 | 7:55 PM | N979CF | KMKC | KHPN | 1110 | 2.3 | Cerner Corporation |
| 12/3/2018 | 2:28 PM | N979CF | KHPN | KPNE | 97 | 0.5 | Cerner Corporation |
| 12/3/2018 | 3:41 PM | N979CF | KPNE | KMKC | 1043 | 2.9 | Cerner Corporation |
| 12/4/2018 | 8:10 PM | N979CF | KMKC | KCLT | 798 | 1.6 | Cerner Corporation |
| 12/4/2018 | 10:17 PM | N979CF | KCLT | KIAD | 322 | 0.9 | Cerner Corporation |
| 12/5/2018 | 12:08 AM | N979CF | KIAD | KMKC | 920 | 2.4 | Cerner Corporation |
| 12/6/2018 | 9:43 PM | N979CF | KMKC | KBNA | 480 | 1.2 | Cerner Corporation |
| 12/7/2018 | 9:39 PM | N979CF | KBNA | KMKC | 480 | 1.5 | Cerner Corporation |
| 12/13/2018 | 2:24 PM | N979CF | KMKC | KMQS | 999 | 2.1 | Cerner Corporation |
| 12/13/2018 | 10:18 PM | N979CF | KMQS | KFRG | 139 | 0.8 | Cerner Corporation |
| 12/14/2018 | 9:19 PM | N979CF | KFRG | KMKC | 1125 | 3.0 | Cerner Corporation |
| 12/17/2018 | 12:46 PM | N979CF | KMKC | KPHX | 1045 | 2.5 | Cerner Corporation |
| 12/17/2018 | 7:22 PM | N979CF | KPHX | KMKC | 1045 | 2.2 | Cerner Corporation |
| 12/19/2018 | 1:47 PM | N979CF | KMKC | KSTL | 228 | 0.6 | Cerner Corporation |
| 12/20/2018 | 1:39 AM | N979CF | KSTL | KMKC | 228 | 0.7 | Cerner Corporation |
| 12/20/2018 | 2:45 PM | N979CF | KMKC | KHYA | 1288 | 2.8 | Cerner Corporation |
| 12/20/2018 | 9:43 PM | N979CF | KHYA | KMKC | 1288 | 3.3 | Cerner Corporation |

AircraftBluebook
www.aircraftbluebook.com

## Aircraft Bluebook

July 23, 2021

### Cessna 1984 - 421C

Multi Engine Piston
Model: **CESSNA 421 GOLDEN EAGLE III**
Year: **1984**
Serial Number: **421C-1401 through -1413**
Trend: **No Change**
Engine Takeoff Power: **Cont 375hp, GTSIO-520-N**
Average Overhaul $ Installed: **47,000 ea**
Engine TBO Hours: **1600**
Max Seats: **8**
Appraisal Points: **Prcd as per base avg**



### Base Average Equipment

| | | |
|---|---|---|
| Dual nav-com | G/S | xpdr-enc |
| ADF | DME | 3-axis A/P-FD |
| RNAV | radio alt | RMI |
| radar | known ice | toilet |
| air cond | 800 SMOH | AFTT +/- 10% of avg |
| compression 85% of new | exc P&I | orig logs |
| no DH | Fresh Inspections | ADs complied |

### Recent ADs

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 10-11-4 | 07-5-15 | 06-16-18 | 05-24-9 | 05-20-25 | 04-8-15 | 04-8-10 | 04-25-16 |
| 04-21-5 | 00-1-16 | 98-4-28 | 98-25-2 | 98-14-3 | 97-1-13 | 96-18-14 | 96-12-22 |
| 95-9-13 | 94-6-9 | 94-1-3 | 93-10-2 | 92-16-18 | 91-25-8 | 88-3-6 | 87-4-5 |
| 86-5-2 | 86-13-4 | 86-1-6 | 84-26-2 | 84-20-2 | 76-13-7 | | |

### Bluebook Notes

NOTE: Glass windshield new costs approx $20,000.

### Aircraft Bluebook Values - Spring 2015 Vol. 15-01

| | Factory New List Standard Price | Factory New List Average Equip Price | Average Retail Price | Average Wholesale Price |
|---|---|---|---|---|
| Published Rates | $731,500.00 | $783,275.00 | **$410,000.00** | $346,000.00 |
| Total Time Air Frame (3473.33 hrs) | $0.00 | $0.00 | **$25,830.00** | $21,798.00 |
| Since Major Overhaul - Engine 1 (532.33 hrs) | $0.00 | $0.00 | **$7,864.14** | $7,864.14 |
| Since Major Overhaul - Engine 2 (441.33 hrs) | $0.00 | $0.00 | **$10,537.72** | $10,537.72 |
| Total | $731,500.00 | $783,275.00 | **$454,231.87** | $386,199.87 |

### Please Read

The Aircraft Bluebook is designed and developed as a service for the purchasers thereof to assist them in arriving at the fair market value of aircraft listed herein, but is intended only as a guide and is not to be considered to reflect all factors involved in the appraisal process of any particular aircraft. All prices in the Digest are considered a representative average.

Drawings are for general reference only and may not incorporate minor differences between year models.

The information herein is prepared from many sources, is edited, and believed to be correct. The publishers do not warrant the accuracy of the source material and assume no responsibility to any person or persons in connection with the use of this guide. In case of error or omission, the liability of the company, if any, is limited and many not, in any event, exceed the amount paid for the service during the period covered by the guide in which the error or omission occurred.

www.aircraftbluebook.com

All material herein © 2021 Penton Inc. All rights reserved.

SPECIALIZED TAX RECOVERY

*"Your Tax Recovery Partner"*

March 10, 2021

[redacted]

Re: Review of Market Comps provided by owner Citation CJ3+ SN 525B-[redacted]. Document labeled as "Appeal of the Annual Notice of Assessment for Aircraft [redacted]"

**Background:**

The county has established precedent on valuation for aircraft based on the nationally recognized publication of Aircraft BlueBook. The value of each aircraft is based of the standardized date of January 1 of the applicable tax year. The values provided to the aircraft owner reflect the values of as of January 1 of the corresponding tax year. The BlueBook valuations consider multiple variables such as flight hours, engine hours, maintenance programs, avionics, etc., in determining the average fair market value for aircraft and is adjusted for these variables. It is the standardized method used by the BOA for valuating aircraft used for the last 10+ years that creates a fair and uniform valuation.

This aircraft owner provided a group of aircraft market comparables, in an effort to vary from the BlueBook valuations. Adjusting for proper sales dates and aircraft values and comparing to value of the BlueBook from each applicable tax year, there is a direct correlation between the BlueBook values and what each of the market comps sold for at that specific time. Below you will find the specifics of the information and our findings of the review. ** Blue Italic letters notate BlueBook Valuations.

**Conclusion:**

The review of the aircraft sales price in comparison to BlueBook valuations outlined in Table A, confirm the accuracy of Bluebook. This group of Citation CJ3+ aircraft sold at or above the BlueBook value for the majority of the sales. When compared side by side, the data reveals that the average aircraft sells at a 1.56% premium to the BlueBook Valuation. In fact, only 2 aircraft sold for less than average which amounts to less than 1% below market average.

STR All Rights Reserved CONFIDENTIAL 

1.216.342.2446
Specializedtaxrecovery.com

SPECIALIZED TAX RECOVERY

*"Your Tax Recovery Partner"*

**Data Review:**
Provided Market Comps= 13 Aircraft
Aircraft sold Above BB Value = SN 0513| SN 0465|SN 0508|SN 0501|SN 0467|SN 0500|SN 0458 = 7 Aircraft
Aircraft sold At BB Value = SN 0545|SN 0532 = 2 Aircraft
Aircraft sold below BB Value = SN 0520*| SN 0492*|SN 0547|SN 0518 = 4 Aircraft

| SN | Sale Price | BlueBook Value | Sale Price vs BB | % Sale Price vs BB |
|---|---|---|---|---|
| SN 0545 | $6,000,000.00 | $6,000,000.00 | $0.00 | 0.0% |
| SN 0513 | $5,650,000.00 | $5,500,000.00 | $150,000.00 | 2.7% |
| SN 0465 | $5,400,000.00 | $5,300,000.00 | $100,000.00 | 1.9% |
| SN 0508 | $5,380,000.00 | $5,300,000.00 | $80,000.00 | 1.5% |
| SN 0501 | $5,500,000.00 | $5,300,000.00 | $200,000.00 | 3.8% |
| SN 0532 | $6,500,000.00 | $6,500,000.00 | $0.00 | 0.0% |
| SN 0547 | $6,900,000.00 | $7,000,000.00 | -$100,000.00 | -1.4% |
| SN 0467 | $5,750,000.00 | $5,700,000.00 | $50,000.00 | 0.9% |
| SN 0518 | $6,485,000.00 | $6,500,000.00 | -$15,000.00 | -0.2% |
| SN 0500 | $6,725,000.00 | $6,200,000.00 | $525,000.00 | 8.5% |
| SN 0458 | $6,235,000.00 | $6,200,000.00 | $35,000.00 | 0.6% |
| | | | | |
| | **Combined Sale Price** | **Combined BB Value** | **Sales Price vs BB** | **Avg SP Above BB** |
| | $66,525,000.00 | $65,500,000.00 | $1,025,000.00 | 1.56% |

* Two aircraft were removed from table as they are not equitable comparisons.
**SN 0520- Reported corrosion repair and other damage. Sold 7% below average due to these conditions.
**SN 0492- Does not report maintenance program and/or other expensive equipment and sold 6.5% below average sale price.

**2021 Comps:**

SN 0520
2017 I Sold on 09/18/20 I $5,650,000 I 1328 AFTT I Tap Blue I TCAS II I Original Paint/Interior I Winglets I Blue Water Corrosion Repair - June 2020
***BlueBook Value|2017|CESSNA CITATION CJ3+ 525B| SN 510-533|Value as of 9/18/2020|$6,100,000***

SN 0545
2018 I Sold on 10/15/20 I $6,000,000 I 394 AFTT I Tap Blue I ProParts I TCAS II I ATG 5000 I Original Paint/Interior I No Damage History
***BlueBook Value|2018|CESSNA CITATION CJ3+ 525B| SN 534-571|Value as of 10/15/2020|$6,000,000***



1.216.342.2446
Specializedtaxrecovery.com

SN 0513
2017 I Sold on 10/19/20 I $5,650,000 I 645 AFTT I TA P Elite I Pro Parts I TCAS II I ATG 5000 I Original Paint/Interior I No Damage History
***BlueBook Value|2017|CESSNA CITATION CJ3+ 525B| SN 510-533|Value as of 10/19/2020|$5,500,000***

SN 0465
2015 I Sold on 07/21/20 I $5,400,000 1667 AFTT I Tap Blue I ProParts I TCAS 11 1 Original Paint/Interior I ATG 5000 I No Damage History
***BlueBook Value|2015|CESSNA CITATION CJ3+ 525B| SN 462-483|Value as of 7/21/2020|$5,300,000***

SN 0508
2016 I Sold on 11/05/2020 I $5,380,000 I 240 AFTT I Tap Blue I Pro Parts I TCAS 11 I
Original Paint/Interior
***BlueBook Value|2016|CESSNA CITATION CJ3+ 525B| SN 484-509|Value as of 11/5/2020|$5,300,000***

SN 0501
2016 I Sold on 02/03/21 I $5,500,000 I 1312 AFTT I Tap Elite I ProParts I TCAS II I Original Paint/Interior I No Damage History
***BlueBook Value|2016|CESSNA CITATION CJ3+ 525B| SN 484-509|Value as of 2/3/2021|$5,300,000***

**2020 Comps:**

SN 0532
2017 I Sold on 11/14/19 I 800 AFTT I Tap Blue I ProParts I TCAS II I ATG 4000 I Original Paint/Interior I No Damage History |$6,500,000
***BlueBook Value|2017|CESSNA CITATION CJ3+ 525B| SN 510-533|Value as of 11/14/2019|$6,500,000***

SN 0492
2016 I Sold on 09/27/19 I $5,700,000| 700 AFTT I Tap Blue I TCAS II I Original Paint/Interior I No Damage History
***BlueBook Value|2016| CESSNA CITATION CJ3+ 525B|SN 484-509|Value as of 9/27/2019|$6,100,000***

SN 0547
2018 I Sold on 10/09/19 |$6,900,000 |140 AFTT I Tap Blue I TCAS II I Avance L3 I Original Paint/Interior I No Damage History
***BlueBook Value|2018|CESSNA CITATION CJ3+ 525B|SN 534-571|Value as of 10/9/2019|$7,000,000***



1.216.342.2446
Specializedtaxrecovery.com

SN 0467
2015 I Sold on 01 /30/20 |$5,750,000| 600 AFTT I Tap Blue I TCAS II I ATG 5000 I No Damage History
***BlueBook Value|2015|CESSNA CITATION CJ3+ 525B|SN 0462-0483|Value as of 1/30/2020|$5,700,000***

**2019 Comps:**

SN 0518
2017 I Sold on 07/03/19 |$6,485,000| 410 AFTT I Tap Blue I ATG 5000 I Original Paint/Interior
***BlueBook Value|2017|CESSNA CITATION CJ3+ 525B|SN 0511-0533|Value as of 7/3/2019|$6,500,000***

SN 0500
2016 I Sold on 12/17/18 |$6,725,000|215 AFTT I Tap Blue I TCAS II I ATG 4000 I Original Paint/Interior I No Damage History
***BlueBook Value|2016|CESSNA CITATION CJ3+ 525B|SN 0484-509|Value as of 12/17/2018 |$6,200,000.00***

**2018 Comp:**

SN 0458
2014 I Sold on 10/26/2017 |$6,235,000| 414 AFTT I Tap Blue I TCAS II I ATG 5000
***BlueBook Value| 2014 |CESSNA CITATION CJ3+ 525B |Value as of 10/26/2017| $6,200,000.00***



1.216.342.2446
Specializedtaxrecovery.com

| Field Label | Description / Instructional Text | Required | Answer | Comment | Upload attachments? |
|---|---|---|---|---|---|
| **The following documentation must be provided** | | | | | |
| Plan for data delivery for reports and documentation | The data and reports produced for this project will be made available through a secured file transfer portal (SFTP). The ALDOR advised in the RFB that they may provide such access, which if preferred, is fully acceptable by STR. However, other methods such as SFTP to an outside server maintained by STR or secure cloud-based services can alternatively be selected. Whichever means is preferred by the ALDOR, STR will work with the team to customize the organization of that shared file location so that it is easily accessed using secure credentials. As files are added to the SFTP, communication will be sent to the ALDOR (i.e., via email) advising. | Yes | Yes | See section II(i) of RFB | **Yes. Estimation and projection of recovered and audited aircraft included. Please see page 11- Discovery and projection of Aircraft.** |
| References from other states/jurisdictions to which supplier provides this service | Attached | Yes | Yes | See section I(d) of RFB | Yes |
| Narrative of any past performance/experience in other jurisdictions and technical competence | Attached | Yes | Yes | See section I(d) of RFB | Yes |

# EXHIBIT C

SPECIALIZED TAX RECOVERY

*"Your Tax Recovery Partner"*

October 5th, 2022

Neil Butara
Specialized Tax Recovery
1284 Som Center Road
PO Box 299
Cleveland, OH 44124

Christine Cook- State Purchasing Director
Alabama Department of Finance
100 North Union Street Suite 192
Montgomery, AL 36130

Re: Protest Letter for Aviation Valuation RFB (SRC0000009508) Intent to Award Notice

Ms. Cook,

Pursuant to Section 355-4-1-.04(14) of the Alabama Administrative Code, Aviation Capital Partners, LLC dba Specialized Tax Recovery ("STR") hereby protests the decision to award the contract in the project identified as Aircraft Valuation (SRC0000009508). The Alabama Department of Revenue (ALDOR) has announced an intent to award the contract to SH Advisors, LLC ("Situs Hawk"). As set forth below, there are numerous reasons why Situs Hawk should not be awarded the contract. Given the factual RFB requirements and the evidence supplied below, Situs Hawk is not a responsible bidder, and its attempt to perform under the contract would require Situs Hawk to violate federal patent law.

The standard for the award of a public contract is that it is awarded to the "lowest responsible bidder." *See* Ala. Code (1975) §§ 41-16-20 and 41-16-50. As defined by Public Works Law, §39-2-6, "A responsible bidder is one who, among other qualities determined necessary for performance, is competent, experienced, and financially able to perform the contract." Additionally, the Supreme Court of Alabama in *Inge v. Board of Public Works of Mobile*, 135 Ala. 187, 33 So. 678 (1903), construing the words "lowest responsible bidder," said:

> In the letting of public contracts to the lowest responsible bidder, the duty of the officer is not merely ministerial, but partakes of a judicial character, requiring the exercise of discretion. A discretion, however, which should always be exercised to the end of subserving the public interest, and never in the interest of the bidder. In deciding upon the responsibility of bidders it is the duty of the board or officers not only to take into consideration the pecuniary ability of bidders to perform the contract, but also to ascertain which ones, in point of skill, ability and integrity would be most likely to do faithful, conscientious work, and to fulfill the terms of the contract.

STR All Rights Reserved CONFIDENTIAL


1.216.342.2446
Specializedtaxrecovery.com

135 Ala. at 198, 33 So. at 681 (emphasis added); *see also Crest Const. Corp. v. Shelby Cnty. Bd. of Educ.*, 612 So. 2d 425, 429 (Ala. 1992) (quoting *Inge*). Situs Hawk is not a responsible bidder under these standards, or any other.

When proper due diligence is performed, Situs Hawk will be deemed unqualified and a non-responsible bidder for not meeting RFB specifications to perform the desired tasks required for a successful program and would be eliminated from contention. In review of State records, SH Advisors, LLC obtained its certificate of formation on 8/12/22, making the company less than 2 weeks old when submitting for this contract on 8/25/22. Being that new, it is not surprising that they provided no completed or contracted past performances. We encourage the department to speak with the references identified by Situs Hawk, because, as set forth below, we contacted them and learned that none of them are existing Situs Hawk customers. With no completed work, Situs Hawk simply cannot have the experience required to perform the desired functions at a county level, much less at the magnitude and scope required at the state level for Alabama. The specifications in this RFB require a high level of accuracy and technical competence to obtain successful results, so hiring an inexperienced provider would be irresponsible, unprofessional, and will not yield positive outcomes. Additionally, the fact that this will be the first aviation discovery program under the direct management of the ALDOR, experience and proven results become even more important to a successful program this year and into the future.

In review of the submitted materials, there is a clear distinction between the experience, quality, and professionalism of Specialized Tax Recovery compared to the inexperience of Situs Hawk. The information provided by Situs Hawk is filled with incorrect statements, false claims, and misinformation regarding a variety of topics outlined below. Specialized Tax Recovery has cemented itself over the last 14 years as the first and only company capable of completing a successful aircraft discovery and valuation program. Not only has Situs Hawk never been contracted to perform, or successfully completed, a discovery program, they are also clear imitators and duplicators of Specialized Tax Recovery's patented process and materials. With the clear pattern of duplication, STR has initiated a review of patent infringement and will defend its patent to the full extent of the law. The end result will likely conclude in favor of STR defending its patent. Not only is STR the more responsible bidder, but as between STR and Situs Hawk, STR is the only responsible bidder.

This pattern of behavior from Situs Hawk is unprofessional at best and should result in being removed from consideration in Alabama. The misrepresentation of Situs Hawk should not go un-acknowledged as they have intentionally represented a false level of experience with misleading customer references and contract performance. We are confident that when the department investigates Situs Hawk's company background and supplied documentation, as part of its duty to eliminate non-responsible bidders that would jeopardize the success and performance of the department, it will become clear that the contract must not be awarded to Situs Hawk.

STR All Rights Reserved CONFIDENTIAL


1.216.342.2446
Specializedtaxrecovery.com

**STR Reason for Protest I:**
**Infringement on U.S. Patent No. 10, 956,988**

Specialized Tax Recovery has been the only provider capable of providing aviation discovery services since inception in 2008. Over the last 14 years, STR has seen a few hobbyist companies attempt to step into the market that STR fostered from inception, only to fail from the same deficiencies that are on display here. STR was created by aviation experts with over 80 years of aviation experience that utilize our patented process to address the very specific problems in the aircraft taxation process. We patented our product and process to protect our unique skillset from imitation in the marketplace and constantly monitor for imitators. Upon review of the supplied documentation, it is clear that Situs Hawk is infringing STR's intellectual property rights, and specifically STR's U.S. Patent No. 10, 956,988 ("the '988 Patent"). STR innovated the combined use of FAA and transponder data for aircraft discovery and tax valuation purposes back in 2017 and filed for and obtained the '988 Patent to cover STR's innovative system and methods. In addition to the other issues addressed in this letter, Situs Hawk appears to be claiming to offer the exact same solution that STR invented in 2017 and patented in the '988 Patent. Specifically, Situs Hawk presents the same problem—that FAA data alone is not sufficient to track all aircraft for taxability purposes—and provides the same solution—mixing recorded flight data with additional input from transponder receiver networks to track and uncover aircraft in order to generate a tax assessment. Again, just as STR's '988 Patent claims, Situs Hawk claims to use this combined data to more accurately track aircraft and perform a more fulsome aircraft tax assessment.

STR is currently progressing through the legal steps in defending our patented process, and we will protect our information to the full extent of the law. This advancement will continue through the following weeks and will very likely render Situs Hawk incapable of continuing to infringe on our work. This will ultimately confirm that STR is the sole option for providing a complete and accurate solution for aviation discovery, valuation, and appeal support for state and local governments.

**STR Reason for Protest II:**
**Specification 15) References from other states/jurisdictions to which vendor provides this service.**

In specification 15, the ALDOR requested references from other jurisdictions in which vendor has provided the requested services of discovery, valuation, and appeal support for aircraft. When contacted, these references should provide confirmation of the bidder successfully being contract to perform each task listed above. In normal course of the procurement process, references are extremely important to fact-checking claims and ensuring that companies can indeed perform at the high level desired by the ALDOR. A successful aircraft discovery program would contain certain elements to prove the efficacy and experience of the company, and questions would be asked of each reference provided:

1. Was the company contracted to perform an aircraft audit? When did they contract start and end? Is it ongoing?

2. Did the company successfully discover omitted aircraft in the jurisdiction, provide the necessary information for the department to send notification of failure to file, all while providing the necessary information to prove situs, and thus, taxability? Was the information accurate and complete?
3. Did the company provide an accurate valuation in uniformity with the department protocols? Did the valuation consider information such as any known conversions and modifications; Engine upgrades, replacements, enhancements; air frame total time (AFTT); since major overhaul (SMOH); and condition?
4. Did the company provide appeal support for any aircraft that may have challenged the tax notice? Was the company successful in defending the appeal?
5. Was the information provided by the company able to support the jurisdiction tax code? Was the company knowledgeable about the state and local codes?
6. Was the program ultimately successful in collecting from discovered aircraft? Did the company provide sufficient customer service and adapt to the needs of the client?
7. What was the ROI on the completed discovery program?

Situs Hawk provided 3 "references" claiming to have successfully performed and completed the services of discovery, valuation, and appeal support for aircraft in 1) McCracken County, Kentucky 2) Lincoln County, Missouri 3) Terrebonne Parish County, Louisiana. If the references were contacted, a clear pattern of insufficiency would have been identified. STR has contacted each of the above references, made records of the conversation, and concluded that the claims made by Situs Hawk are false, inaccurate, and mis-leading to the ALDOR and the purchasing department. Proper due diligence will lead the ALDOR to conclude that Situs Hawk falsely represented their relationship with each of the provided references, has no confirmed experience, and is "unqualified" to perform the required tasks demanded by this RFB. There are no contracts on file at any location, confirming that Situs Hawk has never been commissioned to actually perform this work. It is strongly recommended that every reference provided be contacted and discussed with directly.

> McCracken County, Kentucky – 9/28/2022 - (270) 444-4712 - Bill.Dunn@ky.gov
> STR called and spoke directly with Bill Dunn, the county PVA. This was the specific individual referenced by Situs Hawk. Situs Hawk states in the RFB that, "…we are providing aircraft discovery and valuation services similar to those requested by the State of Alabama." Mr. Dunn confirmed that there has been no contracted work performed for any of the services of discovery, valuation, or appeals regarding aircraft inside McCracken. It was noted that omitted aircraft are the responsibility of the Kentucky DOR, and they had no intention of pursuing any aircraft. Situs Hawk did provide a list of leads, and McCracken County currently sees no value in pursuing the leads provided. Other than being the recipient of the information, Mr. Dunn confirmed that McCracken County has no "partnership" that reciprocates any agreement or has an active contract providing the aforementioned services.

Lincoln County, Missouri – 9/28/2022- (636) 528-6300 - kbishop@lincolncoassessor.com
A direct conversation with the Assessor, Kevin Bishop, has revealed a similar story as the above "references". Situs Hawk mentions "in our first year of partnership with Lincoln County, we identified significantly more aircraft than were previously reported by aircraft owners**.**" The wording indicates that there is a contract in place between the two parties, and that a successful aircraft discovery program was initiated and/or completed. Mr. Bishop confirmed that there was no work being completed, no contracted work was commissioned, and there was little desire to attempt a program. There was no confirmed work completed for any of the services of discovery, valuation, or appeal support. The Deputy Assessor Christina Shaffer, who manages the aircraft division, also directly confirmed that they have never hired or utilized a company to assist them with aircraft discovery, valuation, or appeal services, and that we were the first company that she had ever heard of.

Terrebonne Parish County, Louisiana – 9/28/2022- (985) 876-6620 - *kerry@tpassessor.org*
STR called and spoke directly with Kerry Boudreaux, Deputy Assessor, who is responsible for aircraft. Mr. Boudreaux advised they had recently been approached by Situs Hawk. Mr. Boudreaux commented that they have not heard from them since an initial conversation. Situs Hawk states in the RFB that, "…we are providing aircraft discovery services…" Although Situs Hawk notes the challenges faced in Louisiana, no actual service agreements or contracts are mentioned and it was confirmed with Mr. Boudreaux that they were not currently pursuing or utilizing any services with Situs Hawk.

The references that a company chooses to present to a potential client are the direct reflection of past-performance and support the company claims made in a RFB proposal. These references are typically the best examples of their work and allow a potential client to gain insight to confirm the abilities, or the shortcomings, of a service provider. In review of what Situs Hawk provided as "references", it is clear that it is an attempt to blur the lines of "providing services" and use these as actual past performances. If proper due diligence and follow-up was completed, it would be apparent that these are inapplicable. In direct comparison, if STR decided to "reference" every county that it had discussions with and sent information to, the list would be in the hundreds. However, it would misrepresent our portfolio. Contracted work can be the only measurement of performance to allow judgement on company ability.

**<u>STR Reason for Protest III:</u>**
**Specification 16) Narrative of any past performance/experience in other jurisdictions and technical competence**

In review of the 6 pages of information supplied by Situs Hawk, there are clear examples of technical in-competence and inaccuracy that we have outlined below. They also do not provide a detailed narrative of the performance of the each of the contracts to support their "proprietary process". However, Situs Hawk

does make direct mention of STR's patented process in an attempt to elude that they do not infringe on our process. They make accusations of our data that are incorrect and show the company's overall lack of knowledge in the aviation industry, all the while confirming the accuracy of our claims and description of the problem.

Utilizing our patented process, STR combines data from many multiple sources, including FAA SWIM data, ADS-B, and others. This creates many redundancies in the data, provides confirmation of accuracy, and provides the most comprehensive view of each and every aircraft in the national fleet. This allows STR to provide the most accurate picture and review of situs for any jurisdiction and tax year. A direct comparison would show the inequities in the two offerings, and would highlight the superior process created by STR.

As previously mentioned, the inexperience and inaccuracy of Situs Hawk is on display in multiple incorrect notations of state and local code, specifically in Missouri. Situs Hawk claims "In Lincoln County, Missouri, we are providing another unique property tax solution. In addition to our standard aircraft discovery and valuation services, Missouri exempts all aircraft over 25 years of age, those flown <50 hours/year and those weighing <3,000 pounds from property taxes." This is simply incorrect as the historic subclass of aircraft are not exempt, but they do receive a lower assessment ratio. It does not appear that Situs Hawk ever successfully discovered and added an omitted aircraft to the Lincoln County tax rosters, and this misunderstanding of the Missouri tax code indicates that some aircraft would be mislabeled as "exempt", causing them to remain untaxed and undiscovered.

To further clarify, personal property taxes in Missouri are divided into multiple subclasses of tangible personal property, with each class having different assessment ratios that are set directly by the State. Personal property taxes are due on many different forms of aircraft owned as of the lien date of January 1. Historic aircraft are taxable inside of Missouri and fall under section 301.131, and they are awarded a lower assessment rate of 5% compared to the standard ratio of 33.3%. In order to receive the lower ratio, there are requirements that the aircraft must meet: Historic aircraft are eligible if it is 25 years or older and flown less than 50 hours per year. For example, if an aircraft is 35 years old, and flies 26 hours per year, it would be eligible to be assessed as "historic". The owner would have to apply to be assessed as historic to receive the lower rate. Specialized Tax Recovery has direct experience in discovering historic aircraft in Missouri and can be confirmed with documented proof and receipts from their supplied reference in Missouri.

Further supporting the inexperience displayed in the RFB, Situs Hawk makes projections that are both inaccurate and poorly supported without having any proof of completed discovery projects. This lack of detailed experience can only be gained from executed contract performance and explains the inaccuracies presented. This further supports the fact that Situs Hawk is lacking the experience required for all three functions of discovery, valuation, and appeal support requested by the ALDOR. Examples of these inaccuracies and deficiencies are the following:

1) Situs Hawk projects 1,500 newly discovered aircraft for Tax Year 2020. This estimation is both out of date and irrelevant to the RFB at hand. Without comparing to Tax Year 2022, it is impossible for Situs



1.216.342.2446
Specializedtaxrecovery.com

Hawk to make any relevant projections related to Tax Year 2023 and this RFB. And as you will find, no Tax Year 2023 projections for FMV or tax revenue are presented in Situs Hawk's RFB. A responsible bidder would normally provide values reflecting their expected performance as it relates specifically to the current RFB. Situs Hawk fails to provide this information highlighting their lack of experience executing any size discovery, valuation, or appeal project, let alone the size and scope of the entire state of Alabama. With no past experience to draw from, it is no doubt difficult to make accurate predictions of future work.

2) Having performed no actual appeal support for any tax authority to date, Situs Hawk further fails to provide the experience required by core elements of the RFB. In fact, Situs Hawk provides no examples of "additional documentation and support for aircraft valuation appeals" or reference to providing appeal support to anyone within their RFB. Understanding that an aircraft must first be "discovered" and provided a notice of assessment to be added to the tax roster, if there have never been any successful discoveries and additions to a tax roster, then there can be no appeals.

In conclusion, it is apparent that Situs Hawk is not a responsible bidder to which this contract may be awarded. Situs Hawk does not have the experience needed to perform the tasks of this RFB, it has misled and produced false information to the purchasing department and the Alabama Department of Revenue, and, most importantly, it has infringed on STR's patented process. The only proper course of action for the department is to deem Situs Hawk non-responsible, retract the intent to award, and view Specialized Tax Recovery as the only suitable option.

Specialized Tax Recovery has legal counsel standing by to assist in any clarification of this letter and its contents and is also open to negotiating a solution to the RFB (SRC0000009508) if the intent to award is changed in reconsideration of the award process.

We are standing by to assist and provide any further evidence or materials that may be desired in the review process.

Sincerely,

Neil Butara
VP- Specialized Tax Recovery



1.216.342.2446
Specializedtaxrecovery.com

# EXHIBIT D

**CONFIDENTIAL**

The following information is strictly confidential and should not be subject to public records requests to the State. This information includes existing SitusHawk customer information and is being provided to assist the State of Alabama with reviewing this RFB submission. Please consult counsel prior to release and contact SitusHawk upon receipt of any public records request.

*2) References from other states/jurisdictions to which vendor provides this service:*

1. McCracken County, KY: 621 Washington St, Paducah, KY 42003. 270-444-4712. Bill Dunn (Property Valuation Administrator).
2. Terrebonne Parish, LA: 8026 W Main St, Suite 501, Houma, LA 70360. 985-876-6620. Loney Grabert (Assessor)
3. Lincoln County, MO: 201 Main St, Troy, MO 63379. 636-528-6300. Kevin Bishop (County Assessor)

# EXHIBIT E

**From:** Kevin Bishop <kbishop@lincolncoassessor.com>
**Date:** November 23, 2022 at 3:34:21 PM EST
**To:** Neil Butara <nbutara@specializedtaxrecovery.com>
**Subject: RE: Reference Materials**

We are a test county for sure – I emailed Owen and stated that I would like to have that reference quote removed.

***Kevin Bishop***
***County Assessor***
***"Green Bay Packers Owner/Shareholder"***
***Lincoln County Assessors Office***
***201 Main Street - Ste 105***
***Troy, MO 63379***
***636-462-8971 Office***
***636-290-5338 Mobile***
***kbishop@lincolncoassessor.com***

---

**From:** Neil Butara <nbutara@specializedtaxrecovery.com>
**Sent:** Wednesday, November 23, 2022 2:32 PM
**To:** Kevin Bishop <kbishop@lincolncoassessor.com>
**Subject:** RE: Reference Materials

[External]
Kevin,

You were listed as a reference for past performance for a bid in Alabama. The bid is for discovering, valuing, and providing appeal support for omitted aircraft.

"In Lincoln County, Missouri, we are providing another unique property tax solution" "In our first year of partnership with Lincoln County, we identified significantly more aircraft than were previously self-reported by aircraft owners"

3. Lincoln County, MO: 201 Main St, Troy, MO 63379. 636-528-6300. Kevin Bishop (County Assessor)

So by this reference, it sounded like you had a pretty successful program. You mentioned that this was a test pilot contract, was there any actual funding provided? Or was it more of a "tell me what you think of this info" type agreement to be a tester for the information? You mentioned this started sometime in October of 2022, is that correct?

I guess the question is- would you consider yourself a reference for these services and company? And was the program charged for adding significantly more aircraft to Lincoln County?

**Neil Butara | Vice President**

**Specialized Tax Recovery**
**e:** nbutara@specializedtaxrecovery.com
**w:** specializedtaxrecovery.com
**o:** 1.216.342.2446 | **c:** 1.216.710.6508

**Click HERE to learn more about the challenge of Aircraft Discovery**

The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.

---

**From:** Kevin Bishop <kbishop@lincolncoassessor.com>
**Sent:** Wednesday, November 23, 2022 2:49 PM
**To:** Neil Butara <nbutara@specializedtaxrecovery.com>
**Subject:** RE: Reference Materials

Where do you find that I am a reference to Situshawk?? I went to their website and I see nothing mentioning my name – if anything it doesn't show much at all.

I signed a one year contract to use/test the access they provide for aircraft – I will not provide a copy.

I can have Sam and Owen remove my name from the reference stand point.

***Kevin Bishop***

***County Assessor***
***"Green Bay Packers Owner/Shareholder"***
***Lincoln County Assessors Office***
***201 Main Street – Ste 105***
***Troy, MO 63379***
***636-462-8971 Office***
***636-290-5338 Mobile***
***kbishop@lincolncoassessor.com***

---

**From:** Neil Butara <nbutara@specializedtaxrecovery.com>
**Sent:** Wednesday, November 9, 2022 12:20 PM
**To:** Kevin Bishop <kbishop@lincolncoassessor.com>
**Subject:** Reference Materials

[External]
Kevin,

Thank you for your time today in discussing the process of discovering and valuing aircraft in Missouri.

As mentioned, you were listed as a reference for a company called Situs Hawk, that has claimed to have worked with and performed some specific tasks. "In our first year of partnership with Lincoln County, we identified significantly more aircraft than were previously self-reported by aircraft owners." And they appear to represent that there is a "partnership" or a contract in place that would utilize the services for discovering, valuing, and dealing with the appeals of the aircraft.

We did look into the county records for a contract but didn't see one on file. Could you confirm if you have a contract with them for these services? As you described the discussions between yourself and Situs Hawk, it sounded like the company provided some information that would not provide the necessary materials to fully take an aircraft from unreturned, to discovered and valued, and then deal with any appeals.

Lasty, they have you listed as a reference as performing work. Would you consider the project a success and be able to recommend this to another jurisdiction? Or would you not consider it actually a reference at this point? Any description of the process that you feel would be helpful or beneficial to understand would be greatly appreciated.

I appreciate your time and attention to this matter,

Thank you,

Neil Butara

**Neil Butara | Vice President**

**Specialized Tax Recovery**
**e:** nbutara@specializedtaxrecovery.com
**w:** specializedtaxrecovery.com
**o:** 1.216.342.2446 | **c:** 1.216.710.6508

**Click HERE to learn more about the challenge of Aircraft Discovery**

The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.

**From:** Dunn, Bill W (McCracken Co PVA) <bill.dunn@ky.gov>
**Sent:** Wednesday, November 9, 2022 12:52:38 PM
**To:** Lance Warren <lwarren@specializedtaxrecovery.com>
**Subject:** RE: Use of Aircraft Discovery/Valuation/Appeal Services

Hi Lance,

SitusHawk did indeed provide me with a report to compare against . This information has been enlightening but I am unable to use it to enforce the owners to submit a valid property return. With that, the report was provided for a single time use. I do not expect obtain any future reports.

Bill Dunn, MBA
McCracken County PVA
Direct: 270-444-1350
Office: 270-444-4712

---

**From:** Lance Warren <lwarren@specializedtaxrecovery.com>
**Sent:** Wednesday, November 9, 2022 11:11 AM
**To:** Dunn, Bill W (McCracken Co PVA) <bill.dunn@ky.gov>
**Subject:** Use of Aircraft Discovery/Valuation/Appeal Services

Bill,

Thank you again for speaking with me today and continuing our conversation with regards to aircraft taxation in McCraken County. Hopefully things can slow down now for you post-election and give you some relief as we approach the end of the year.

Per our conversation, I wanted to confirm whether or not you were currently utilizing any services for aircraft discovery, valuation, and appeal support. In our previous discussions, and again confirmed today, it sounds like you were aware of Situs Hawk offering similar services, however, you had chosen for multiple reasons not to utilize those services or pursue any assistance to date. It seems like McCraken County is being used as a reference by that same competitor and through our conversations with the ALDOR we wanted to help validate their statements. In short, Situs Hawk is claiming to have provided you with a list of all aircraft based in the county along with respective flight history and registration information. Additionally, they claimed to have "identified a material increase in the number and valuation of aircraft based in the county since partnering with McCracken County." Through this 'partnership' they state that they plan to provide McCraken County with additional aircraft travel logs going forward insinuating an ongoing and continued use of their services. Have you entered into any such 'partnership' or contract with Situs Hawk or any other related vendor?

I appreciate you being willing to validate this information through a short response to this email. Please simply respond to those claims above and your status of any use, or intent to use, their services as described. Additionally, feel free to add your overall decision to utilize any such provider for aircraft discovery, valuation, and/or appeal services. Thank you again and please don't ever hesitate to reach out when/if needed. Take care!

Lance

**Lance Warren | Vice President of Technology**

**Specialized Tax Recovery**
**e:** lwarren@specializedtaxrecovery.com
**w:** specializedtaxrecovery.com
**c:** 1.770.714.5480

**Click HERE to learn more about the challenge of Aircraft Discovery**

The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.

# EXHIBIT F

**CONFIDENTIAL**

The following information is strictly confidential and should not be subject to public records requests to the State. This information includes existing SitusHawk customer information and is being provided to assist the State of Alabama with reviewing this RFB submission. Please consult counsel prior to release and contact SitusHawk upon receipt of any public records request.

3) *Narrative of any past performance/experience in other jurisdictions and technical competence:*

SitusHawk offers the largest and most accurate commercially available aircraft discovery solution. Our data platform and technology infrastructure were purpose-built for large scale, state-level aircraft discovery and valuation services. Our proprietary network of public and private data sources allows us to identify and locate aircraft that cannot be identified by other internet flight tracking vendors, FAA flight logs or air traffic control system data. Our partnership and integration with a nationally recognized valuation publication provides the State with access to detailed, accurate and supported aircraft valuation data.

For aircraft discovery, the largest single primary source of flight tracking data in the United States is provided through the FAA's System Wide Information Management (SWIM) database. The FAA SWIM data feeds, which include FAA flight logs and ADS-B information, are the core information source for nearly all internet flight tracking vendors. However, relying on the SWIM database, or those internet flight tracking vendors who are built around SWIM, is not an effective solution for aircraft discovery for the State of Alabama.

This is because the FAA, for personal privacy reasons, allows aircraft owners to request their flight data be filtered (blocked) from distribution by SWIM through the FAA's Limiting Aircraft Data Displayed (LADD) program. The internet flight tracking vendors who subscribe to SWIM Data feeds are bound by the FAA's Data Access User Agreement to filter any LADD participant from displaying a blocked aircraft's flight data. The process for an aircraft owner to submit a LADD application and therefore prevent tracking of their aircraft is free and takes less than five minutes to complete.

As a specific example relevant to ALDOR, our review of high-value, late-model aircraft showed that >25% of those based in Jefferson County, Alabama are registered out-of-state AND have their flight-tracking blocked via the LADD program. This includes five aircraft with a combined market value in excess of $100M and whose whereabouts are unknown to other aircraft discovery vendors. The State is otherwise 100% reliant on an owner's voluntary declaration of situs of these aircraft.

Additionally, should an aircraft owner fail to block their tail number via the FAA, most internet flight tracking software vendors sell blocking services directly to plane owners. These internet flight tracking vendors have existing plane owners as active customers paying for a service to obfuscate their location. These vendors would be going against the interests of their own customers by providing location data to tax authorities.

As a result of the above, it is extremely easy for a sophisticated aircraft owner to avoid being tracked via the FAA's SWIM database or those internet flight tracking vendors relying on SWIM.

**CONFIDENTIAL**

The following information is strictly confidential and should not be subject to public records requests to the State. This information includes existing SitusHawk customer information and is being provided to assist the State of Alabama with reviewing this RFB submission. Please consult counsel prior to release and contact SitusHawk upon receipt of any public records request.

SitusHawk's data platform, Altitude, is the most robust, diversified and comprehensive aircraft discovery and valuation solution commercially available. The Altitude platform ingests hundreds of millions of data points from thousands of data sources 24/7/365 to provide exhaustive audit trails of full flight operations, while our backend infrastructure allows large scale reporting of supporting documentation for both aircraft discovery and valuation. Legacy flight tracking vendors, including existing patents around flight tracking, are based on antiquated techniques, outdated technology and data sources such as FAA flight logs, air traffic control system information and publicly accessible data that cannot be relied upon. Based on comparisons against publicly available data, **we are confident our platform will identify >$150M in additional market value for Alabama-based aircraft than any other solution in the market.**

As mentioned previously, SitusHawk's valuation engine is made possible through a license agreement and data integration with a nationally recognized aircraft valuation publication. This partnership allows us to provide authoritative valuations to the State as part of our market value report, and due to our database architecture, we can begin work on generate market value reports as soon as discovery work and the standard reports are completed.

Our technology platform was developed over the last three years using industry-leading storage, computing and security practices. SitusHawk ingests and processes tens of millions of data points every day, leveraging our advanced hybrid cloud infrastructure and AI-enabled processes to provide deep insights that were never before possible. SitusHawk utilizes industry-leading security practices and AES256 data encryption (both at-rest and in-transit) to ensure the integrity and confidentiality of our platform, as well as secure identities and multi-factor authentication for all employees and customers. Additionally, we have an exclusive relationship with a preeminent national authority on aviation tax policy, who advises on our future data acquisition strategy and is engaged with federal policymakers on key issues affecting aviation data access. Lastly, we are an Alabama-based and headquartered company. All of our employees and all of our owners live in Alabama, and all work performed for the State will be done here in Alabama.

SitusHawk works with a variety of tax authorities across multiple states, each with varying regulations regarding the discovery, assessment, valuation and collection of personal property taxes on aircraft. We have attempted to highlight a few of these relationships below, as well as demonstrate the capabilities of our platform based on unique use-cases within these unique tax jurisdictions.

One such example is in McCracken County, Kentucky, where we are providing aircraft discovery and valuation services similar to those requested by the State of Alabama. Counties in Kentucky rely upon on aircraft owners self-reporting their aircraft on form 62A500. This method has been challenging for tax authorities to rely upon over the years without any oversight capability. Through SitusHawk's software

**CONFIDENTIAL**

The following information is strictly confidential and should not be subject to public records requests to the State. This information includes existing SitusHawk customer information and is being provided to assist the State of Alabama with reviewing this RFB submission. Please consult counsel prior to release and contact SitusHawk upon receipt of any public records request.

portal, we provide the county with a list of all aircraft based in the county by showing flight history, aircraft owner and registration information. We have identified a material increase in the number and valuation of aircraft based in the county since partnering with McCracken County (more specific details available upon request). We additionally provide McCracken County valuation data through our partnership with a nationally recognized valuation publication. One unique facet of Kentucky's aviation tax laws has a rule for taxing business aircraft based on the amount of time spent in the state if the aircraft is used for nationwide transportation. SitusHawk is exploring the possibility of providing McCracken County with aircraft travel time logs to show how much time a particular aircraft has spent in Kentucky, including the number of takeoffs and landings by FBO.

Another example is Terrebonne Parish, Louisiana, where we are providing aircraft discovery services based on Louisiana's unique situs regulations. The State of Louisiana has a strict lien date of January 1st, whereby situs is determined solely based on where an aircraft is located as of January 1. Historically, the state has had issues with aircraft owners moving their aircrafts immediately prior to January 1 to avoid the lien date, as well as owners claiming that such aircraft were permanently relocated prior to January 1st. SitusHawk is working with Terrebonne Parish to provide an audit trail of all aircraft (planes and helicopters) moving in and out of the state in late December and early January, providing awareness around this issue as well as proof of situs as of January 1st. Additionally, some of the largest aircraft owners in Louisiana are in the oil and gas industry. This is mostly comprised of helicopters used to transport workers to and from the oil rigs located in the Gulf of Mexico. These aircraft are difficult to track, due both to the volume of flights and because the flights travel into the Gulf to service oil rigs. SitusHawk will deliver a list of flight logs and working days in order to track these aircraft.

In Lincoln County, Missouri, we are providing another unique property tax solution. In addition to our standard aircraft discovery and valuation services, Missouri exempts all aircraft over 25 years of age, those flown <50 hours/year and those weighing <3,000 pounds from property taxes. SitusHawk is able to calculate flight hours for all aircraft and filter all those that don't meet the age, weight and utilization criteria. In our first year of partnership with Lincoln County, we identified significantly more aircraft than were previously self-reported by aircraft owners (more information available upon request). Lastly, the State of Missouri allows plane owners to elect to be assessed by either their home-county or by the State Tax Commission. If assessed by the State Tax Commission, property taxes are apportioned across the counties the plane operates within. We have recently started software development work on a state-wide solution to calculate the number of takeoffs and landings by county and FBO (and supporting apportionment calculations and flight logs) to allow for automated state-level discovery, valuation and apportionment.

**CONFIDENTIAL**

The following information is strictly confidential and should not be subject to public records requests to the State. This information includes existing SitusHawk customer information and is being provided to assist the State of Alabama with reviewing this RFB submission. Please consult counsel prior to release and contact SitusHawk upon receipt of any public records request.

As demonstrated above, SitusHawk has built an industry-leading aircraft discovery and valuation platform that is ideally suited for the State of Alabama. We have also built a team of aviation tax experts who are committed to partnering with the State for aircraft discovery and valuation needs.

# EXHIBIT G

STATE OF ALABAMA
Department of Finance
Division of Purchasing
100 North Union Street, Suite 192
Montgomery, Alabama 36130-2620
Telephone (334) 242-7250
www.purchasing.alabama.gov

Kay Ivey
Governor

Christine Segrest
State Purchasing Director

Bill Poole
Director of Finance

Mr. Neil Butara
Specialized Tax Recovery
1284 Som Center Road
P.O. Box 299
Cleveland, OH 44124

Date 11/4/2022

Dear Mr. Butara:

I am in receipt of your formal protest wherein Specialized Tax Recovery (STR) protests the award of the Aviation Valuation solicitation for the State of Alabama Department of Revenue, SRC0000009508.

STR's protest is based upon the idea that the awarded vendor, SH Advisors, LLC (Situs Hawk), is a non-responsible bidder. As a matter of awarding this contract, the State of Alabama performed the necessary due diligence, including contacting the references provided by Situs Hawk, and did not discover any areas of discrepancy. We have carefully reviewed the provided documentation and have concluded that, per the Agency specifications, Situs Hawk is the lowest responsible bidder. Therefore, I am denying STR's protest.

Thank you for your interest in ensuring that procurement activities are conducted fairly and correctly in Alabama. The complete bid package is public information and available for review, should you choose to do so. I wish you and your company continued success.

Sincerely,

Christine Cook

Christine Cook, C.P.M.
State Purchasing Director

# EXHIBIT H

BAKER DONELSON
BEARMAN, CALDWELL & BERKOWITZ, PC

420 20TH STREET N
SUITE 1400
SHIPT TOWER
BIRMINGHAM, ALABAMA 35203

PHONE: 205.328.0480

www.bakerdonelson.com

KEVIN R. GARRISON, SHAREHOLDER
**Direct Dial**: 205.250.8333
**Direct Fax**: 205.488.3733
**E-Mail Address**: kgarrison@bakerdonelson.com

November 9, 2022

**Via Email**

Bill Poole, Director
Alabama Department of Finance
Alabama State Capitol
600 Dexter Avenue, Suite N-200
Montgomery, AL 36104
Telephone: (334) 242-3199
Email: bill.poole@finance.alabama.gov

Re: SRC0000009508 –Appeal of Aviation Capital Partners, LLC d/b/a Specialized Tax Recovery Bid Protest

Dear Mr. Poole:

Aviation Capital Partners, LLC d/b/a Specialized Tax Recovery ("STR"), through counsel, hereby submits its timely appeal of the denial of STR's bid protest regarding the Alabama Department of Revenue's ("ALDOR") Notice of Intent to Award to SH Advisors, LLC d/b/a Situs Hawk ("Situs Hawk") for the procurement of the Aircraft Valuation contract under SRC0000009508.

## TIMELINESS

ALDOR issued its Notice of Intent to Award the contract under SRC0000009508 on September 15, 2022. STR timely submitted a protest to ALDOR on October 5, 2022, with acknowledgement received, as required by Ala. Admin. Code § 355-4-1-.04(14). ALDOR issued a response denying STR's protest on November 4, 2022. *See* ALDOR Response to Protest, attached as **Exhibit A**. STR now timely submits this appeal within five (5) days, as set forth in Ala. Code § 41-4-161.[1]

## STANDING

[1] Ala. Admin. Code § 355-4-1-.04(14) instructs that "[s]hould the decision by the Director of Purchasing be adverse to the bidder, the bidder may seek relief in accordance with section 41-16-31 of the Code of Alabama." The Alabama Competitive Bid Law, Ala. Code § 41-16-31, was repealed by Act 2021-296, § 1, effective October 1, 2022. Accordingly, STR is adhering to process set forth by Ala. Code § 41-4-161.

STR is an actual bidder in the procurement and STR's direct economic interest will be affected by award of the contract to Situs Hawk. Therefore, STR is an interested party with standing to bring this protest and appeal.

The contact information for STR is as follows:

Neil Butara, Vice President
Specialized Tax Recovery
1284 SOM Center Road, PO Box 299
Cleveland, OH 44124

Email: nbutara@specializedtaxrecovery.com
Telephone: 216.342.2446

**FACTS AND TIMELINE**

On June 9, 2022, ALDOR released SRC0000009508, soliciting bids for the procurement of a contract related to aircraft discovery and retail market valuation services as a Request for Bids ("RFB"). *See* Request for Bids, attached hereto as **Exhibit B**. Under the terms of the RFB, the Bid Submittal Deadline for all bidders was August 25, 2022. Two prospective contractors submitted timely bids prior to the deadline: the protesting party, STR, and the apparent awardee, Situs Hawk. *See* STR's submission, attached hereto as **Exhibit C**. STR has questioned and continues to question whether Situs Hawk is a responsible bidder.

In reviewing submissions, a procurement officer should consider whether a prospective contractor has met the following factors:

1. available the appropriate financial, material, equipment, facility, and personnel resources and expertise, or the ability to obtain them, necessary to indicate its capability to meet all contractual requirements;
2. a satisfactory record of performance;
3. a satisfactory record of integrity;
4. qualified legally to contract with the State; and
5. supplied all necessary information in connection with the inquiry concerning responsibility.

Ala. Admin. Code § 355-4-3-.09(2)(a). It is apparent from a review of Situs Hawk's submission that none of these factors could have been met, including that Situs Hawk fails to meet several of these factors as a threshold matter, primarily because Situs Hawk was less than two weeks old as a Corporation on submission date. Moreover, Situs Hawk is infringing STR's U.S. Patent No. 10, 956,988 ("the '988 Patent"). Situs Hawk should not have been considered a responsible bidder.

On September 15, 2022, ALDOR issued its Notice of Intent to Award the contract to Situs Hawk. STR submitted a Protest on October 5, 2022. The Protest identified three valid protest

grounds: (1) patent infringement, (2) inadequate references, and (3) inability to meet the contractual requirements. Specifically, STR established that Situs Hawk had relied on using STR's patented process to present an inaccurate narrative of its capability. Despite these legitimate protest grounds, ALDOR declined STR's Protest thirty (30) days after it was submitted. As explained below, ALDOR failed to adequately address STR's Protest and committed numerous procedural and substantive errors.

## ARGUMENT

### I. The Alabama Department of Revenue improperly permitted Situs Hawk to proceed as a responsible bidder.

The standard for the award of a public contract is that it is awarded to the "lowest ***responsible bidder***." *See* Ala. Code §§ 41-16-20 and 41-16-50 (emphasis added). As defined by Public Works Law, §39-2-6, "[a] responsible bidder is one who, among other qualities determined necessary for performance, is competent, experienced, and financially able to perform the contract." Additionally, the Supreme Court of Alabama in *Inge v. Board of Public Works of Mobile,* 33 So. 678 (Ala. 1903), construing the words "lowest responsible bidder," said:

> In the letting of public contracts to the lowest responsible bidder, the duty of the officer is not merely ministerial, but partakes of a judicial character, requiring the exercise of discretion. A discretion, however, which should always be exercised to the end of subserving the public interest, and never in the interest of the bidder. In deciding upon the responsibility of bidders it is the duty of the board or officers not only to take into consideration the pecuniary ability of bidders to perform the contract, but ***also to ascertain which ones, in point of skill, ability and integrity would be most likely to do faithful, conscientious work, and to fulfill the terms of the contract***.

33 So. at 681 (emphasis added); *see also Crest Const. Corp. v. Shelby Cnty. Bd. of Educ*., 612 So. 2d 425, 429 (Ala. 1992) (quoting *Inge*). **Situs Hawk is not a responsible bidder under these standards.**

Proper due diligence was not performed. In looking at each submission on its face, it is evident that ALDOR made its decision without adequate consideration of the circumstances and on unreasonable grounds. As a threshold matter, Situs Hawk is not experienced and did not submit references from other states / jurisdictions to which supplies provides this service as outlined in the RFB requirements (questionnaire items). *See* Ex. B.

**Agency response to supplier questions regarding SRC – 9508 (Aircraft Valuation)**

1. **Standard Report**: How is State evaluating suppliers on the basis of their ability to discover all Alabama-based aircraft?

   **Response:** Suppliers will respond to Questionnaire of solicitation, providing documentation related to each section as required.

Excerpt from Ex. B.

Simple due diligence would have uncovered these shortcomings and Situs Hawk would have been deemed unqualified and a non-responsible bidder for failing to meet the RFB specifications. Simply put, Situs Hawk's own submission shows that it cannot perform the desired tasks required for a successful program.

In review of State records, SH Advisors, LLC, Situs Hawk's official business entity, obtained its certificate of formation on August 12, 2022, making the company less than two weeks old when submitting for this contract on August 25, 2022. Being that new, it is not surprising that Situs Hawk provided no completed or contracted past performances as required under the RFB. It seems that ALDOR did not speak with the references identified by Situs Hawk, because, as set forth below, STR contacted these required references and learned that none of them are Situs Hawk customers. With no completed work and no customers, it should have been a binary/"yes-no" decision that Situs Hawk cannot demonstrate the experience required to perform the desired functions because it presented no evidence of this experience. The failure to include the three references required should have precluded Situs Hawk from consideration. Moreover, the specifications in this RFB require a high level of accuracy and technical competence to obtain successful results, so hiring an inexperienced provider would not be in the best interests of the taxpayer. Because this will be the first aviation discovery program under the direct management of the ALDOR, experience and proven results are even more important to a successful program. Moreover, after being provided with evidence that ran contrary to its decision, ALDOR did not offer a plausible explanation for its decision.

In review of the submitted materials, there is a clear distinction between the experience, quality, and professionalism of STR compared to the inexperience of Situs Hawk. The information provided by Situs Hawk is filled with incorrect statements and misinformation regarding a variety of topics outlined below. STR has cemented itself over the last fourteen (14) years as the first and only company capable of completing a successful aircraft discovery and valuation program. We have found no evidence that Situs Hawk has ever been contracted to perform, or that they have successfully completed, a discovery program. More importantly, they are also clear imitators and duplicators of STR's patented process and materials. From the submission, it appears the only way Situs Hawk could complete this project is by infringing on STR's patent – which STR will not allow. With the clear pattern of duplication, STR has initiated a review of patent infringement.[2] That review will likely conclude in favor of STR defending its patent. Not only is STR the more responsible bidder, but as between STR and Situs Hawk, STR is the only responsible bidder.

**A. ALDOR did not adequately review Situs Hawk's background.**

---

[2] STR is currently progressing through the legal steps in defending its patented process and will protect its information to the full extent of the law. This advancement will continue through the following weeks and will likely render Situs Hawk incapable of continuing to infringe on STR's work. Ultimately, this will confirm that STR is the sole option for providing a complete and accurate solution for aviation discovery, valuation, and appeal support for state and local governments.

Specialized Tax Recovery has been the only provider capable of providing aviation discovery services since inception in 2008. Over the last fourteen years, STR has seen a few hobbyist companies attempt to step into the market that STR fostered from inception, only to fail from the same deficiencies that Situs Hawk displays here. STR was created by aviation experts with over 80 years of collective aviation experience coupled with an extensive software development background. As a result, STR invented and utilizes a patented process to address the very specific problems in the aircraft taxation process. STR patented its product and process to protect its unique skillset from imitation in the marketplace and it constantly monitors for imitators. Upon review of the supplied documentation, Situs Hawk's proposed process is infringing upon the '988 Patent.

In 2017, STR innovated acquiring and analyzing the combined use of FAA and transponder data for aircraft discovery via an innovative and nonobvious methods and systems to yield tax valuations. STR obtained the '988 Patent to protect these innovative system and methods. Situs Hawk appears to be claiming to offer the exact same solution that STR invented in 2017 and patented in the '988 Patent. Specifically, Situs Hawk presents the same problem—that FAA data alone is not sufficient to track all aircraft for taxability purposes—and provides the same solution—mixing recorded flight data with additional input from transponder receiver networks to track and uncover aircraft in order to generate a tax assessment exactly as set forth in the claims of the '988 Patent. This is clear infringement.

Due to this infringement, STR has no choice but to protect its valuable intellectual property. Thus, as of the filing of this appeal, ***STR is preparing to sue Situs Hawk for patent infringement***. ***This suit will necessarily include a request for a temporary restraining order and subsequent preliminary injunction to bar Situs Hawk from infringing the '988 Patent during the pendency of this patent infringement litigation.***

Situs Hawk's clear patent infringement should disqualify it from consideration in Alabama. Had ALDOR properly investigated Situs Hawk's background and supplied documentation, as part of its duty to eliminate non-responsible bidders, it would have been apparent that the contract could not be awarded to Situs Hawk. Thus, Situs Hawk has not demonstrated an ability to perform that is necessary to be deemed a responsible bidder. STR made ALDOR aware of this fact and ALDOR failed to consider the consequences of a patent infringement claim on this project when rejecting STR's protest. ALDOR has entirely failed to consider the primary aspect of the project – Situs Hawk's ability to complete it without STR's patented process.

**B. ALDOR did not adequately review Situs Hawk's references.**

In RFB Specification 15, ALDOR required references from other jurisdictions in which the vendor has provided the requested services of discovery, valuation, and appeal support for aircraft. When contacted, these references should provide confirmation of the bidder being competent to perform each task listed above through prior, successful contracts. In the normal course of the procurement process, references are extremely important to fact-checking claims and ensuring that companies can indeed perform at the high level desired by the ALDOR. A successful aircraft

discovery program would contain certain elements to prove the efficacy and experience of the company, and questions would be asked of each reference provided:

1. Was the company contracted to perform an aircraft audit? When did they contract start and end? Is it ongoing?
2. Did the company successfully discover omitted aircraft in the jurisdiction, provide the necessary information for the department to send notification of failure to file, all while providing the necessary information to prove situs, and thus, taxability? Was the information accurate and complete?
3. Did the company provide an accurate valuation in uniformity with the department protocols? Did the valuation consider information such as any known conversions and modifications; Engine upgrades, replacements, enhancements; air frame total time (AFTT); since major overhaul (SMOH); and condition?
4. Did the company provide appeal support for any aircraft that may have challenged the tax notice? Was the company successful in defending the appeal?
5. Was the information provided by the company able to support the jurisdiction tax code? Was the company knowledgeable about the state and local codes?
6. Was the program ultimately successful in collecting from discovered aircraft? Did the company provide sufficient customer service and adapt to the needs of the client?
7. What was the ROI on the completed discovery program?

In its submission, Situs Hawk provided three (3) references, claiming to have successfully performed and completed the services of discovery, valuation, and appeal support for aircraft in: (1) McCracken County, Kentucky; (2) Lincoln County, Missouri; and (3) Terrebonne Parish County, Louisiana. STR's investigations have revealed that ALDOR must not have contacted these references. If the references had been contacted, a clear pattern of insufficiency would have been identified. STR has contacted each of the above references, made records of the conversations, and concluded that the experience claimed by Situs Hawk is false, inaccurate, and misleading. *See* Neil Butara Declaration, attached hereto as **Exhibit D**. Situs Hawk falsely represented their relationship with each of the provided references, has no confirmed experience, has not contracted or provided services with their references, and is unqualified to perform the required tasks demanded by the RFB. STR have been unable to location any contracts on file at any location, suggesting that Situs Hawk has never been commissioned to perform this work before.

| | Questionnaire items | |
|---|---|---|
| 1) | Plan for data delivery for reports and documentation; ALDOR will maintain all data and can provide secure electronic file transfer system | **Plan for Data Delivery - Page 20** |
| 2) | References from other states/jurisdictions to which vendor provides this service | **Portfolio, References and Narratives - Page 7** |
| 3) | Narrative of any past performance/experience in other jurisdictions and technical competence | **Portfolio, References and Narratives - Page 7** |

Excerpt from Ex. C, p. 22 (highlight added).

| | Field Label | Description / Instructional Text | Required | Answer | Comment | Upload attachments? |
|---|---|---|---|---|---|---|
| 2 | The following documentation must be provided | | | | | |
| 3 | Plan for data delivery for reports and documentation | The data and reports produced as a result of this project will be made available through a secured file transfer portal (SFTP). STR will work with the ALDOR to customize the organization of that shared file location so that it is easily accessed using credentials provided by STR and properly notified when changes/additions have been made. All required reporting and supplemental documentation will be saved to this SFTP location for easy access by the ALDOR. If STR is chosen to renew these services for subsequent years, files will continue to be maintained and access provided to the ALDOR. However, for security purposes, all files will be destroyed and access to the SFTP removed 30 days following termination of the contract. | Yes | Yes | See section III of RFB | Yes |
| 4 | References from other states/jurisdictions to which supplier provides this service | Attached | Yes | Yes | See section II of RFB | Yes |
| | Narrative of any past performance/experience in other jurisdictions and technical competence | Attached | Yes | Yes | See section II | Yes |

Excerpt from Ex. C, p. 44.

These references serve as a direct reflection of past-performance and are intended to support claims made in a RFB proposal. These references are typically the best examples of their work and allow a potential client to gain insight to confirm the abilities, or the shortcomings, of a service provider. In review of what Situs Hawk provided as "references," it is clear that it is an attempt to blur the lines of what constitutes "providing services" and "past performances." None of these references indicated to STR that Situs Hawk had received any contracts. *See* Ex. D. Situs Hawk does not have a satisfactory record of performance. The submission of these inaccurate references also indicates that Situs Hawk did not supply all necessary information in connection with the inquiry concerning responsibility. Accordingly, Situs Hawk should not have been considered a responsible bidder. At the initial review, a narrative was required and the failure to submit should have immediately removed Situs Hawk from contention. After receiving STR's

protest, ALDOR continued its decision contrary to the evidence and without explanation. ALDOR proceeded with an unreasonable decision in disregard of the facts presented by STR.

**C. ALDOR did not review Situs Hawk's past performance / experience and technical competence.**

In reviewing Situs Hawk's brief submission, there are clear examples of technical incompetence and inaccuracy that should have been identified and precluded Situs Hawk's from contention. Situs Hawk does not provide a detailed narrative of the performance of the each of the contracts to support their "proprietary process." Instead, Situs Hawk makes direct mention of STR's patented process alongside accusations that STR's data is incorrect. Situs Hawk's lack of narrative combined with inaccurate accusations against STR highlight Situs Hawk's lack of knowledge about the aviation industry.[3]

From the face of Situs Hawk's submission, it is clear that ALDOR did not review the necessary, and required, information in making a determination on Situs Hawk's ability to meet the contractual requirements. The inexperience and inaccuracy of Situs Hawk is on display in multiple incorrect notations of state and local code, specifically in Missouri. Situs Hawk claims "In Lincoln County, Missouri, we are providing another unique property tax solution. In addition to our standard aircraft discovery and valuation services, Missouri exempts all aircraft over 25 years of age, those flown <50 hours/year and those weighing <3,000 pounds from property taxes." Situs Hawk Submission, p. 6. This is simply incorrect as the historic subclass of aircraft are not exempt. This misunderstanding of the Missouri tax code indicates that some aircraft would be mislabeled as "exempt," causing them to remain untaxed and undiscovered – contrary to the RFB's purpose in Alabama.

Further supporting the inexperience displayed in the RFB, Situs Hawk makes projections that are both inaccurate and poorly supported without having any proof of completed discovery projects. This lack of detailed experience can only be gained from executed contract performance and explains the inaccuracies presented. This further supports the fact that Situs Hawk is lacking the experience required for all three functions of discovery, valuation, and appeal support requested by ALDOR.

For example, Situs Hawk projects 1,500 newly discovered aircraft for Tax Year 2020. This estimation is both out of date and irrelevant to the RFB at hand. Without comparing to Tax Year 2022, it is impossible for Situs Hawk to make any relevant projections related to Tax Year 2023 and this RFB. And ALDOR should have found no Tax Year 2023 projections for FMV or tax revenue are presented in Situs Hawk's RFB. A responsible bidder would normally provide values reflecting their expected performance as it relates specifically to the current RFB. Situs Hawk fails to provide this information highlighting their lack of experience executing any size discovery,

---

[3] In contrast, STR explained how it combines data from many multiple sources, including FAA SWIM data, ADS-B, and others. STR is aware that the process creates redundancies in the data, but this provides confirmation of accuracy and provides the most comprehensive view of each aircraft in the national fleet. This allows STR to provide the most accurate picture and review of situs for any jurisdiction and tax year.

valuation, or appeal project, let alone the size and scope of the entire state of Alabama. Having performed no actual appeal support for any tax authority to date, Situs Hawk further fails to provide the experience required by core elements of the RFB. In fact, Situs Hawk provides no examples of "additional documentation and support for aircraft valuation appeals" or reference to providing appeal support to anyone within their RFB. There is no evidence indicating that Situs Hawk has experience "discovering" and providing a notice of assessment to be added to the tax roster, much less for the subsequent appeals.

It is evident that Situs Hawk is not a responsible bidder to which this contract may be awarded. Situs Hawk does not have the experience needed to perform the tasks of this RFB, it has provided inaccurate to the Purchasing Department and ALDOR, and, most importantly, it has infringed on STR's patented process. Again, it appears the only way for Situs Hawk to complete this project is by violating federal law and infringing on STR's patent, which STR will not allow. ALDOR made an arbitrary decision without an articulate explanation that connected these facts to its decision. ALDOR has not considered important aspects of the circumstances as presented by STR. The decision is unreasonable and ALDOR should not proceed with Situs Hawk for the procurement of the Aircraft Valuation contract under SRC0000009508.

## CONCLUSION

One of the purposes for requiring public bodies like the Alabama Department of Revenue to engage in competitive bidding is to provide offerors with a fair opportunity to compete for public contracts. *Kennedy v. City of Prichard*, 484 So. 2d 432, 434 (Ala. 1986). And courts have universally recognized that the statutes and ordinances requiring competitive bidding impose upon the government an implied obligation to consider all bids honestly and fairly. *Id*. The Alabama Department of Revenue failed to do that here.

For the foregoing reasons, Special Tax Recovery requests that ALDOR (a) not proceed with the contract until resolution of the protest pursuant to Ala. Code § 41-4-161, (b) grant STR's bid protest, (c) rescind the Notice of Intent to Award the contract to Situs Hawk, and (d) award the contract to STR, the only remaining responsive and compliant bidder, or in the alternative, cancel the procurement and the RFB and resolicit the contract.

Sincerely,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

Kevin R. Garrison, Shareholder

cc: Darwin Hindman, III
Bethany Carroll
Neil Butara
Todd Tucker

# EXHIBIT I

**From:** Garber, Jeff <jeff.garber@finance.alabama.gov>
**Sent:** Monday, November 14, 2022 3:45 PM
**To:** bcarroll@bakerdonelson.com
**Cc:** Garrison, Kevin <kgarrison@bakerdonelson.com>; dhindman@bakerdonelson.com; Tucker, Todd <TTucker@Calfee.com>; Neil Butara <nbutara@specializedtaxrecovery.com>
**Subject:** FW: Specialized Tax Recovery, LLC

Ma'am,

Mr. Poole, the Finance Director, received the bid protest appeal and attachments you submitted last week.

An appeal to the Finance Director of a bid protest denial by the Purchasing Director is a provision in the new procurement laws. In accordance with 355-4-1-.01 of the current administrative code, the new procurement laws "govern all contracts solicited and entered into after October 1, 2022".

Because the solicitation for this contract occurred prior to October 1, the new procurement statute and administrative code do not apply. Instead, the prior procurement statute and administrative code provisions (attached) that were in effect prior to October 1 are applicable.

The prior administrative code section 355-4-1(14) does not contain the provision regarding an appeal to the Finance Director after the Purchasing Director's denial of an bid protest appeal. The prior administrative code section states that appeals are controlled by Section 41-16-31 in the prior procurement statute.

Please feel free to give me a call to discuss.

JEFFREY B. GARBER
Legal Counsel
Alabama Department of Finance
600 Dexter Avenue, Suite E-309
Montgomery, AL 36130
(334) 242-4516

CONFIDENTIALITY NOTICE AND DISCLAIMER: This electronic mail transmission may contain information that is confidential, privileged, proprietary, or otherwise exempt from disclosure. If you are not the intended recipient, you are

notified that you are not authorized to read, print, retain, copy, or disseminate this message or any attachments, in whole or in part. If you have received this transmission in error, please delete it along with any attachments and notify the sender immediately of the mistaken transmission. There is no intent on the part of the sender to waive any privilege, including attorney-client privilege, that may attach to this communication.

---

**From:** Carroll, Bethany <bcarroll@bakerdonelson.com>
**Sent:** Wednesday, November 9, 2022 4:59 PM
**To:** Poole, Bill <bill.poole@finance.alabama.gov>
**Cc:** Garrison, Kevin <kgarrison@bakerdonelson.com>; Hindman, Skip <dhindman@bakerdonelson.com>; Tucker, Todd <TTucker@Calfee.com>; Neil Butara <nbutara@specializedtaxrecovery.com>
**Subject:** Specialized Tax Recovery, LLC

Mr. Poole,

Attached is an appeal from a bid protest on behalf of Specialized Tax Recovery, LLC. Please let me know have any issues opening the attachments.

Thanks,
Bethany

**Bethany Carroll**
Associate

**Baker, Donelson, Bearman, Caldwell & Berkowitz, PC**
Shipt Tower
420 20th Street North
Suite 1400
Birmingham, Alabama 35203

Direct: (205) 250-8358
Main: (205) 328-8007
Email: bcarroll@bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, South Carolina, Tennessee, Texas, Virginia, and Washington, D.C.

NOTICE: This electronic mail transmission with any attachments may constitute an attorney-client communication, protected health information (PHI) or other confidential information that is in fact confidential, legally protected from disclosure and/or protected by the attorney-client privilege. If you are the intended recipient, please maintain confidentiality and be aware that forwarding this e-mail to others may result in a waiver of these protections and privileges and regardless electronic communications may be at times illegally accessed and viewed. If you are not the intended recipient, this e-mail is not intended for transmission to you, nor to be read, reviewed, used, distributed or even received by you or any other unauthorized persons. If you have received this electronic mail transmission in error, please double delete it from your system immediately without copying, reading or disseminating it, and notify the sender by reply e-mail, so that our address record can be corrected. Thank you very much.

# EXHIBIT J

# State of Alabama

# Department of Finance
# Division of Purchasing
# Master Agreement

## Contract Information

| | | | |
|---|---|---|---|
| State Contract Number: | MA23000000357 9 | Name: | MA - Aircraft Valuation - Revenue |
| Type: | Master Agreement | Not to Exceed Amount: | |
| Signature Date: | UNDEFINED | Original End Date: | 11/3/2023 |
| Begin Date: | 11/4/2022 | Actual End Date: | |
| Solicitation Number: | SRC0000009508 | Version Number: | 0 |

## Reason for Modification

UNDEFINED

## Buyer Information

| | |
|---|---|
| Name: | BryanMatthews |
| Phone: | UNDEFINED |
| Email: | bryan.matthews@purchasing.alabama.gov |

## Supplier Information

| Supplier Name / Order Address | Supplier Contact |
|---|---|
| VI000173874: SH Advisors LLC | Sam Barnes |
| 207 Eastside Square | 2566982715 |
| | sb@situshawk.com |
| Huntsville Alabama 35801 | |
| US | |

## Item 1 - Authority:

The Department of Finance Code of Administrative procedure, Chapter 356-4-1 effective September 7, 2012 is incorporated by reference and made a part of this document. To view the Code of Administrative procedures, visit our website www.purchasing.alabama.gov.

## Item 2 - Choice of Law; Venue:

This Contract will be governed by laws of the State of Alabama and the sole venue for litigation and alternative dispute resolution activities will be the City of Montgomery in the State of Alabama.

Not to Constitute a Debt of the State:
The terms and commitments contained in the RFB, or any contract resulting from this RFB, shall not constitute a debt of the State of Alabama, the incurring of which is prohibited by Section 213 of the Official Recompilation of the Constitution of Alabama, 1901, as amended by Amendment No. 26.

---

## Item 3 - Proration:

Any provision of a contract resulting from this bid to the contrary notwithstanding, in the event of failure of the State to make payment hereunder as a result of partial unavailability, at the time such payment is due, of such sufficient revenues of the State to make such payment (proration of appropriated funds for the State having been declared by the governor pursuant to Section 41-4-90 of the Code of Alabama 1975), the contractor shall have the option, in addition to the other remedies of the contract, of renegotiating the contract (extending or changing payment terms or amounts) or terminating the contract.

## Item 4 - Non-appropriation of funds:

Continuation of any agreement between the State and a bidder beyond a fiscal year is contingent upon continued legislative appropriation of funds for the purpose of this bid and any resulting agreement. Nonavailability of funds at any time shall cause any agreement to become void and unenforceable and no liquidated damages shall accrue to the State as a result. The State will not incur liability beyond the payment of accrued agreement payment.

## Item 5 - Sales Tax Exemption:

Pursuant to the Code of Alabama, 1975, Title 40-23-4 (A)(11), the State of Alabama is exempt from paying sales tax. An exemption letter will be furnished upon request.

## Item 6 - Foreign Corporation – Alabama Secretary of State Registration:

Alabama Law requires a foreign entity (an out of state company/firm) to register with the Alabama Secretary of State's Office before transacting business in the State. Code of Alabama Section 10A-1-7.01 to 7.14.

## Item 7 - Beason-Hammon Alabama taxpayer and Citizen Protection Act (Act 2011-535 and as amended by Act 2012- 491):

As a condition for award of this bid, the vendor acknowledges the following: "By signing this contract, the contracting parties affirm, for the duration of any agreement that they will not violate federal immigration law or knowingly employ, hire for employment, or continue to employ an unauthorized alien within the State of Alabama. Furthermore, a contracting party found to be in violation of this provision shall be deemed in breach of the agreement and shall be responsible for all damages resulting therefrom." Verification of enrollment in the E-verify program will be required prior to any award to a vendor who employs one or more employees within the State of Alabama. E-verify documentation should be identified with the bid number and the buyer name. Failure to provide documentation within 5 calendar days of notification will result in the rejection of your bid. To enroll in the E-verify program visit www.dhs.gov/everify.

## Item 8 - Certification Pursuant to Act no. 2006-557:

Alabama Law (section 41-4-116, Code of Alabama 1975) provides that every bid submitted and contract executed shall contain a certification that the vendor, contractor, and all of its affiliates that make sales for delivery into Alabama or leases for use in Alabama are registered, collecting, and remitting Alabama State and local sales, use, and/or lease tax on all taxable sales and leases into Alabama. By submitting this bid, the bidder is hereby certifying that they are in full compliance with Act no. 206-557, they are not barred from bidding or entering into a contract pursuant to 41-4-116, and acknowledges that the awarding authority may declare the contract void if the certification is false. In compliance with Act 2016-312, by submitting this bid the contractor hereby certifies that it is not currently engaged in, and will not engage in, the boycott of a person or an entity based in or doing business with a jurisdiction with which this State can enjoy open trade.

## Item 9 - Product Delivery, Receiving and Acceptance:

In accordance with the Universal Commerce Code (Code of Alabama, Title 7), after delivery, the State of Alabama has the right to inspect all products before accepting. The State will inspect products in a reasonable timeframe. Signature on a delivery document does not constitute acceptance by the State. The State will accept products only after satisfactory inspection.

## Item 10 - Invoices:

Inquiries concerning invoice payments are to be directed to the receiving agency.

## Item 11 - Signature

Approved: 

Purchasing Director

# EXHIBIT K

SPECIALIZED TAX RECOVERY

*"Your Tax Recovery Partner"*

August 8th, 2022

Mr. Sam Barnes, Mr. Emerson Fann
Situs Hawk
207 Eastside Square, 2nd Floor
Huntsville, Al 35801

Re: Business partnership opportunity review

Mr. Barnes and Mr. Fann,

I wanted to thank you again for your time in an initial discussion to explore a potential partnership to work together on the RFB in Alabama. It was great to talk to you and Emerson about the RFB scope of work and our potential offering together. From our conversations it sounds like we share a lot of similarities of our work and also in the challenges of our business. It is always beneficial to understand the offerings in the market to be able to partner on certain projects.

During our brief call with you and Emerson, we didn't get to fully unpack your service and offerings. STR is interested in learning more about your process to potentially share resources with a view towards helping one another in situations like the large Alabama RFB. As you mentioned during the call, Specialized Tax Recovery (STR) is the assignee and owner of U.S. Patent No. 10,956,988, which is titled "System and Method for Determining a Taxability Status for a Vehicular Asset." Our patent covers certain inventive aspects of our discovery process and establishing the situs of aircraft for taxing purposes. In addition, STR has filed a second patent application that is currently pending to further cover our product that we have invented. Since filing our initial patent application, we have seen a handful of companies attempt to enter the space, only to be met by enormous barriers and challenges, and end up failing.

This low success rate has created both an opportunity and a challenge for STR. On one hand, we have enjoyed many contracts and long-term relationships with a variety of tax offices around the country. On the other hand, we have been unable to find quality companies with qualified and experienced staff that we would be able to partner in a project. We are always searching for the right people to work with. We wanted to leave the door open to further explore options to work with Situs Hawk in the future.

If at any point there is an opportunity to talk further business, I welcome the discussion.

Best,

Neil Butara

Vice President

STR All Rights Reserved CONFIDENTIAL 

1.216.342.2446
Specializedtaxrecovery.com

# EXHIBIT L

# SitusHawk

## Supplemental Documentation

**CONFIDENTIAL**

The following information is strictly confidential and should not be subject to public records requests to the State. This information includes existing SitusHawk customer information and is being provided to assist the State of Alabama with reviewing this RFB submission. Please consult counsel prior to release and contact SitusHawk upon receipt of any public records request.

# Detailed Aircraft View

## Aircraft Details for N876DN

### Aircraft Information

| Tail Number * | Model Year | Make | Model |
|---|---|---|---|
| N876DN | 1999 | Beech | King Air 350 |
| **Airframe Time** | **Time Since Overhaul** | **Fair Market Value** | |
| 7100 | 1921 | 2,756,800.00 | |

### Owner Information

| Owner Name | Street Address | City | State |
|---|---|---|---|
| SJH Enterprises | 5678 Bailey Cove Rd. | Wilmington | DE |
| **Zipcode** | **Tax Jurisdiction** | | |
| 19801 | Jefferson County | | |

### Notes, Photos and Files

**Note Text**

about 5 hours ago



KingAir350.jpg (90.97 KB)

Add note

**CONFIDENTIAL**

The following information is strictly confidential and should not be subject to public records requests to the State. This information includes existing SitusHawk customer information and is being provided to assist the State of Alabama with reviewing this RFB submission. Please consult counsel prior to release and contact SitusHawk upon receipt of any public records request.

# Flight Audit Trail Overview




## Situs Airfield

| Situs Airfield | Arrivals | Departures | Overnights |
|---|---|---|---|
| BHM | 72 | 72 | 262 |

## Aircraft Audit Trail

| FlightID | Flight Date | Departure Airfield | Arrival Airfield |
|---|---|---|---|
| c50dd649-154b-41cd-af12-2a7ba9934137 | 1/25/2020 | BED | BHM |
| 2d26f8f0-b214-4b28-865a-aa32a4f0638c | 4/24/2020 | BFI | BFI |
| ff1de4cb-3d87-4fa7-a0f9-ac5c4549dc29 | 2/9/2020 | BFI | OAK |

**CONFIDENTIAL**

The following information is strictly confidential and should not be subject to public records requests to the State. This information includes existing SitusHawk customer information and is being provided to assist the State of Alabama with reviewing this RFB submission. Please consult counsel prior to release and contact SitusHawk upon receipt of any public records request.

# Flight Audit Trail Detail

Aircraft Audit Trail

| FlightID | Flight Date | Departure Airfield | Arrival Airfield |
|---|---|---|---|
| 05a98225-47bc-4ebd-b3f5-18e5ba3b4491 | 1/29/2020 | SRQ | JKA |
| 73381c0f-26ac-4cfa-924a-7785e6a3fa86 | 1/31/2020 | JWN | JKA |
| f5275e9c-0f96-4142-abba-85de5932e8ce | 3/11/2020 | JKA | CHS |
| e2d05867-d176-459e-9e82-8f5a79401958 | 3/11/2020 | CHS | JKA |
| d8ce4fd0-e8c0-4c36-98f5-ecae90840fc2 | 4/15/2020 | JKA | 0FL5 |
| e252d63d-6907-48d6-a57f-f1f9f25e079e | 4/15/2020 | 0FL5 | JKA |
| 34853b1f-498b-4d45-88bb-93d0abc6e7b1 | 4/21/2020 | JKA | SRQ |
| 67823717-5c6c-469d-a48c-660f45a2c3fc | 4/21/2020 | SRQ | JKA |
| a7640eff-a9b3-43eb-8498-12953a99f509 | 5/7/2020 | JKA | SRQ |
| 7ce92a66-0882-472d-ac83-2dd806a4c166 | 5/7/2020 | SRQ | JKA |
| cca1b797-6fad-408b-940c-eed8b7829948 | 5/15/2020 | JKA | JWN |
| b4c63420-f12c-498e-a4eb-172b954c22fe | 5/15/2020 | JWN | JKA |
| 58fcdb45-a470-455e-84b8-3d2a6c88d2b7 | 6/4/2020 | JKA | SRQ |
| f6720fc5-5b7d-4937-bd72-9c9d1da256af | 6/4/2020 | SRQ | JKA |
| 6da4777b-734a-43e5-b305-42652d441a47 | 6/17/2020 | JKA | 0FL5 |
| 13d56de2-63fa-4830-bb2b-631c71f8c456 | 6/19/2020 | 0FL5 | JKA |
| 9bbca09e-5622-4684-80a1-f87aaec8ad91 | 7/15/2020 | JKA | SRQ |
| 19f37c28-e1bf-4afd-947a-aec122362a44 | 7/15/2020 | SRQ | JKA |
| e9ad0a58-11af-4144-ad6f-1c0957b12486 | 8/9/2020 | JKA | OPF |

**CONFIDENTIAL**

The following information is strictly confidential and should not be subject to public records requests to the State. This information includes existing SitusHawk customer information and is being provided to assist the State of Alabama with reviewing this RFB submission. Please consult counsel prior to release and contact SitusHawk upon receipt of any public records request.

# Flight Detailed View

## Flight Details

**FlightID** *

13d56de2-63fa-4830-bb2b-631c71f8c456

**Departure Airfield**

0FL5

**Arrival Airfield**

JKA

**Start Time**

6/19/2020 1:25 PM

**End Time**

6/19/2020 2:59 PM




**CONFIDENTIAL**

The following information is strictly confidential and should <u>not</u> be subject to public records requests to the State. This information includes existing SitusHawk customer information and is being provided to assist the State of Alabama with reviewing this RFB submission. Please consult counsel prior to release and contact SitusHawk upon receipt of any public records request.

SitusHawk

**CONFIDENTIAL**

The following information is strictly confidential and should not be subject to public records requests to the State. This information includes existing SitusHawk customer information and is being provided to assist the State of Alabama with reviewing this RFB submission. Please consult counsel prior to release and contact SitusHawk upon receipt of any public records request.

# EXHIBIT M

**SOURCES:**
**Exhibit A ('988 Patent)**
**Exhibit F (Situs Hawk Narrative of Past Performance)**
**Exhibit L (Supplmental Documentation)**

<table>
<tr><th>Claims</th><th>Situs Hawk infringement</th></tr>
<tr><td>CLAIM #1 - A computer-implemented method, comprising:</td><td></td></tr>
<tr><td>[a] obtaining traffic control system information for an aircraft from a first database, the traffic control system information indicative of departures and arrivals of the aircraft at a plurality of airports</td><td>The '988 Patent describes an "air traffic control data source" defined as including SWIM as well as other data like departure/arrival times/airports. Exhibit A at 4:43–53. Situs Hawk documents show that it reports the same types of information described in the patent (e.g., departure/arrival times/airports), and thus Situs Hawk must be obtaining that information frome somewhere (i.e., a first database). See Exhibit L, at 5:


</td></tr>
<tr><td>[b] detecting a gap in the traffic control system information for the aircraft, the gap being indicative of a time for which a location of the aircraft is indicative of a time for which a location of the aircraft is indeterminate based upon the traffic control system information, wherein the gap is detected based on a mispatch in the traffic control system information between a departure location of the aircraft and a previous arrival location of the aircraft</td><td>The '988 Patent discusses gap detection/reconciliation broadly as mixing different sources of information to get a more fullsome flight record. Particlularly, the '988 Patent at 5:54–57 states: "Embodiments combine data from the traffic control data 116 , vehicle metadata 118 , vehicle valuation data 120, and / or remote transponder sensing unit data 122 to reconcile gaps in the traffic control data. The system 100 can then compute a primary location for the purposes of property taxes ..." Situs Hawk specifically notes deficiencies in using SWIM data and states that Situs Hawk uses a "proprietary network of public and private data sources." Exhibit F, at 1. This is the same combination of data discussed in the '988 Patent. Situs Hawk is using more than one set of data to account for gaps in any single source. Merging these data sets would require operative gap detection to reconcile the different sources. Also, Situs Hawk provides a specific exmaple of gap detection for ALDOR, meaning that it has in fact and does detect gaps in flight information. Exhibit F, at 1.</td></tr>
<tr><td>[c] receiving transponder data from a transponder that is mounted on board the aircraft by way of a transceiver positioned in proximity to an airport, the transponder data indicative of at least one of an altitude or a speed of the aircraft</td><td>The number of flight information data sources is limited, and the ADS-B data is now one of most common types of flight data available today in light of the recent FAA requirement that all aircraft incude a transponder. It can thus be reasonably assumed that Situs Hawk's "proprietary network of public and private data sources" includes ADS-B data, which is received from a transponder on an aircraft. Exhibit F, at 1.</td></tr>
<tr><td>[d] determining, based upon the at least one of the altitude or the speed of the aircraft indicated in the transponder data, that the aircraft landed at the airport during the time for which the location of the aircraft was indeterminate</td><td>Situs Hawk claims to be able to perform "large scale reporting of supporting documentation for both aircraft discovery and valuation." Exhibit F, at 2. "Aircraft discovery" presumes that Situs Hawk is determing aircraft location based on the data (including transponder data as noted above).</td></tr>
</table>

| | |
|---|---|
| [e] computing, by a computer, a taxability status of the aircraft based upon the aircraft being present at the airport during the time for which the location of the aircraft was indeterminate | Situs Hawk claims to be able to perform "large scale reporting of supporting documentation for both aircraft discovery ***and valuation*** ." Exhibit F, at 2. Also, Situs claims to "work[] with a variety of tax authorities across multiple states, each with varying regulations regarding the discovery, assessment, valuation and collection of personal property taxes on aircraft." Exhibit F, at 2. Everything needed to determine taxability based on these regulations is shown in this screen, Exhibit L, at 2:   |
| | |
| **CLAIM #13 - A system, comprising:** | |
| [a] transponder transceiver positioned in proximity to an airport, and that is configured and disposed to receive transponder data from an automatic dependent surveillance-broadcast (ADS-B) transponder mounted on an aircraft, the transponder data indicative of at least one of an altitude or a speed of the aircraft | The number of flight information data sources is limited, and the ADS-B data is one of most common types of flight data available today in light of the recent FAA requirement that all aircraft incude a transponder. It can thus be reasonably assumed that Situs Hawk's "proprietary network of public and private data sources" includes ADS-B data, which is received from a transponder on an aircraft. Exhibit F, at 1. |
| [b] a processor | Situs Hawk has a computer based solution and thus uses a processor. |
| [c] memory coupled to the processor, wherein the memory contains instructions, that when executed by the processor, cause the system to perform steps of | Situs Hawk has a computer based solution and thus uses a memory. |

<table>
<tr>
<td>[d] obtaining traffic control system information for the aircraft from a first database, the traffic control system information indicative of departures and arrivals of the aircraft at a plurality of airports, the traffic control system information including a mismatch between a departure location of the aircraft and a previous arrival location of the aircraft, the mismatch indicative of a time during which a location of the aircraft is indeterminate</td>
<td>The '988 Patent describes an "air traffic control data source" defined as including SWIM as well as other data like departure/arrival times/airports. Exhibit A at 4:43–53. Situs Hawk documents show that it reports the same types of information described in the patent (e.g., departure/arrival times/airports), and thus Situs Hawk must be obtaining that information frome somewhere (i.e., a first database). See Exhibit L, at 5:<br>


</td>
</tr>
<tr>
<td>[e] determining, based upon the at least one of the altitude or the speed of the aircraft indicated in the transponder data, that the aircraft landed at the airport during the time for which the location of the aircraft was indeterminate</td>
<td>Situs Hawk claims to be able to perform "large scale reporting of supporting documentation for both aircraft discovery and valuation." Exhibit F, at 2. "Aircraft discovery" presumes that Situs Hawk is determing aircraft location based on the data (including transponder data as noted above).</td>
</tr>
<tr>
<td>[f] computing a taxability status of the aircraft based upon the aircraft being present at the airport during the time for which the location of the aircraft was indeterminate</td>
<td>Situs Hawk claims to be able to perform "large scale reporting of supporting documentation for both aircraft discovery and valuation ." Exhibit F, at 2. Also, Situs claims to "work[] with a variety of tax authorities across multiple states, each with varying regulations regarding the discovery, assessment, valuation and collection of personal property taxes on aircraft." Exhibit F, at 2. Everything needed to determine taxability based on these regulations is shown in this screen, Exhibit L, at 2:<br>


</td>
</tr>
</table>

| | |
|---|---|
| **CLAIM #15 - A computer program product embodied in a non-transitory computer readable medium, the computer program product comprising instructions which cause one or more processors to perform operations of:** | |
| obtaining traffic control system information for an aircraft from a first database, the traffic control system information indicative of departures and arrivals of the aircraft at a plurality of airports | The '988 Patent describes an "air traffic control data source" defined as including SWIM as well as other data like departure/arrival times/airports. Exhibit A at 4:43–53. Situs Hawk documents show that it reports the same types of information described in the patent (e.g., departure/arrival times/airports), and thus Situs Hawk must be obtaining that information frome somewhere (i.e., a first database). See Exhibit L, at 5:   |
| detecting a gap in the traffic control system information for the aircraft during which a location of the aircraft is indeterminate from the traffic control system information alone, wherein detecting the gap is based upon a mismatch in the traffic control system information between a departure location of the aircraft and a preceding arrival location of the aircraft | The '988 Patent discusses gap detection/reconciliation broadly as mixing different sources of information to get a more fullsome flight record. Particlularly, the '988 Patent at 5:54–57 states: "Embodiments combine data from the traffic control data 116 , vehicle metadata 118 , vehicle valuation data 120, and / or remote transponder sensing unit data 122 to reconcile gaps in the traffic control data. The system 100 can then compute a primary location for the purposes of property taxes ..." Situs Hawk specifically notes deficiencies in using SWIM data and states that Situs Hawk uses a "proprietary network of public and private data sources." Exhibit F, at 1. This is the same combination of data discussed in the '988 Patent. Situs Hawk is using more than one set of data to account for gaps in any single source. Merging these data sets would require operative gap detection to reconcile the different sources. Also, Situs Hawk provides a specific exmaple of gap detection for ALDOR, meaning that it has in fact and does detect gaps in flight information. Exhibit F, at 1. |
| receiving transponder data from a transponder that is mounted on board the aircraft by way of a transceiver positioned in proximity to an airport, the transponder data indicative of at least one of an altitude or a speed of the aircraft | The number of flight information data sources is limited, and the ADS-B data is now one of most common types of flight data available today in light of the recent FAA requirement that all aircraft incude a transponder. It can thus be reasonably assumed that Situs Hawk's "proprietary network of public and private data sources" includes ADS-B data, which is received from a transponder on an aircraft. Exhibit F, at 1. |
| determining, based upon the at least one of the altitude or the speed of the aircraft indicated in the transponder data, that the aircraft landed at the airport during a time for which the location of the aircraft was indeterminate | Situs Hawk claims to be able to perform "large scale reporting of supporting documentation for both aircraft discovery and valuation." Exhibit F, at 2. "Aircraft discovery" presumes that Situs Hawk is determing aircraft location based on the data (including transponder data as noted above). |

<table>
<tr>
<td>outputting an indication that a tax may be due on the aircraft in a jurisdiction that includes the airport based upon determining that the aircraft landed at the airport during the time for which the location of the aircraft was indeterminate.</td>
<td>Situs Hawk claims to be able to perform "large scale reporting of supporting documentation for both aircraft discovery and valuation ." Exhibit F, at 2. Also, Situs claims to "work[] with a variety of tax authorities across multiple states, each with varying regulations regarding the discovery, assessment, valuation and collection of personal property taxes on aircraft." Exhibit F, at 2. Everything needed to determine taxability based on these regulations is shown in this screen, Exhibit L, at 2:<br>


</td>
</tr>
</table>