# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AVIATION CAPITAL PARTNERS, LLC d/b/a SPECIALIZED TAX RECOVERY,<br><br>Plaintiff,<br><br>v.<br><br>SH ADVISORS, LLC d/b/a SITUS HAWK,<br><br>Defendant. | Civil Action No. 22-1556-RGA |

## MEMORANDUM OPINION

David E. Moore, Bindu A. Palapura, Andrew L. Brown, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Todd R. Tucker, Joshua A. Friedman, Dustin D. Likens, CALFEE, HALTER & GRISWOLD LLP, Cleveland, OH,

    Attorneys for Plaintiff.

Kenneth L. Dorsney, Cortlan S. Hitch, MORRIS JAMES LLP, Wilmington, DE; Paul M. Sykes, Benn C. Wilson, Jake M. Gipson, BRADLEY ARANT BOULT CUMMINGS LLP, Birmingham, AL,

    Attorneys for Defendant.

August __, 2023



**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is Defendant's Motion to Dismiss for failure to state a claim. (D.I. 17). I have considered the parties' briefing (D.I. 18, 27, 30), and I heard oral argument on February 1, 2023. For the reasons set forth below, Defendant's Motion to Dismiss is GRANTED.

## I. BACKGROUND

Plaintiff Aviation Capital Partners d/b/a Specialized Tax Recovery brought this suit against Defendant SH Advisors d/b/a Situs Hawk. Plaintiff asserts patent infringement of three claims of U.S. Patent No. 10,956,988 ("the '988 patent") (D.I. 1 ¶ 45) and two Alabama state law claims. (*Id.* ¶¶ 7-8). Plaintiff then consented to dismissal of the second state law claim (D.I. 29), leaving only Count One for patent infringement (D.I. 1 at 7) and Count Two for tortious interference with a prospective business relationship (*Id.* at 13).

The '988 patent generally concerns determining the taxability status of aircraft, which may aid in the recovery of any unpaid taxes stemming from the aircraft's presence in a jurisdiction. ('988 patent at 1:49-2:26). Plaintiff and Defendant both submitted bids to the Alabama Department of Revenue for a contract "related to aircraft discovery and retail market valuation services." (D.I. 1 ¶ 18). Plaintiff alleges that Defendant is selling or offering to sell, through its bid, a system that infringes Plaintiff's patent. (*Id.* ¶ 35). Plaintiff also alleges under Alabama state law that Defendant tortiously interfered with Plaintiff's business relationship with the Alabama Department of Revenue (*Id.* ¶ 51).

Plaintiff moved for a preliminary injunction. (D.I. 6). I denied the preliminary injunction for lack of a likelihood of success on the merits. (Tr. at 41:1-10).[1]

---

[1] Citations to the transcript of the February 1, 2023 hearing, which is not yet docketed, take the form "Tr. __."

Defendant moves to dismiss Plaintiff's patent infringement claim for failure to state a claim because the '988 patent is invalid under 35 U.S.C. § 101 and because Plaintiff fails to plausibly allege infringement. (D.I. 18 at 1). Defendant also moves to dismiss the tortious interference claim as barred by competitor's privilege. (*Id.*).

Because I find that the '988 patent is invalid under 35 U.S.C. § 101, I will not reach the issue of whether Plaintiff has plausibly alleged infringement. Further, I will dismiss Plaintiff's state law claim without prejudice, since the only basis for its being in federal court is supplemental jurisdiction, and there is no reason that a federal court in Delaware ought to be deciding a claim under Alabama law involving Alabama governmental entities unless there is no other choice.

## II.     LEGAL STANDARD

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleading stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017). The inquiry is appropriate at this stage "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

Section 101 of the Patent Act provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court recognizes three categories of ineligible subject matter: laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*,

573 U.S. 208, 216 (2014). The purpose of these exceptions is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 71 (2012).

In *Alice*, the Supreme Court reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." 573 U.S. at 217. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* "The 'abstract ideas' category embodies 'the longstanding rule that an idea of itself is not patentable.'" *Id.* (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). For software-implemented inventions, the step-one determination "often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies as an abstract idea for which computers are invoked merely as a tool." *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1377 (Fed. Cir. 2022) (citation omitted). I must "articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful." *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017).

If the claims fail step one, then the court must look to "the elements of the claim both individually and as an ordered combination" to see if there is an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217-18 (cleaned up). "A claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." *Id.* at 221 (cleaned up). Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the idea to a particular technological environment." *Id.* at 222

(cleaned up) (quoting *Bilski*, 561 U.S. at 610-11). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223. To save a patent at step two, an inventive concept must be evident in the claims. *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).

## III. DISCUSSION

In broad strokes, the '988 patent concerns using Air Traffic Control data from the Federal Aviation Administration (FAA), supplemented with data from airplane transponders, to learn where an airplane has landed for some period of time. ('988 patent at 1:53-57). This information may be useful to state and local governments because the aircraft may be subject to property tax based on its situs, or presence in a particular location for some time. The FAA database may contain gaps where tax status is not tracked. (*Id.* at 4:1-6). By combining the FAA data with the transponder data which reports an aircraft's speed and altitude, however, the patented invention obtains a more complete picture of where an aircraft has been. (*Id.* at 4:21-26). By further comparing this information with a database on taxability, it is possible to determine the taxes the owner of an aircraft might owe that could not be gleaned from the FAA data alone. (*Id.* at 4:25-29).

Plaintiff asserts claims 1, 13, and 15 of the '988 patent. Defendant argues that claim 1 is representative (D.I. 18 at 4), and Plaintiff does not challenge this assertion. Claim 1 reads:

> 1. A computer-implemented method, comprising:
> obtaining traffic control system information for an aircraft from a first database, the traffic control system information indicative of departures and arrivals of the aircraft at a plurality of airports;
> detecting a gap in the traffic control system information for the aircraft, the gap being indicative of a time for which a location of the aircraft is indeterminate based upon the traffic control system information, wherein the gap is detected based on a mismatch in the traffic control system information between a departure location of the aircraft and a previous arrival location of the aircraft;

5

> receiving transponder data from a transponder that is mounted on board the aircraft by way of a transceiver positioned in proximity to an airport, the transponder data indicative of at least one of an altitude or a speed of the aircraft;
> determining, based upon the at least one of the altitude or the speed of the aircraft indicated in the transponder data, that the aircraft landed at the airport during the time for which the location of the aircraft was indeterminate; and
> computing, by a computer, a taxability status of the aircraft based upon the aircraft being present at the airport during the time for which the location of the aircraft was indeterminate.

('988 patent at 10:18-44). Claim 13 is a system analog to claim 1 (*id.* at 11:24-51), and claim 15 implements claim 1 in "a non-transitory computer readable medium." (*Id.* at 12:5-34). Defendant argues that each of these claims is directed to an abstract idea and has no inventive concept, and each is therefore invalid under 35 U.S.C. § 101. The parties offer "no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix*, 882 F.3d at 1125.

### A. *Alice* Step One

Defendant argues that the asserted claims of the '988 patent are directed to the abstract idea of "identifying gaps in a first data source, filling those gaps with data from a second source, and performing a calculation based on the composite data." (D.I. 18 at 10). Defendant observes that the claim can be broken down into five steps, all of which are either collecting or analyzing data. (*Id.* at 11). Defendant notes that "collecting information and analyzing it" have often been found to be abstract. (*Id.*). Defendant cites to *Elec. Power Group, LLC v. Alstom S.A.*, where the court found invalid system and method claims for "real-time performance monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results." 830 F.3d 1350, 1351 (Fed. Cir. 2016). Defendant argues that, like the claims in *Elec. Power*, the claims of the '988 patent purport to improve "a process of gathering and analyzing information . . . and not any particular assertedly inventive technology for

6

performing those functions." *Id.* at 1354. Further, the '988 patent claims, unlike the *Elec. Power* claims, "do not even recite an additional step of displaying the results of that analysis." (D.I. 18 at 12).

Plaintiff argues that the patent is directed to "a specific multifaceted system (or method) for computing an aircraft's taxability status that includes using aircraft transponders to determine the location of aircraft during periods where their location is otherwise indeterminate." (D.I. 27 at 3-4). Plaintiff contends that Defendant is "overly abstract[ing]" the claims, which the Federal Circuit has cautioned against. (*Id.* at 4 (quoting *Nat. Alternatives Int'l, Inc. v. Creative Compounds, LLC*, 918 F.3d 1338, 1350 (Fed. Cir. 2019))). Specifically, Plaintiff argues that the patent claims are focused specifically on taxability determination, so characterizing them as mere data manipulation is too abstract. (D.I. 27 at 4). Plaintiff also argues under *ChargePoint Inc. v. SemaConnect, Inc.* that their patent does not "preempt" anyone from using the abstract idea of identifying and filling gaps in data. 920 F.3d 759, 766 (Fed. Cir. 2019). Plaintiff notes that, unlike in *Elec. Power*, its patent employs an "inventive technology" for gathering and analyzing data—specifically, its use of aircraft transponders' speed and altitude information is inventive. (D.I. 27 at 6).

Defendant responds that Plaintiff fails to compare the claims at issue to claims upheld by any court. (D.I. 30 at 2).

At oral argument, Plaintiff analogized their case to *TaKaDu Ltd. v. Innovyze LLC*, in which I found claims directed to "improved monitoring methods of water utility networks and resource distribution of said networks" not to be abstract. 2022 WL 684409 at *4 (D. Del. March 8, 2022). Plaintiff argued that like the claims in *TaKaDu*, their claims "improve[] the capability of the system as a whole." (Tr. at 22:20-21).

Plaintiff also notes that the claims of the '988 patent were allowed over *Elec. Power*, despite patent eligibility objections during prosecution. (D.I. 27 at 6). Plaintiff observes that the Patent Office considered the possibility that the claims were directed to the abstract idea of "computing a taxability status." (*Id.* (quoting D.I. 24-1 at 5)).

As I indicated at oral argument, I think the '988 patent is directed to an abstract idea. I characterized the idea as "collecting aircraft-related data from multiple sources and using an algorithm to improve . . . what can be gleaned from the data, and then referring to yet another database about taxation to determine the taxability status." (Tr. at 41:13-17). This is an abstract idea akin to that in *Elec. Power*. As I also noted at oral argument, this case differs from *TaKaDu* in that the method observes transponder data without actually using it to affect the aircraft locations or the taxes levied on them. (*Id.* at 32:16-33:1). Even accepting Plaintiff's argument that the patent is directed to "determining taxability status," the determination of taxability status is also an abstract idea—as the Patent Office recognized. Determining a taxability status is simply a matter of referring to various tax codes, and using a computer to make this easier does not make it less abstract. *Int'l Bus. Machs.*, 50 F.4th at 1377 (Fed. Cir. 2022).

As Defendant noted, Plaintiff was unable to cite any case where collecting, synthesizing, and analyzing data in the manner of the '988 patent was found not to be abstract. I give no weight to the Patent Office's overall determination that the patent was eligible (which determination the PTO makes either expressly or impliedly for every issued patent), even if the PTO considered the cases being cited here.

Having determined that the asserted claims of the '988 patent are directed to an abstract idea, I consider under *Alice* whether there is nevertheless an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to

significantly more than a patent upon the ineligible concept itself." 573 U.S. at 217-18 (cleaned up).

### B. *Alice* Step Two

Defendant contends that the asserted claims contain no inventive concept. Defendant argues that, like in *Elec. Power*, the patent uses a "generic computer and other conventional components." (D.I. 18 at 13). Defendant notes that the patent does not purport to invent or improve the aircraft transponders from which it obtains speed and altitude data. (*Id.*). Defendant argues that the sources and types of information gathered by the patented method were known and not inventive. (*Id.*). Defendant also argues under *In re Killian* that the asserted claims provide no detail on how to compute taxability, rendering them non-inventive. (*Id.* at 14 (citing 45 F.4th 1363, 1380 (Fed. Cir. 2022))). Finally, Defendant argues that the determination of an aircraft's location using speed and altitude data is also non-inventive and is simply an application of an "ordinary mental process[]." (D.I. 30 at 4 (quoting *Elec. Power*, 830 F.3d at 1355)).

Plaintiff argues that, even if the claims are directed to an abstract idea, they cover a "particular, practical application" of that idea. (D.I. 27 at 7 (quoting *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016))). Plaintiff objects that Defendant ignores the Patent Office's findings during prosecution that the claims teach a practical application of their abstract idea. (D.I. 27 at 7). Plaintiff offers the act of "determining that an aircraft landed at an airport based on speed or altitude data during a time when the location of the aircraft is indeterminate" as an inventive concept. (*Id.* at 7).

I agree with Defendant. The specific step of "determining that an aircraft landed at an airport based on speed or altitude data during a time when the location of the aircraft is indeterminate" that Plaintiff points to does not constitute an inventive concept. It is simply an

application of common sense and physics. As Defendant notes, the claims do not "require[] anything other than off-the-shelf conventional . . . technology." *Elec. Power*, 830 F.3d at 1355. Despite having a practical application, the claims of the patent offer no new insights or improvements for implementing their abstract idea. Instead, the patent seems merely to "stat[e] the [abstract idea] while adding the words 'apply it.'" *Mayo*, 566 U.S. at 72. I again give no weight to the conclusions of the PTO.

I find that the asserted claims of the '988 patent are directed to an abstract idea and contain no inventive concept. Thus, claims 1, 13, and 15 of the '988 patent are invalid under 35 U.S.C. § 101.

Defendant's Motion to Dismiss is GRANTED. Count I of Plaintiff's complaint is DISMISSED for failure to state a claim. Count II is DISMISSED without prejudice, as I decline to exercise supplemental jurisdiction over it.

## IV. CONCLUSION

An appropriate order will issue.